# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN DIVISION

| | |
|---|---|
| CHARLENE MARTINEZ, individually and on behalf of all others similarly situated, | Case No.: 1:15-cv-07712-JBS-AMD |
| | Hon. Jerome B. Simandle |
| *Plaintiff*, | Magistrate Judge Ann Marie Donio |
| *v.* | |
| TD BANK USA, N.A., a National Bank, and TARGET CORPORATION, a Minnesota corporation, | |
| *Defendants*. | |

# PLAINTIFF CHARLENE MARTINEZ'S RESPONSE IN OPPOSITION TO DEFENDANTS TD BANK USA, N.A. AND TARGET CORPORATION'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................... 1

II.  BACKGROUND ............................................................................ 2

III.  LEGAL STANDARD ...................................................................... 5

IV.  ARGUMENT ................................................................................. 5

    A.  **Plaintiff sufficiently pleads that Defendants were debt collectors and that they harassed her over a six-month period in violation of the Rosenthal Act** ........................ 5

        i.  *Defendants are debt collectors under the Rosenthal Act calling in connection with consumer debts* ................................ 6

        ii.  *Defendants harassed Martinez by bombarding her with more than one hundred phone calls related to collecting debts* ........................................... 10

    B.  **Martinez has alleged an economic loss under the UCL that warrants relief** .................................................... 14

        i.  *Martinez suffered economic injuries stemming from Defendants' conduct* .................................................. 15

        ii.  *Defendants have already disregarded Martinez's request to cease communications, putting her at risk of further harm such that an injunction is warranted* ....................................... 18

V.  CONCLUSION ............................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

### <u>United States Supreme Court Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................5

*Bell Atl. Corp.v. Twombly*, 550 U.S. 544 (2007)........................................................5

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ....................................................2 n.1

### <u>United States Circuit Court of Appeals Cases</u>

*In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) .................................14–15

*United States v. Focht*, 882 F.2d 55 (3d Cir. 1989)................................................18

*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011)...............................5

### <u>United States District Court Cases</u>

*Akalwadi v. Risk Management Alternatives, Inc.*,
    336 F. Supp. 2d 492 (D. Md. 2004)...............................................................13

*Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013 (N.D. Cal 2006).....13–14

*Booth v. Appstack, Inc.*, No. C13-1533JLR,
    2016 WL 3030256 (W.D. Wash. May 25, 2016).....................................2 n.1

*Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847 (W.D. Tenn. 2010) .........12

*Gomes v. Mortg. Elec. Registration Sys.*, No. 11-1790,
    2012 WL 370542 (E.D. Cal. Feb. 3, 2012) ................................................. 8-9

*Goodman v. HTC Am., Inc.*, No. C11-1793MJP,
    2012 WL 2412070 (W.D. Wash. June 26, 2012) .........................................16

*Green v. Creditor Iustus Remedium, LLP*, No. 1:13-CV-01414-LJO,
    2013 WL 6000967 (E.D. Cal. Nov. 12, 2013) ...............................11–12, 14

*Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (EX),
   2016 WL 890297 (C.D. Cal. Mar. 8, 2016) ...................................................12

*In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014)......16

*In re iPhone Application Litig.*, 6 F. Supp. 3d 1004 (N.D. Cal. 2013)....................16

*J2 Glob. Commc'ns, Inc. v. Blue Jay Inc.*, No. C 08-4254 PJH,
   2009 WL 4572726 (N.D. Cal. Dec. 1, 2009) .................................................19

*Krapf v. Nationwide Credit Inc.*, No. SACV 09-00711 JVSMLG,
   2010 WL 2025323 (C.D. Cal. May 21, 2010)................................................10

*Mey v. Got Warranty, Inc.*, No. 5:15-CV-101,
   (N.D. W. Va.) (ECF No. 128) ...............................................................2 n.1

*O'Donovan v. CashCall, Inc.*, No. C 08-03174 MEJ,
   2009 WL 1833990 (N.D. Cal. June 24, 2009)................................................11

*Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089
   (C.D. Cal. 2006)...........................................................................................7

*Pietzak v. MicrosoftCorp.*, No. CV 15-5527-R,
   2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ..............................................17

*Renteria v. Nationwide Credit, Inc.*, No. 09CV1195 BTM JMA,
   2009 WL 2754988 (S.D. Cal. Aug. 27, 2009) ...............................................11

*Rogers v. Capital One Bank (USA), N.A.*, No. 15-cv-4016,
   2016 WL 3162592 (N.D. Ga. June 7, 2016) .............................................2 n.1

*Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007) ............12–13

*Schwartz-Earp v. Advanced Call Ctr. Techs., LLC*, No. 15-CV-01582-MEJ,
   2016 WL 899149 (N.D. Cal. Mar. 9, 2016) ..................................................12

*Selby v. Bank of Am., Inc.*, No. 09CV2079 BTM JMA,
   2010 WL 4347629 (S.D. Cal. Oct. 27, 2010)..........................................6–7, 9

*Smith v. Law Offices of Patenaude & Felix, A.P.C.*, No. 13CV3061-WQH BGS,
     2014 WL 3695473 (S.D. Cal. July 23, 2014)...........................................9 n.3

*Stavrinides v. Pac. Gas & Elec. Co.*, No. 16-00443,
     2016 WL 1598744 (N.D. Cal. May 21, 2016).................................................9

*Tyacke v. First Tenn. Bank, N.A.*, No. EDCR 16-228-JCB (SPx)
     (C.D. Cal. Apr. 28, 2016) (ECF No. 23-1)....................................................16

*United States v. Toys "R" Us, Inc.*, 754 F. Supp. 1050 (D.N.J. 1991)...............18–19

## State Court Cases

*Alborzian v. JPMorgan Chase Bank, N.A.*,
     235 Cal. App. 4th 29 (2015).........................................................7, 10–11, 13

*Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*,
     973 P.2d 527 (Cal. 1999)........................................................................14–15

*Kasky v. Nike, Inc.*, 45 P.3d 243 (Cal. 2002) ...........................................................14

*Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612 (1993)..................................17

*Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324 (2009)............11

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011)......................15–16, 18

*Martinian v. Olivier,* 2014 WL 10988385 (Cal. Super. Ct.) ...................................17

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998) ..........................17

## Federal Statutes

Telephone Consumer Protection Act, 47 U.S.C. § 227 ....................................*passim*

**<u>State Statutes</u>**

Rosenthal Fair Debt Collection Practices Act,
        Cal. Civ. Code §§ 1788, *et seq* .............................................................*passim*

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq* ...............*passim*

## I.     INTRODUCTION

In late 2014, Defendants TD Bank USA, N.A. and Target Corporation ("Defendants") began calling Plaintiff Charlene Martinez hundreds of times in order to collect an outstanding balance on her Target credit card account. Defendants did not have her permission to call her, having only obtained her number by forcing her to enter it on a change-of-address page on Target's website—if she hadn't, she wouldn't have received account statements and bills. Even when Martinez sent cease-and-desist requests to Defendants, they continued to call her.

Defendants' conduct toward Martinez was not an isolated incident. Rather, she was just one of thousands of consumers receiving unwanted and unauthorized calls from Defendants. By engaging in this calling campaign, Defendants violated three laws: (1) the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which prohibits anyone from using an automatic telephone dialing system ("ATDS") to call an individual's cellular telephone, unless the caller has the recipient's prior express consent; (2) California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq.* (the "Rosenthal Act"), which, among other things, prohibits the use of unfair, unconscionable, unlawful, or harassing methods in connection with debt collection; and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"),

which prohibits unfair, deceptive, or unlawful acts in commerce, and allows any person who loses money or property as a result to bring suit.

Defendants do not bother seeking dismissal of Plaintiff's TCPA claims, nor could they, as Plaintiff more than adequately states a claim for relief there.[1] Yet Defendants do seek dismissal of Plaintiff's Rosenthal Act and UCL claims, even though those claims arise from the same set of operative facts as the TCPA claim. Regarding the Rosenthal Act, Defendants argue Martinez failed to allege Defendants (a bank and credit card servicer) were not debt collectors under the statute, and that Martinez failed to allege the calls were harassing because she did not plead their content. In regards to the UCL, Defendants contend Martinez's

---

[1]     Defendants do suggest in a footnote that their violations of the TCPA were merely "procedural" and therefore "may" not give rise to injuries-in-fact, citing the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016). The only three Courts to address Article III standing in TCPA cases since the *Spokeo* decision, however, have found exactly the opposite. *See Mey v. Got Warranty, Inc.*, No. 5:15-CV-101 (N.D. W. Va. Jun. 30, 2016) (ECF No. 128) ("This Court finds that unwanted phone calls cause concrete harm."); *Rogers v. Capital One Bank (USA), N.A.*, No. 15-cv-4016, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) ("As the Eleventh Circuit has held, a violation of the TCPA is a concrete injury."); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (holding plaintiffs had standing when they were forced to address "widespread robocalls" and "[t]he use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury"). Nevertheless, to the extent Defendants wish to challenge Plaintiff's standing to sue, in a Rule 12(b)(6) motion is obviously not the appropriate place to do it.

losses are not economic damages and that she is unable to secure relief under the statute.

As explained more fully below, each of Defendants' arguments misreads the actual allegations of Martinez's First Amended Complaint ("FAC"), and misunderstands controlling case law. Accordingly, and for the reasons described below, Martinez respectfully requests the Court deny Defendants' motion in its entirety.

## II.    BACKGROUND

Defendant Target is a national chain of retail stores that, as of 2007, directly offered consumers credit cards as part of its business. (FAC ¶ 25.) Martinez opened a credit card account with Target that year. (*Id.*) When Martinez moved in 2012, she was forced to enter her new cell phone number when updating her address on Target's website—indeed, she would not have continued to receive billing statements had she not done so. (*Id.* ¶¶ 26–30.) In 2013, Defendant TD Bank purchased Target's credit card portfolio and entered into a detailed service agreement with Target to collect debts on a vast scale using a telephone calling operation. (*Id.* ¶¶ 14–18.) Part of this comprehensive arrangement required Target to: maintain call centers to service the debt, allow TD Bank real-time access to calling systems, and operate under the oversight of a TD Bank "collection

manager." (*Id.*) Through this agreement, Defendants acted together to call thousands of consumers who owed credit card debts. (*Id.* ¶¶ 17, 19, 22–24).

Martinez was one those consumers. (*Id.* ¶ 32.) In late 2014, she began receiving the first of over one hundred phone calls from Defendants. (*Id.* ¶ 32, 34–36.) Though she did not speak with a representative each and every time the phone rang, there was only one possible purpose for the calls. These calls were from a phone number tied to Defendants' debt collection call center and they pertained to Martinez's credit card debt. (*Id.* ¶¶ 21, 32–36.) Despite Defendants never having Martinez's permission to call in the first place, she sought to end these phone calls, and sent faxes to Defendants requesting that they stop all communications with her. (*Id.* ¶¶ 33, 37.) But the calls persisted, and she received additional calls in the following days. (*Id.* ¶¶ 34–36.)

Defendants' behavior drew the ire of many consumers, who complained online of receiving call after call from the Defendants regarding consumer credit card debt. (*Id.* ¶ 21.) Martinez and the proposed class suffered damages as a result of Defendants' conduct in the form of consumed battery life, increased electrical usage, lost utility of cellular plans and phones, and invasion of privacy. (*Id.* ¶¶ 38, 59, 65, 68.)

On October 26, 2015, Martinez filed her original Class Action Complaint, and on March 1, 2016, filed the FAC.

## III.  LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp.v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, a court accepts as true all allegations of material fact and construes them in the light most favorable to the plaintiff. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

## IV.  ARGUMENT

### A.  Plaintiff sufficiently pleads that Defendants were debt collectors and that they harassed her over a six-month period in violation of the Rosenthal Act.

Defendants ask the Court to dismiss Martinez's Rosenthal Act claim because she supposedly failed to plead that : (1) Defendants are debt collectors, and (2) the calls were harassing. Defendants' first argument fails because Defendants fit squarely within the Rosenthal Act's definition of "debt collector," as Martinez alleges. Defendants' second argument fundamentally misunderstands the nature of pleading requirements in Rosenthal Act cases.

To state a claim under the Rosenthal Act, a plaintiff may allege, *inter alia*, that a debt collector "[c]aus[es] a telephone to ring repeatedly or continuously to annoy the person called," or "[c]ommunicat[es], by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Cal. Civ. Code §§ 1788.11(d)–(e). The Rosenthal Act also incorporates the federal FDCPA, such that any behavior that violates the federal FDCPA also violates the Rosenthal Act. Cal. Civ. Code § 1788.17. As detailed below and in the FAC, Martinez has alleged facts that demonstrate harassment: a pattern of repeated calls from a debt collection call center placed to collect a debt.

      i.    *Defendants are debt collectors under the Rosenthal Act calling in connection with consumer debts.*

The FAC makes clear that this case is predicated on credit card accounts and the calls made by creditors attempting to collect on them. Defendants' claims that Martinez failed to adequately plead these facts are simply wrong. As defined in the Rosenthal Act, a "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). Even an entity collecting on its own debts is a debt collector for purposes of the Rosenthal Act. *Selby v. Bank of Am., Inc.*,

No. 09CV2079 BTM JMA, 2010 WL 4347629, at *6 (S.D. Cal. Oct. 27, 2010).[2]

"Debt collection" is also broadly defined as "any act or practice *in connection with* the collection of consumer debts." Cal. Civ. Code § 1788.2(b) (emphasis added).

Here, Martinez has alleged Defendants, which are credit card servicers, are debt collectors placing debt collection calls from their call center regarding lines of credit they are servicing. (FAC ¶¶ 2, 15–16, 19–20, 34–36) Courts have repeatedly found such allegations sufficient to plead the "debt collector" and "debt collection" elements of Rosenthal Act claims. *See Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006) (pleading that the defendant was "a limited liability corporation doing business of collecting debts . . . engaged in the collection of debts . . . clearly alleges" defendant was a debt collector); *see also Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 38 (2015) (finding large national bank a "debt collector" making "debt collection calls" under the Rosenthal Act).

Defendants' contention that Martinez fails to adequately allege their status as debt collectors falls flat. Plaintiff alleges that TD Bank "claims to be the one of the 10 largest banks in America" and "purchased Target's entire consumer credit card portfolio"—the line of credit involved in this case—for $5.7 billion. (FAC

---

[2]    This is a broader definition than the federal Fair Debt Collection Practices Act ("FDCPA"), which exempts such entities.

¶¶ 1, 13.) Both companies maintain websites offering their customers credit cards. *See*, *e.g.*, https://www.tdbank.com/personal/credit-cards.html; http://www.target.com/c/redcard/-/N-4tfyn). While Target is also a retailer, it nonetheless engages in debt collection as an ordinary part of its business even after it sold its credit card portfolio. (FAC ¶¶ 2, 11, 13–20). Indeed, it "maintains[s] call centers and perform[s] Cardholder Service functions[,]" (*id.* ¶ 15), and was required "to conduct servicing on TD Bank's behalf, subject to TD Bank's monitoring and control." (*Id.* ¶ 14.) Similarly, TD Bank was involved with the calling campaigns, "exercis[ing] day-to-day operational oversight of the compliance aspects of the Program," including "monitoring on a real-time basis." (*Id.* ¶ 15–16.) And a TD Bank Collections Manager even worked in the Target call centers to exercise "day-to-day operational oversight of the collections-related aspects of the Program." (*Id.* ¶ 16.) Far from being "vague and conclusory," (dkt. 39 at 11), the allegations quote statements taken directly from Defendants' credit card agreement filed with the SEC. (FAC ¶¶ 15–17.) Such detail is not merely a recitation of the statute's definitional language, as Defendants claim, but an explanation of why Defendants fall under its reach. Thus, Martinez has more than adequately pleaded that Defendants are debt collectors.

Each of the cases cited by Defendants to the contrary is readily distinguishable. Defendants look to *Gomes v. Mortg. Elec. Registration Sys.* as an

example of an instance where the plaintiffs' allegations that defendant was a debt collector were too conclusory. No. 11-1790, 2012 WL 370542, at *5 (E.D. Cal. Feb. 3, 2012). But in *Gomes*, the court found the defendant was a mortgage servicer exempted from Rosenthal Act's definition of debt collector. *Id.* As such, *Gomes* is wholly irrelevant as to a non-mortgage servicer's status as a debt collector. Nor does the opinion in *Stavrinides v. Pac. Gas & Elec. Co.* support Defendants' position. No. 16-00443, 2016 WL 1598744, at *2 (N.D. Cal. May 21, 2016). *Stavrinides*' analysis of the definition of debt collector mistakenly equates the definition of the Rosenthal Act's more expansive version of "debt collector" with the federal FDCPA's far narrower definition. *Id.* It states that "'debt collector' does not include original creditors." *Id.* That is only true for the *federal* FDCPA. *Selby*, 2010 WL 4347629, at *6 (comparing 15 U.S.C. § 1692a(6)'s definition of debt collector with Cal. Civ. Code § 1788.2(c)'s definition of debt collector). Accordingly, the *Stavrinides* court's erroneous misapplication of the law should be ignored, lest this Court disregard California's clear intent to give the Rosenthal Act a broader scope than its federal counterpart.[3]

---

[3]    Ultimately, any doubt regarding Defendants' status as debt collectors is resolved by the fact that they have participated in judicial debt collection proceedings themselves. *See Smith v. Law Offices of Patenaude & Felix, A.P.C.*, No. 13CV3061-WQH BGS, 2014 WL 3695473, at *1 (S.D. Cal. July 23, 2014) (involving defendant debt collector retained by Target to collect on delinquent credit card issued by TD Bank as successor in interest to Target).

Because Plaintiff exhaustively details Defendants' debt collection operations, the Court should reject Defendants' argument that she failed to plead the facts necessary to establish their status as debt collectors under the Rosenthal Act.

> ii.    *Defendants harassed Martinez by bombarding her with more than one hundred phone calls related to collecting debts.*

Defendants implausibly assert that a pattern of over one hundred phone calls in a six-month period, sometimes as many as three a day, is not harassment. They are wrong. The conduct at issue is precisely the type prohibited by the Rosenthal Act: "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with such frequency as to be unreasonable and to constitute harassment under the circumstances." Cal. Civ. Code §§ 1788.11(d)–(e). Additionally, the Rosenthal Act requires compliance with the federal FDCPA, prohibiting one from "engaging in conduct, the natural consequence of which is to harass or abuse a person in connection with the collection of a debt." Cal. Civ. Code § 1788.17 (referencing 15 U.S.C. § 1692d). Defendants fail to live up to these standards.

When determining whether incessant debt collection calls constitute harassment, the volume and pattern of calls is often considered. *Krapf v. Nationwide Credit Inc.*, No. SACV 09-00711 JVSMLG, 2010 WL 2025323, at *3 (C.D. Cal. May 21, 2010). It is not required that a Rosenthal Act claimant answer

the harassing calls or describe their content in order for the calls to be actionable, as suggested by Defendants. *Alborzian*, 235 Cal. App. at 38 (2015) (noting—despite failure to allege harassing calls were answered and failing to allege calls' content—"[t]he making of frequent calls itself can constitute actionable harassment"); *Renteria v. Nationwide Credit, Inc.*, No. 09CV1195 BTM JMA, 2009 WL 2754988, at *2 (S.D. Cal. Aug. 27, 2009) (denying motion to dismiss "even though [plaintiff] does not detail the contents of each communication, the dates of the communications, the number of calls, or the identity (if known) of the caller"); *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 345 (2009) (finding repeated unanswered calls sufficient to state a claim); *O'Donovan v. CashCall, Inc.*, No. C 08-03174 MEJ, 2009 WL 1833990, at *6 (N.D. Cal. June 24, 2009) ("While Plaintiffs likely have knowledge of additional information regarding the debt collection communications, they are not required to plead all of the details of their claim.").

Indeed, callers looking to collect on a debt may have little incentive to unmask the true reasons behind their calls. And if consumers were forced to answer repeated phone calls in order to state a claim, it would defeat the statute's very purpose to protect consumers from such harassment. Thus, Martinez must allege just enough to satisfy the "low pleading threshold" required to provide a defendant notice at the pleadings stage. *O'Donovan*, 2009 WL 1833990, at *6.

Whereas, it is for the trier of fact to decide whether a specific volume or pattern of calls is actually unreasonable. *Green v. Creditor Iustus Remedium, LLP*, No. 1:13-CV-01414-LJO, 2013 WL 6000967, at \*3 (E.D. Cal. Nov. 12, 2013).

Here, Martinez provides the kind of specific, factual allegation that courts regularly find sufficient to allege a claim of harassment under the Rosenthal Act. These more than sufficiently detail the instances of Defendants' misconduct. Martinez has given a specific time frame—a six-month period. (FAC ¶ 32.); *see Green*, 2013 WL 6000967, at \*3 (finding near-daily calls over a two-month period sufficient to state Rosenthal Act claim).

She has alleged an approximate number of total calls—over 100. (FAC ¶¶ 32, 34–36.); *see Schwartz-Earp v. Advanced Call Ctr. Techs., LLC*, No. 15-CV-01582-MEJ, 2016 WL 899149, at \*3 (N.D. Cal. Mar. 9, 2016) (finding 134 calls presented a triable question of harassment even though the majority of calls were made before defendant spoke with plaintiff and the defendant ceased calling after being asked to do so); *Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (EX), 2016 WL 890297, at \*13 (C.D. Cal. Mar. 8, 2016) (99 calls over one year period presented triable issue); *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010) (17 calls in a one-month period sufficient to state a FDCPA claim); *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1160 (N.D. Cal. 2007) (finding 54 phone calls over a six-month period withstood summary

12

judgment on Rosenthal Act). She has provided an example of the peak number of calls per day. (FAC ¶ 32.); *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004) (alleging, *inter alia*, "three telephone calls being made within five hours on the same day"). She has given examples of specific days calls occurred (FAC ¶¶ 34–36) what number was called (*id.* ¶¶ 30, 32–36), and the relationship of Martinez's number to the Defendant. (*Id.* ¶ 30.) And she has explained that despite her express requests that it stop, Defendants' harassment continued—including Defendants' agents simply hanging up the phone when she made such requests. (*Id.* ¶¶ 32–36.)

Many other consumers just like Martinez have received the same Target credit card debt collection calls from the same servicing number. (*Id.* ¶ 21.) After seeing a hundred calls from Target's debt collections center on one's caller ID, it is reasonably inferred the call pertains to debt collection. *See Alborzian*, 235 Cal. App. 4th at 38 (alleging "campaign of harassment" sufficient to state Rosenthal Act claim). Martinez is not required to answer the calls and transcribe the ensuing conversations to state a claim under the Rosenthal Act. *See id*.

The lone case Defendants cite to argue that Martinez pleaded only conclusory allegations cannot hold up here. (Dkt. 39 at 8.) As an initial matter and unlike Defendants in this case, the court in *Arikat v. JP Morgan Chase & Co.* found the defendants did not extend or service the credit at issue and were not debt

collectors under the Rosenthal Act. 430 F. Supp. 2d 1013, 1027 (N.D. Cal 2006).

As that threshold matter was dispositive of the Rosenthal Act claim, the opinion's

discussion of pleadings with respect to harassment is only dicta. Still, even

assuming the analysis was applicable, Martinez provided specific facts regarding

Defendants' harassment that were simply lacking in the *Arikat* case, including the

precise number of calls, their timing, and the fact that they continued after Plaintiff

sent a written cease-and-desist request. (*See* FAC ¶¶ 32–36); *see also Arikat*, 430

F. Supp. 2d at 1027.

Ultimately, while the case law makes clear that Plaintiff has pleaded the

exact type of facts routinely found sufficient to state Rosenthal Act claims, should

any doubt remain as to whether Defendants' alleged conduct was in fact harassing,

such a determination should not be made at the pleadings stage. *See Green*, 2013

WL 6000967, at *3 (reasonability of calling practices is a question of fact).

### B.   Martinez has alleged an economic loss under the UCL that warrants relief.

Martinez also seeks relief under the UCL, Cal. Bus. & Prof. Code

§§ 17200 *et seq.* The purpose of the UCL is "to protect both consumers and

competitors by promoting fair competition in commercial markets for goods and

services." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002). To that end, the UCL

prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. &

Prof. Code § 17200. The UCL's coverage is "sweeping, embracing anything that

can properly be called a business practice and at the same time is forbidden by law." *In re First All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (quoting *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999)) (internal quotations omitted).

Defendants argue first that Martinez has not alleged economic harm sufficient to seek restitution under the Act.[4] (Dkt. 39 at 12.) Second, they argue Martinez has not adequately stated an entitlement to relief. *Id.* For the reasons detailed below, both of these arguments fail.

> i. *Martinez suffered economic injuries stemming from Defendants' conduct.*

The UCL allows recovery for those who have lost money or property as a result of a defendant's unlawful competition. Cal Bus. & Prof. Code §§ 17200, *et seq*. A plaintiff has standing when she is able to demonstrate (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury," and (2) causation. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). Defendants only challenge whether Martinez has established an economic injury. Economic injury often involves "a loss by the plaintiff without

---

[4]     In their opposition, Defendants do not dispute the causal connection between their conduct and Martinez's harm. Nor do they move to dismiss the claim on the basis that they did not violate the unlawful or unfair prongs as alleged. (FAC ¶¶ 63, 66.) Rather, they limit their argument to whether the harms are redressable under the statute.

any corresponding gain by the defendant, such as, for example, a diminishment in the value of some asset a plaintiff possesses." *Id.* at 895. The amount of economic loss needed to show standing "is only so much as would suffice to establish injury in fact," and a "specific, identifiable trifle of injury" will do. *Id.* at 886.

The question of whether a cell phone battery that must accommodate a systemic pattern of over a hundred phone calls loses a charge that must be replenished, consuming some of its limited charge cycles. (FAC ¶¶ 38, 59, 65, 68.); *see, e.g. Tyacke v. First Tenn. Bank, N.A*., No. EDCR 16-228-JCB (SPx) (C.D. Cal. Apr. 28, 2016) (ECF No. 23-1) (finding diminished battery life and lost bandwidth sufficient injuries under the UCL); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 989 (N.D. Cal. 2014) (alleging "the loss of battery power and other system resources" sufficiently pleaded UCL injury); *In re iPhone Application Litig*., 6 F. Supp. 3d 1004, 1014 (N.D. Cal. 2013) (noting loss of battery a sufficient injury under the UCL); *Goodman v. HTC Am., Inc.*, No. C11-1793MJP, 2012 WL 2412070, at *7 (W.D. Wash. June 26, 2012) (alleging defendant's misconduct drained battery sufficient to withstand motion to dismiss). Martinez's phone's battery lost charging cycles and incurred electricity costs; all of these are specific and concrete economic injuries suffered as a result of Defendants' conduct and establish standing to sue under the UCL.

While Defendants contend that Martinez only "possibly pleads" economic injuries and that they are "overly speculative," the cases Defendants rely on for support are distinguishable. (Dkt. 39 at 12–13.) In *Pietzak v. Microsoft Corp.*, the plaintiff pleaded "embarrassment and emotional harm," which—unlike the quantifiable claims at issue here—is a non-economic injury insufficient to confer standing. No. CV 15-5527-R, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015). The pleadings in *Pietzak* similarly contained a general assertion of "financial loss." *Id.* By contrast, Martinez alleges on the face of her pleadings, and substantiates with factual allegations, the very types of harms that courts have repeatedly recognized as economic injuries—that she lost utility in her cell phone and plan, lost battery life, and had to pay to recharge her phone, as a result of the more than one hundred phone calls placed by Defendants. (FAC ¶¶ 32, 38, 51, 59.)

Nor can *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612 (1993), where the court found the claims of misleading advertising under the unfair prong of the UCL lacked specificity, support Defendants' argument. *Khoury* was disapproved of nearly two decades ago. *Martinian v. Olivier,* 2014 WL 10988385, *6 (Cal. Super. Ct.) (recognizing that *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 46 (1998) impliedly disapproved *Khoury* by "holding claims for unfair business practices need not be pled specifically"). Fact-specific pleading is simply not required. *Id.*

17

Accordingly, Plaintiff has more than adequately alleged that Defendants'

unlawful harassment cost her money or property, as required to state a claim under

the UCL.

> ii.   *Defendants have already disregarded Martinez's request to cease communications, putting her at risk of further harm such that an injunction is warranted.*

Defendants argue that Plaintiff's UCL claim further fails because she has not

demonstrated any entitlement to relief under the statute. However, as described

above in section IV.B.i, she has shown that she suffered lost the value of her

property as a result of Defendant's conduct, for which she is entitled to restitution.

Beyond that, however, plaintiffs who have suffered an injury under the UCL may

seek also seek injunctive relief. *Kwikset*, 246 P.3d at 895. Injunctions are the

primary form of relief under the UCL to protect consumers from prohibited

business practices. *Id.* Plaintiffs may seek injunctions even in the absence of

restitution. *Id.* "Where, as here, an injunction is sought pursuant to statutory

provisions, the movant must establish (1) a violation of the statute sued upon; and

(2) a reasonable likelihood of future violations of the statute in the absence of

injunctive relief." *United States v. Toys "R" Us, Inc.*, 754 F. Supp. 1050, 1053

(D.N.J. 1991) (*citing United States v. Focht*, 882 F.2d 55, 57 (3d Cir. 1989). In

determining the reasonable likelihood of future violations, courts consider, *inter*

*alia*, "the isolated or recurrent nature of the infraction" and "the nature of the defendant's occupation." *Toys "R" Us*, 754 F. Supp. at 1058–59.

The pattern of wrongs Defendants already exhibited toward Martinez and their ongoing business relationship demonstrates the threat of additional harm to her and members of the proposed class. *See J2 Glob. Commc'ns, Inc. v. Blue Jay Inc.*, No. C 08-4254 PJH, 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009) (finding injunctive relief appropriate where defendant was a "repeat offender" of the TCPA). After a period of over six months and one hundred calls, Martinez sent cease-and-desist letters to Defendants that expressly told them to stop all communications. (FAC ¶¶ 32–33.) But Defendants ignored Martinez's requests and continued to violate the TCPA, the Rosenthal Act, and the UCL by repeatedly calling her at least three times regarding her debt.  (*Id.* ¶¶ 34–36.) And given that Martinez still has the same phone number associated with her account, there is nothing stopping Defendants from resuming their pattern of unlawful harassment.[5]

---

[5]      The UCL claim is not the only count in which Martinez requests injunctive relief. (*Id.* ¶ 5, § D). But it is the only count in which Defendants take issue with an injunction's availability. Defendants do not raise concerns about the availability of an injunction for the TCPA violations, which are the "unlawful" and "unfair" acts predicating the UCL claim (and which Defendants did not take issue with in their motion to dismiss). Holding that Martinez cannot seek an injunction in a UCL claim based on TCPA violations, but that she *can* seek an injunction based on the same TCPA violations in other sections of the complaint would be illogical.

## V.    CONCLUSION

For the reasons stated above, Martinez respectfully requests this Court deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint in its entirety, or in the alternative, grant Martinez leave to amend to add further detail or otherwise take the necessary steps to cure any defects found by the Court in her pleadings.

Respectfully submitted,

**CHARLENE MARTINEZ**,
individually and on behalf of all others
similarly situated,

Dated: July 5, 2016

By:/s/ Stefan Coleman
     One of Plaintiff's Attorneys

Stefan Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888.498.8946

Benjamin H. Richman (*Pro hac vice*)
brichman@edelson.com
J. Dominick Larry (*Pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (*Pro hac vice*)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.363.9495

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on July 5, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                             /s/ Stefan Coleman