# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN DIVISION

| | |
|---|---|
| CHARLENE MARTINEZ, individually and on behalf of all others similarly situated, | Case No. 1:15-cv-07712-JBS-AMD |
| Plaintiff, | Hon. Jerome B. Simandle |
| v. | Magistrate Judge Ann Marie Donio |
| TD BANK USA, N.A., a National Bank, and TARGET CORPORATION, a Minnesota corporation, | |
| Defendants. | |

## DEFENDANTS TD BANK USA, N.A. AND TARGET CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION FOR SUMMARY JUDGMENT</u>

Jarrod D. Shaw
I.D. No. 015732004
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Tel:  (412) 667-6000
Fax: (412) 667-6050

Marc A. Lackner SBN # 111753
(admitted *pro hac vice*)
David S. Reidy SBN # 225904
(admitted *pro hac vice*)
McGuireWoods LLP
505 Sansome Street, Suite 700
San Francisco, CA 94111

*Counsel for TD Bank, USA, N.A. and Target Corporation*

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND................................................................3

     a.   Plaintiff Opens a Target REDcard Account, Agrees to Receive
          Calls, and Provides Her Phone Number on the Manage My
          REDcard Website .................................................................................3

     b.   Plaintiff's Account Becomes Delinquent and Target Tries to
          Reach Her Between August of 2014 and April 15, 2015.....................6

     c.   Following the April 15, 2015 Conversation with Target, All
          Calls Ceased .........................................................................................7

     d.   Plaintiff Has No Evidence of Calls That Were Not Consented
          To, and No Evidence of Damages Sustained as a Result of the
          Phone Calls............................................................................................7

III. PROCEDURAL HISTORY ...........................................................10

IV.  LEGAL STANDARD .....................................................................12

V.   ARGUMENT...................................................................................13

     a.   Defendants Are Entitled to Summary Judgment on the TCPA
          Claim ...................................................................................................13

          i.    Plaintiff Provided Prior Express Consent Before All of
                the Calls.......................................................................................13

          ii.   All Calls Placed to Plaintiff's Cell Phone Were Placed
                Prior to Any Revocation of Consent...........................................17

     b.   Defendants Are Entitled to Summary Judgment on the
          Rosenthal Act Claim ...........................................................................19

          i.    The Call Logs Demonstrate That No Harassment
                Occurred......................................................................................20

     c.   Defendants Are Entitled to Summary Judgment on the UCL
          Claim ...................................................................................................24

   i. Plaintiff Has Failed to Show an Economic Injury Caused by Defendants ............................................................................24

   ii. Plaintiff Lacks Standing to Bring Her UCL Claim Because She Is Not Entitled to Restitution or Injunctive Relief ....................................................................................27

  d. In the Alternative, Plaintiff's Class Allegations Should Be Stricken Because Plaintiff Improperly Proposes a Fail-Safe Class ......................................................................................30

VI. CONCLUSION ..............................................................................33

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................12

*Arteaga v. Asset Acceptance, LLC*,
733 F. Supp. 2d 1218 (E.D. Cal. 2010) ......................................................20, 21

*Auerbach v. Great W. Bank*,
74 Cal. App. 4th 1172 (1999) .....................................................................28, 29

*Boyer v. Diversified Consultants, Inc.*,
306 F.R.D. 536 (E.D. Mich. 2015) .................................................................32

*Brown v. Fauver*,
819 F.2d 395 (3d Cir. 1987) ..........................................................................29

*Campion v. Old Republic Home Prot. Co.*,
861 F. Supp. 2d 1139 (S.D. Cal. 2012) ...........................................................30

*Carrigan v. State of Del.*,
957 F. Supp. 1376 (D. Del. 1997) ...................................................................12

*Celotex Co. v. Cartrett*,
477 U.S. 317 (1986) ......................................................................................12

*Circle Click Media LLC v. Regus Mgmt. Grp., LLC*,
No. 12-CV-04000, 2016 WL 3879028 (N.D. Cal. July 18, 2016) ..............29, 30

*Dixon v. Monterey Financial Services, Inc.*,
No. 15-cv-03298, 2016 WL 3456680 (N.D. Cal. June 24, 2016) ..........13, 18, 32

*Espejo v. Santander Consumer USA, Inc.*,
No: 1-12-cv-09431, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ....................33

*Gager v. Dell Financial Services, LLC*,
727 F.3d 271 (3d Cir. 2013) ...........................................................................17

*Groff v. Cont'l Ins. Co.*,
741 F. Supp. 541 (E.D. Pa. 1990) ...................................................................8

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ...............................................................................29

*Haysbert v. Navient Solutions, Inc.*,
   No. CV 15-4144, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016)...........................15

*Hill v. Homeward Residential Inc.*,
   799 F.3d 544 (6th Cir. 2015) ..............................................................................15

*In Re Rules & Regulations Implementing the Tel. Consumer Prot.
   Act of 1991*,
   7 FCC Rcd. 8752 (Oct. 16, 1992)......................................................................14

*In Re Rules & Regulations Implementing the Tel. Consumer Prot.
   Act of 1991*,
   23 FCC Rcd. 559 (Jan. 4, 2008) ........................................................................14

*In Re Rules & Regulations Implementing the Tel. Consumer Prot.
   Act of 1991*,
   30 F.C.C. Rcd. 7961 (July 10, 2015) .................................................................17

*Jenkins v. JP Morgan Chase Bank, N.A.*,
   216 Cal. App. 4th 497 (2013) .......................................................................26, 27

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .....................................................................................27

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
   No. 12-cv-05064, 2016 WL 2851571 (N.D. Cal. May 16, 2016) ......................28

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
   No. 12-cv-221, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013)..............................33

*Marcus v. BMW of N.A. LLC*,
   687 F.3d 583 (3d Cir. 2012) ...............................................................................31

*Mejia v. EMC Mortg. Corp.*,
   No. CV 09-4701, 2012 WL 367364 (C.D. Cal. Feb. 2, 2012) ...........................28

*Pilgrim v. Univ. Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ..............................................................................31

*Reddin v. Rash Curtis & Assoc.*,
    No. 2:15-01305, 2016 WL 3743148 (E.D. Cal. July 13, 2016),
    *appeal filed*, No. 16-16251 (9th Cir. July 19, 2016) ....................................20, 21

*Reyes v. Lincoln Automotive Fin. Services*,
    No. CV-15-0560, 2016 WL 3453651 (E.D.N.Y. June 20, 2016)................14, 18

*Saltzman v. I.C. System, Inc.*,
    No. 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) .................21, 22

*Saunders v. NCO Fin. Sys., Inc.*,
    910 F. Supp. 2d 464 (E.D.N.Y. 2012) ................................................................14

*Sauter v. CVS Pharmacy*,
    No. 2:13-cv-846, 2014 WL 1814076 (S.D. Oh. May 7, 2014) ...................32, 33

*Sepehry-Fard v. MB Fin. Servs.*,
    No. 13-cv-02784, 2014 WL 2191994 (N.D. Cal. May 23, 2014) ...............25, 26

*Shand-Pistilli v. Professional Account Services, Inc.*,
    No. 10-01808, 2011 WL 2415142 (E.D. Pa. June 16, 2011) ............................22

*Smith v. Chrysler Fin. Co., L.L.C.*,
    No. 00-CV-6003, 2004 WL 3201002 (D.N.J. Dec. 30, 2004) ..........................29

*Spangle v. Valley Forge Sewer Auth.*,
    839 F.2d 171 (3d Cir. 1988) ..............................................................................12

*Van Patten v. Vertical Fitness Group, LLC*,
    22 F. Supp. 3d 1069 (S.D. Cal. 2014)....................................................13, 24, 25

*Williams v. Borough of W. Chester, Pa.*,
    891 F.2d 458 (3d Cir. 1989) ..............................................................................12

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
    80 F. Supp. 3d 610 (E.D. Pa. 2015)........................................................30, 31, 32

## RULES

Fed. R. Civ. P. 23(d)(1)(D) ............................................................................... 30

Fed. R. Civ. P. 56(c)....................................................................................11, 12

## STATUTES

47 C.F.R. § 64.1200(a)(1) ........................................................................13

47 U.S.C. § 227(b)(1)(A) ..........................................................................13

47 U.S.C. § 227(b)(1)(A)(iii) ...................................................................32

Cal. Bus. & Prof. Code § 17200 ..............................................................24

Cal. Bus. & Prof. Code § 17203 ..............................................................27

Cal. Bus. & Prof. Code § 17204 ........................................................25, 26

Cal. Civ. Code § 1788.7 ............................................................................19

Cal. Civ. Code § 1788.11(d) ...............................................................19, 20

Cal. Civ. Code § 1788.11(e) ...............................................................19, 20

## OTHER AUTHORITIES

1 James M. McLaughlin, McLaughlin on Class Actions § 3:4 (11th ed. 2014).............31

5 James Wm. Moore, Moore's Federal Practice ¶ 23.21[3][c] (3d ed. 2007).........31

Restatement 2d of Torts, § 892A, cmt. 1 (1979) .....................................18

# I.   <u>INTRODUCTION</u>

The material facts of this case are straightforward and undisputed.  In 2007, Plaintiff Charlene Martinez ("Plaintiff") opened a Target REDcard credit card account with Defendant Target Corporation ("Target").[1]  Over the years, Plaintiff changed her address no less than 8 times with Target, utilizing different methods for providing this updated information.  In September of 2012, Plaintiff updated her address via the Manage My REDcard website and also provided her phone number ending in -2420.  Plaintiff also listed the number as her "home" number and explicitly consented that Target could contact her at that number using an autodialer.

In late 2014, Plaintiff's REDcard account became delinquent, and Target began calling her regarding the account.  Over the course of seven and a half months, Target continued to call Plaintiff and she never answered the phone, other than two initial calls in August of 2014, the first of which where the person on the line said that Plaintiff was not home, and the second of which where a promise to pay was made.  Finally, on April 15, 2015, Plaintiff did answer the phone and informed Target that she was filing for bankruptcy, and provided the name and

---

[1] Defendant TD Bank USA, N.A. ("TD Bank") is the current owner of the REDCard portfolio, and Target acts as servicer.

phone number of her bankruptcy attorney.  Target never made another call to Plaintiff after that April 15, 2015 conversation.

Nonetheless, in October of 2015, Plaintiff filed this action seeking to hold TD Bank liable for violations of the Telephone Consumer Protection Act ("TCPA"), and in March of 2016, filed a First Amended Class Action Complaint ("Amended Complaint") to add Target as a Defendant and further allege violations of two California statutes, the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act") and the California Unfair Competition Law (the California "UCL").  The undisputed facts are that Plaintiff provided her cell phone number to Target and gave prior express consent to be called via an autodialer on that number.  After refusing to answer the phone for over seven months, she finally answered on April 15, 2015, informed Target that she was in bankruptcy, and the calls immediately stopped.  Not only has Plaintiff failed to set forth facts showing that she was called without her prior express consent under the TCPA, but her failure to even answer the calls relating to her account defeats any alleged harassment in violation of the Rosenthal Act, and the California UCL is wholly inapplicable to the facts of this case.

As set forth more fully herein, the simple and undisputed facts demonstrate that Target and TD Bank are entitled to summary judgment as to all of Plaintiff's claims.

## II.     FACTUAL BACKGROUND

### a. Plaintiff Opens a Target REDcard Account, Agrees to Receive Calls, and Provides Her Phone Number on the Manage My REDcard Website

Plaintiff opened a Target REDcard credit card account in 2007 (the "REDcard account"). *See* Defendants' Statement of Undisputed Facts ("SOF") at ¶ 1. At that time, Plaintiff's account agreement stated that "We or our agents may call by telephone regarding your Account. You agree that we may place such calls using an automated dialing/announcing device. You agree that we may make such calls to a mobile phone or other similar device…" SOF at ¶ 3. In or around 2011, Plaintiff obtained the phone number at issue in this case, ending in -2420 (the "2420 phone number"). SOF at ¶ 4.

On September 17, 2012, Plaintiff provided the 2420 phone number to Target on the Manage My REDcard website, while utilizing the website for the purpose of updating her mailing address. SOF at ¶ 5. When providing the 2420 phone number, Plaintiff listed it on the website as her "Home" phone number. SOF at ¶ 6. At the time that Plaintiff provided the 2420 phone number to Target on the Manage My REDcard website, she received the following disclosure which stated, "BY PROVIDING ONE OR MORE TELEPHONE NUMBERS ON THIS PAGE, YOU CONSENT TO RECEIVE, AT THE TELEPHONE NUMBER(S), AUTODIALED AND PRERECORDED CALLS FROM US OR ON OUR

3

BEHALF."  SOF at ¶ 8.  Plaintiff had to click "Submit" after this disclosure was

provided.  SOF at ¶ 9.  Plaintiff never informed Target that the 2420 phone number

was a cell phone.  SOF at ¶ 7.

During the time that Plaintiff had the REDcard account, she changed her

address with Target at least eight times, and she was aware that she could utilize

other methods to update her address or phone number, including calling Target and

updating her address or phone on the back of a monthly statement.  SOF at ¶¶ 10-

12.  In particular, Plaintiff updated her phone number and/or address with Target

on the following dates, using the following methods:

- On July 8, 2008, Plaintiff changed her address by writing the new address on her monthly statement and mailing it to Target—this is known as the "statement top" method of changing address.

- On July 22, 2008, Plaintiff called Target and provided a change of phone number using Target's automated phone system; she did not speak to a live customer service representative.

- On July 16, 2009, Plaintiff called Target and provided a change of address to a live customer service representative over the phone.  She also provided an updated home telephone number, ending in -2659.

- On December 2, 2009, Plaintiff called Target and provided a change of address to a live customer service representative over the phone.  She did not provide an updated phone number at that time.

- On May 27, 2010, Plaintiff submitted a change of address by statement top to Target.  She did not provide an updated phone number.

4

- On <u>March 21, 2011,</u> Plaintiff called Target and provided a change of address using Target's automated phone system; she did not speak to a live customer service representative.  During that call, she changed the phone number on her account from the number ending in -2659 to a number ending in -2460.  She was asked if that phone number was associated with a cell phone, and she said no.

- On <u>June 27, 2011</u>, Plaintiff called Target and provided a change of address to a live customer service representative over the phone.  During this call, Plaintiff withdrew consent for Target to call the 2460 number.

- On <u>September 17, 2012</u>, Plaintiff provided an updated address using Target's online Manage My REDcard website.  As stated above, Plaintiff provided an updated "home" phone number—ending -2420—and gave express consent to Target to call her on that number.  Plaintiff also provided an updated email address during this transaction.

- On <u>September 9, 2013</u>, Plaintiff called Target and provided a change of address to a live customer service representative over the phone.  She did not provide an updated phone number.

- On <u>July 9, 2014</u>, Plaintiff again provided an updated address using Target's online Manage My REDcard website.  She did not provide an updated phone number during this online transaction.  Because no new phone number was provided, Plaintiff did not change the consent status that applied to her existing phone number—Target still had consent to call the number ending -2420.  (Similarly, if Plaintiff had not given her consent to receive calls from Target at that number, that consent status would have not have changed merely because Plaintiff provided an updated address.)

- On <u>August 30, 2014</u>, Target called Plaintiff, and Plaintiff inquired about a late fee applied to her account.  Target waived the late fee and Plaintiff made a payment.

- On <u>October 14, 2014</u>, Plaintiff called Target and provided a change of address to a live customer service representative over the phone.  She

also requested an additional copy of her printed monthly statement, but did not provide an updated phone number. This call occurred during the period in which Target was placing the collection calls to Plaintiff that are at issue in this case.

SOF at ¶ 12. Plaintiff also had landline telephone service in her name through Cox Communications during 2014 and 2015, when the calls to her cell phone at issue in this case occurred. SOF at ¶ 13. She never provided that number to Target.

### b. Plaintiff's Account Becomes Delinquent and Target Tries to Reach Her Between August of 2014 and April 15, 2015

In late 2014, Plaintiff's Target REDcard account became delinquent. SOF at ¶ 14. Between late August of 2014 and April of 2015, Target placed 165 calls to the 2420 phone number relating to Plaintiff's delinquent account. SOF at ¶ 15. It is undisputed that Target's dialer records contains an accurate description of the date, time, duration, and content of Defendants' calls to Plaintiff. SOF at ¶ 16. Those dialer records show that someone answered the first two calls to Plaintiff's cell phone in August of 2014 – one where the person said that Plaintiff was not home, and another where a promise to pay was made. SOF at ¶ 17. During the next seven and a half months, Target placed another 162 calls to Plaintiff, and none of them were answered. *Id.* In particular, Plaintiff received two calls per day on 19 days, and received three calls per day on only 2 days. *Id.* Plaintiff never received more than three calls in a single day. *Id.* Plaintiff cannot contradict

Target's dialer records, as she has no call logs and cannot estimate the number of calls she received between August 2014 and April 2015.  SOF at ¶ 19.

### c. Following the April 15, 2015 Conversation with Target, All Calls Ceased

The only call in which Plaintiff answered her phone and spoke to anyone after the two initial calls in August of 2014, occurred on April 15, 2015.  On that day, Plaintiff answered her phone when Target called her and informed Target that she was filing for bankruptcy.  SOF at ¶ 17.  On that call, Plaintiff provided her bankruptcy attorneys' name and telephone number.  SOF at ¶ 17.  No further calls occurred to Plaintiff's cell phone after that date.  *Id.*  Plaintiff no longer uses the 2420 phone number at issue in this case.  SOF at ¶ 26.

### d. Plaintiff Has No Evidence of Calls That Were Not Consented To, and No Evidence of Damages Sustained as a Result of the Phone Calls

Plaintiff made allegations in her Amended Complaint that she faxed cease and desist letters to TD Bank and Target on April 10, 2015 asking to no longer be called on the 2420 phone number, and that she asked Target to stop calling her on April 14, 2015.  Amended Complaint at ¶¶ 33-36.  Further, Plaintiff also alleged damages relating to use of the cell phone, electricity costs for charging her cell phone, and emotional damages.  Amended Complaint at ¶¶ 51, 59, 68.  However, discovery in this case has proven all of these initial allegations to be false and unsupported.  SOF at ¶ 18, 23-25.

While Plaintiff alleges that her attorney may have faxed cease and desist letters to Defendants in April of 2015, Plaintiff could not authenticate that they were actually sent, neither TD Bank nor Target have any record of receiving them, and the alleged fax numbers were never provided to customers by TD Bank or Target as a way to revoke consent.  SOF at ¶ 22.  In addition, while Plaintiff initially alleged that she spoke with Target on April 14, 2015 and asked them to stop calling her, and then changed her responses in discovery to state that she spoke to Target on April 14, 2015 *and* on April 15, 2015, she ultimately admitted in her deposition that it is possible that her memory is incorrect.[2]  SOF at ¶ 18.  As noted above, the dialer records show that the *only* conversation occurred on April 15, 2015.  SOF at ¶ 17.

Further to this point, Plaintiff originally stated that she never placed any calls to Defendants to ask them to cease calling her 2420 phone number, but later stated that she did call Defendants.  However, she has no record of these calls.  SOF at ¶ 20.  In fact, the records show that Plaintiff did speak with Target numerous times during the relevant period, but she never asked Target to stop calling the 2420 phone number.  SOF at ¶ 21.  Simply put, Plaintiff's initial

---

[2] Plaintiff cannot create a genuine issue of material fact based on her own lack of knowledge or memory.  *See, Groff v. Cont'l Ins. Co.*, 741 F. Supp. 541, 548 (E.D. Pa. 1990) ("lack of memory or knowledge alone is insufficient to create a genuine issue of material fact").

allegations that she revoked consent at some point, leading to calls being placed without her consent, are simply untrue.

Plaintiff also has provided no support for her allegations that she has been damaged.  First, despite alleging an increase in her electricity bills, discovery has shown this to be unsupported, as she produced one bill from August 2016.  SOF at ¶ 23.  Nor could Plaintiff testify as to any increase in her electricity bills attributable to Target, as she would usually charge her phone overnight, and she and her husband both started receiving calls from creditors other than Target between August of 2014 and April 2015, in the months leading up to bankruptcy. *Id.*

Second, and similarly, Plaintiff has provided no support for her initial allegations that she had to pay more relating to her 2420 phone number as a result of the calls from Target.  Plaintiff was never a named subscriber on the cell phone account containing the 2420 phone number.  SOF at ¶ 24.  The 2420 phone was provided through a group plan with an entity owned by Plaintiff's husband, and the plan included dozens of lines.  *Id.*  Plaintiff produced only one page of a cell phone bill for the month of July 2016, showing a plan with unlimited talk and text.  *Id.* Plaintiff's husband contributed to some portion of the cell phone bill for the 2420 phone number, but the amount is unclear.  *Id.*  Plaintiff received calls from other creditors between August 2014 and April 2015, and she does not know of any way

9

to calculate the cost of any overages between August 2014 and April 2015, or any way to determine whether any overages were caused by calls from Target. *Id.*  As a result, Plaintiff has provided no evidence of any damages sustained relating to the cell phone.

Finally, Plaintiff testified that she has not suffered any emotional distress as a result of the calls.  SOF at ¶ 25.  Of note, the call logs reflect a total of three conversations with Target as a result of Target calling the 2420 phone number – one in which she was not home, another in which someone promised to pay, and a third months later where she stated that she was in bankruptcy.  SOF at ¶ 17.  None of the other calls was ever even answered.

As such, there are no genuine issues of material fact in dispute – (1) all calls were made to Plaintiff with her prior express consent; and (2) Plaintiff suffered no damage as a result of any of the calls.  As such, judgment should be entered in favor of the Defendants on all counts alleged in Plaintiff's Amended Complaint, as a matter of law.

### III.   <u>PROCEDURAL HISTORY</u>

On or about October 26, 2015, Plaintiff filed a Class Action Complaint against TD Bank alleging a violation of the TCPA relating to calls placed to her cell phone relating to her Target REDcard account.  See Dkt. 1.  On January 11, 2016, TD Bank submitted an Answer and Affirmative Defenses to Plaintiff's

Complaint.  Dkt. 18.  On or about February 23, 2016, the Parties filed a Stipulation to permit Plaintiff to file a First Amended Class Action Complaint, to add Target as an additional Defendant, and to add an additional claim.  Dkt. 23.  On March 1, 2016, Plaintiff filed her First Amended Class Action Complaint ("Amended Complaint"), alleging violation of the TCPA, the Rosenthal Act, and the California UCL.  *See* Dkt. 25.

On or about May 27, 2016, Defendants Target and TD Bank filed a motion to dismiss Counts II and III of Plaintiff's First Amended Complaint, specifically the claims alleging a violation of the Rosenthal Act and the California UCL.  That briefing was complete on July 12, 2016.  Dkt. 45.  This motion to dismiss remains pending, and Defendants Target and TD Bank maintain that there are strong arguments for dismissal of both of those claims, which has only been confirmed and bolstered through discovery in this matter.

On July 12, 2016, the Parties attended a status conference where they agreed to bifurcate discovery and proceed with individual discovery first.  *See* Dkt. 44. The Parties thereafter held another status conference with the Court and agreed to a discovery schedule providing for a deposition of Plaintiff, followed by a Rule 30(b)(6) deposition of Defendant(s), and then summary judgment due on November 11, 2016.

## IV.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedures 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Co. v. Catrett,* 477 U.S. 317, 322 (1986); *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir. 1988).

To prevail on a motion for summary judgment, the moving party must show there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(c). "The moving party is not required to negate the nonmovant's claim, but is only required to point out the lack of evidence supporting the nonmovant's claim." *Carrigan v. State of Del.,* 957 F. Supp. 1376, 1381 (D. Del. 1997) (citation omitted).

Once a party puts forth a properly supported motion for summary judgment, the burden is on the non-moving party to set forth specific material facts demonstrating a genuine issue for trial. *Celotex,* 477 U.S. at 323.  A fact issue is considered "genuine" only if there is sufficient evidence on which a reasonable jury could base a finding in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  Where no reasonable resolution of the conflicting evidence and inferences from such evidence could result in a judgment

for the non-moving party, the moving party is entitled to summary judgment.  *See*

*Williams v. Borough of W. Chester, Pa.,* 891 F.2d 458, 460 (3d Cir. 1989).

## V.    ARGUMENT

### a. Defendants Are Entitled to Summary Judgment on the TCPA Claim

The TCPA prohibits any person from placing autodialed calls to cell phones

without the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(A).

There are three elements to a TCPA claim:  "(1) the defendant called a cellular

telephone number; (2) using an automatic telephone dialing system; (3) without the

recipient's prior express consent."  *Van Patten v. Vertical Fitness Group, LLC,* 22

F. Supp. 3d 1069, 1073 (S.D. Cal. 2014) (citation omitted); *See also,* 47 C.F.R.

§ 64.1200(a)(1).  Ultimately, there is no violation of the TCPA where "express

consent" is given by the called party before the call is placed.  47 U.S.C.

§ 227(b)(1)(A).  The focus here is on the third element, which is an affirmative

defense to TCPA liability.  *Van Patten,* 22 F. Supp. 3d at 1073.

#### i.  Plaintiff Provided Prior Express Consent Before All of the Calls

Congress has delegated to the Federal Communications Commission

("FCC") the authority to promulgate regulations to implement the requirements of

Section 227.  *See Dixon v. Monterey Financial Services, Inc.,* No. 15-cv-03298,

2016 WL 3456680 at *2 (N.D. Cal. June 24, 2016).  The FCC has therefore

implemented rules addressing the meaning of "prior express consent."  *Id.*

Specifically, the FCC has stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (herein after "1992 FCC Order"), 7 FCC Rcd. 8752, 8769, ¶ 31 (Oct. 16, 1992).

Further, the FCC has clarified that a party who provides his or her wireless number to a creditor as part of a credit application "reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (hereinafter "2008 FCC Order"), 23 FCC Rcd. 559, 564, ¶ 9 (Jan. 4, 2008). The FCC emphasized that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at 564-65, ¶ 10. "[T]he authorities are almost unanimous in holding that voluntarily furnishing a cell phone number to a vendor or other contractual counterparty constitutes express consent." *Reyes v. Lincoln Automotive Fin. Services,* No. CV-15-0560, 2016 WL 3453651, at *2 (E.D.N.Y. June 20, 2016) (citing *Saunders v. NCO Fin. Sys., Inc.,* 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) (collecting cases) (granting summary judgment for defendant on TCPA claim

where plaintiff provided cell phone number to party in which it had a contractual relationship).

In addition, the majority of cases have held that the 2008 FCC Order is "best interpreted as allowing express prior consent to arise from phone numbers provided after the debt was originated." *Haysbert v. Navient Solutions, Inc.,* No. CV 15-4144, 2016 WL 890297 at *8 (C.D. Cal. Mar. 8, 2016) (finding prior express consent where plaintiff provided cell phone number on website while accessing his student loan statements); *See, e.g., Hill v. Homeward Residential Inc.,* 799 F.3d 544, 551-52 (6th Cir. 2015) (explaining "during the transaction" means that "creditors can call debtors only 'to recover payment for obligations owed,' not on any topic whatsoever") (citing 2008 FCC Order).

The evidence here establishes that Plaintiff provided her prior express consent to receive phone calls on the 2420 phone number, negating an essential element of any TCPA claim.  It is undisputed that Plaintiff opened her Target REDcard credit card account in 2007, and her account agreement stated that "We or our agents may call by telephone regarding your Account.  You agree that we may place such calls using an automated dialing/announcing device.  You agree that we may make such calls to a mobile phone or other similar device…"  SOF at ¶¶ 1, 3.

On September 17, 2012, Plaintiff voluntarily[3] provided the 2420 phone number to Target on the Manage My REDcard website when updating her mailing address, and she received the following disclosure which stated, "BY PROVIDING ONE OR MORE TELEPHONE NUMBERS ON THIS PAGE, YOU CONSENT TO RECEIVE, AT THE TELEPHONE NUMBER(S), AUTODIALED AND PRERECORDED CALLS FROM US OR ON OUR BEHALF." SOF at ¶¶ 8-9. Not only did Plaintiff provide the 2420 phone number to a party during the time of the contractual relationship and as part of the relationship with a creditor to fully satisfy the element of prior express consent, but she also expressly agreed in writing to receive autodialed calls on that number when she provided the number and hit "Submit." *Id.* Plaintiff particularly provided knowing consent to be called, because she did so knowing that she could revoke consent – as she had done in the past with another number that she provided to Target. SOF at ¶ 12. Therefore, Defendants did not violate the TCPA and the Court should grant this Defendants' Motion for Summary Judgment as to the TCPA claim.

---

[3] During Plaintiff's relationship with Target, she changed her address and/or phone number at least eight times, and she was aware that she could utilize other methods to update her address, including calling Target and/or updating her address on the back of a monthly statement, which she used multiple times. SOF at ¶¶ 10-12.

### ii.  All Calls Placed to Plaintiff's Cell Phone Were Placed Prior to Any Revocation of Consent

Not only is it undisputed that Plaintiff provided her prior express consent to be called, negating any TCPA violation, but it is also undisputed that she did not revoke that consent at any time prior to the final call that she received from Defendants on April 15, 2015.

Prior express consent can be revoked by any reasonable manner that clearly expresses the consumer's desire to not receive further calls, including orally, based on the common law analysis of consent.  *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (hereinafter "2015 FCC Order"), 30 F.C.C. Rcd. 7961, 7977, ¶ 67 (July 10, 2015).  To avoid a "he said, she said" situation regarding revocation, the FCC "expect[s] that responsible callers, cognizant of their duty to ensure that they have prior express consent under the TCPA and their burden to prove that they have consent, will maintain proper business records tracking consent."  *Id.* at 7998, ¶ 70.  The FCC states that "well-established evidentiary value of business records means that callers have reasonable ways to carry their burden of proving consent."  *Id.*

Courts discussing revocation of consent under the TCPA often look to common law understanding of consent.  *See Gager v. Dell Financial Services, LLC,* 727 F.3d 271 (3d Cir. 2013) (holding that consent can be revoked under the TCPA and citing that consent "is terminated when the actor knows or has reason to

17

know that the other is no longer willing for him to continue the particular conduct") (citing Restatement 2d of Torts, § 892A, cmt. 1 (1979)); *Reyes,* 2016 WL 3453651 at **2-3 (finding that letter allegedly sent to revoke consent that was not received was insufficient to demonstrate that plaintiff revoked consent and granting summary judgment for defendant). Further, a plaintiff's subjective intent in revoking consent is irrelevant to the analysis. *See Dixon*, 2016 WL 3456680 at *3 (subjective intent does not impact the analysis, instead looking to the words used by plaintiff during relevant calls).

The undisputed evidence here results in two conclusions: (1) Plaintiff's alleged cease and desist letters are not operative, as they were never received by the Defendants; and (2) Plaintiff never revoked consent at any time prior to the final April 15, 2015 call.

First, Target's undisputed call log shows that the only time[4] that Plaintiff spoke to anyone at Target in April of 2015 was on April 15, 2015, and no calls occurred thereafter. SOF at ¶¶ 16-19. Further, Target's call logs show that Plaintiff never called to revoke consent to be called on the 2420 phone number at any time between August of 2014 and April of 2015. SOF at ¶ 20-21. On

---

[4] The dialer records reflect a total of three instances between August of 2014 and April of 2015 where Plaintiff (or someone with Plaintiff's phone) answered a call from Target – one in which Plaintiff was not home on August 29, 2014, another in which someone promised to pay on August 30, 2014, and a third one months later where Plaintiff stated that she was in bankruptcy. SOF at ¶ 17.

April 15, 2015, Plaintiff answered the cell phone when Target called her and informed Target that she was filing for bankruptcy.  SOF at ¶ 17.  On that call, Plaintiff provided her bankruptcy attorneys' name and telephone number.  *Id.*

Second, while Plaintiff alleged that her attorney may have faxed cease and desist letters to Defendants in April of 2015, Plaintiff could not authenticate that they were actually sent, neither TD Bank nor Target have any record of receiving them, and the alleged fax numbers were never provided to customers by TD Bank or Target as a way to revoke consent.  SOF at ¶ 22.  Simply put, Plaintiff's initial allegations that she revoked consent at some point, leading to calls being placed without her consent, are simply unsupported.  Thus, the Court should enter summary judgment in favor of the Defendants and against Plaintiff on her TCPA claim.

### b. <u>Defendants Are Entitled to Summary Judgment on the Rosenthal Act Claim</u>

Plaintiff alleges in her Amended Complaint that Defendant violated the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), specifically citing Cal. Civ. Code §§ 1788.11(d) and (e), which address "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with such frequency as to be unreasonable and to constitute harassment."  *See* Amended Complaint at ¶ 57.  Plaintiff also cites to Cal. Civ. Code Section 1788.7, which incorporates failure to comply with provisions of the Federal Debt Collection

Practices Act ("FDCPA"), Sections 1692b through j, which also relate to harassment or abuse of a person in connection with collection of a debt. *Id.* Defendants are entitled to summary judgment on Plaintiff's Rosenthal Act claim, as the undisputed call logs show that no harassment occurred.

### i. The Call Logs Demonstrate That No Harassment Occurred

Under the Rosenthal Act, "it is unlawful to cause 'a telephone to ring repeatedly or continuously to annoy the person called" or "communicating by telephone or in person, with the debtor with such frequency as to be unreasonable and constitute an harassment to the debtor under the circumstances." *Arteaga v. Asset Acceptance, LLC,* 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010) (citing Cal. Civ. Code 1788.11(d) and (e)).

In analyzing claims under the Rosenthal Act, courts often look to analysis of FDCPA claims, as "actionable harassment or annoyance under [the] Rosenthal Act may be based on either the volume or pattern of calls, similar to FDCPA analysis." *Id.* (citation omitted) (granting summary judgment to defendant under the FDCPA and Rosenthal Act where there was no evidence of immediate calls being placed after hanging up, calls to plaintiff's place of employment or to family and friends during odd hours, or calls occurring multiple times in a single day). *See also, Reddin v. Rash Curtis & Assoc.,* No. 2:15-01305, 2016 WL 3743148 at *5 (E.D. Cal. July 13, 2016) ("[b]ecause the court finds that defendant is entitled to

summary judgment on plaintiff's FDCPA claim, the court must also grant

defendant's motion for summary judgment on her RFDCPA claim"), *appeal filed*,

No. 16-16251 (9th Cir. July 19, 2016)).

"The determination of whether a debt collection agency's[5] telephone calls

amount to 'actionable harassment or annoyance turns not only on the volume of

calls made, but also on the pattern of calls.'" *Saltzman v. I.C. System, Inc.*, No. 09-

10096, 2009 WL 3190359 at *7 (E.D. Mich. Sept. 30, 2009). "Court opinions

differ, however, as to the amount or pattern of calls sufficient to raise a triable

issue of fact regarding the intent to annoy, harass, or oppress." *Arteaga,* 733

F.Supp.2d at 1227. "Although there is no bright-line rule, certain conduct

generally is found to either constitute harassment, or raise an issue of fact as to

whether the conduct constitutes harassment, while other conduct fails to establish

harassment as a matter of law." *Id.* For instance, immediately recalling a debtor

after a debtor has hung up the phone has been viewed as harassment. *Id.* (noting

example of harassment where debt collector recalled debtor's place of employment

two additional times within five minute period). Courts have also determined

continued calls after a request to cease and desist communications, particularly

---

[5] Defendants also dispute Plaintiff's conclusory allegation that they are "debt collectors" under the statute, as set forth in Defendants' dismissal papers, which are still pending. *See* Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 39-1) at pp. 10-11. By filing this Motion, Defendants do not waive any of the arguments set forth in their Memorandum of Law in Support of Motion to Dismiss.

when accompanied by intimidating or threatening conversations, to be indicative of

harassment. *Id.* Further, calling a debtor at their workplace, calling the homes of

family and friends, and calling multiple times in a short period (for example, six

calls in 24 minutes), can, at times, constitute harassment. *Id.* at 1228. In contrast,

other conduct has been deemed to *not* constitute harassment, including: stating

that a case was "urgent" in a message, telling a debtor that they would get their

money "one way or another" and making seven calls in one day. *Id.* at 1228-29.

For example, in *Saltzman,* the court found the alleged conduct of calls being

placed to a debtor every day, sometimes several calls per day, after a request to

stop calling, and allegations of "rude and abusive conversations" to not constitute

harassment, warranting the entry of summary judgment for the defendant.

*Saltzman,* 2009 WL 3190359 at *6-7. The court found that defendants only placed

calls to the plaintiff's home and that plaintiff did not answer the vast majority of

the calls, as she recognized the defendant's number on her caller ID. *Id.* at *7.

The court noted that the pattern of calls showed a "legitimate, albeit persistent,

effort to reach [the plaintiff]" and that "the FDCPA does not prohibit such

legitimate attempts to contact a debtor." *Id. See also, Shand-Pistilli v. Professional

Account Services, Inc.,* No. 10-01808, 2011 WL 2415142 at *6 (E.D. Pa. June 16,

2011) (granting summary judgment for defendant on FDCPA claims, finding that

"defendant's phone calls to plaintiff were legitimate attempts to reach her").

The content of Target's dialer records are undisputed.  SOF at ¶ 16.  In late 2014, Plaintiff's Target REDcard account became delinquent.  SOF at ¶ 14. Between late August of 2014 and April of 2015, Target placed 165 calls to Plaintiff's 2420 phone number relating to Plaintiff's delinquent account.  SOF at ¶ 15.  Those dialer records show that someone answered the first two calls to the 2420 phone number in August of 2014 – one where the person said that Plaintiff was not home, and another where a promise to pay was made.  SOF at ¶ 17. During the next seven and a half months, Target placed another 162 calls to Plaintiff, none of which was answered.  *Id*.  In particular, Plaintiff received two calls per day on 19 days, and received three calls per day on only 2 days.  *Id.* Plaintiff never received more than three calls in a single day.  *Id.*  The only call in which Plaintiff answered her phone and spoke to anyone after August of 2014 was on April 15, 2015.  On that day, Plaintiff answered the cell phone and informed Target that she was filing for bankruptcy, and no further calls occurred.  SOF at ¶ 17.

The details of the dialer records show that the conduct here does not create any inference that harassment occurred – there were no calls to Plaintiff's relatives or place of employment, no harassing content or messages, and no immediate recalling after Plaintiff answered.  Rather, Plaintiff in essence never answered the calls relating to her delinquent account, and these calls were nothing more than

legitimate attempts to reach her regarding the outstanding account.  As such,

summary judgment should be entered in favor of Defendants and against Plaintiff

on the Rosenthal Act claim.

### c. **Defendants Are Entitled to Summary Judgment on the UCL Claim**

Plaintiff also alleges in her Amended Complaint that Defendants violated

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et*

*seq*, which broadly prohibits any unlawful, unfair, or fraudulent business act or

practice.  Amended Complaint at ¶¶ 61-69.  However, while Plaintiff cannot

sustain this claim for a multitude of reasons, the most obvious deficiency is that

Plaintiff has not shown any economic injury sufficient to establish standing to

bring a claim, and further, she cannot avail herself to either remedy under the

statute – restitution or injunctive relief – because they simply do not apply here.

*See Van Patten,* 22 F. Supp. 3d at 1080-81 (summary judgment granted for

defendant on UCL claim in TCPA case, where plaintiff's only "economic injury"

was receiving texts on an unlimited texting plan).

### i. **Plaintiff Has Failed to Show an Economic Injury Caused by Defendants**

Under the UCL, a private party has standing to bring an action only if she

"has suffered an injury in fact and has lost money or property as a result of the

unfair competition."  Cal. Bus. & Prof. Code § 17204; *see Sepehry-Fard v. MB*

*Fin. Servs.*, No. 13-cv-02784, 2014 WL 2191994, at *5 (N.D. Cal. May 23, 2014)

("[S]tanding to maintain a UCL claim requires a showing of an *economic* injury

caused by the unlawful conduct[.]") (emphasis in original).  Further, "the economic

injury must be 'non-trivial.'"  *Van Patten,* 22 F. Supp. 3d at 1080 (finding no

economic damages or cognizable injury to sustain UCL claim where cell phone

had unlimited plan, and noting that cases finding Article III standing under the

TCPA are no help to plaintiff in claiming standing under the UCL).  Here, the

undisputed material facts show that Plaintiff cannot establish an economic injury.

The only economic injuries that Plaintiff pleads in her Amended Complaint

are "consumed battery life [and] increased electrical usage" and diminished "use"

and "utility" of her "cellular telephone plan".  Amended Complaint at ¶ 38.[6]  The

undisputed facts, however, show that neither Plaintiff's electricity bill nor her

phone bill increased as a result of Defendants' alleged activity.  *See* SOF at ¶¶ 23-

24.  As to her electricity bill, Plaintiff testified that she charged her phone

overnight, demonstrating that the amount of time the phone was charged bears no

correlation with the number of times she was called by Defendants.  *See id.* at ¶ 23.

Plaintiff otherwise presented no evidence that her bill increased as a result of

---

[6] Plaintiff's allegation that she suffered diminished "enjoyment" of her cell phone (Amended Complaint at ¶ 38) is a non-economic injury that does not confer standing under the UCL, as Defendants have previously noted.  *See* Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 39-1), at 12-13.

Defendants' alleged activity, and in fact only provide one bill for an irrelevant month, August of 2016. *Id.* Similarly, Plaintiff's cell phone was provided through a group plan which provided for unlimited talk and text, and Plaintiff otherwise presented no evidence of an increase in her bill. *See* SOF at ¶ 24.[7]  Because Plaintiff has failed to produce any evidence of economic injury, she lacks standing to bring her UCL claim and summary judgment should be granted in favor of Defendants. *See Sepehry-Fard*, 2014 WL 2191994, at *6 (dismissing UCL claim for failure to plead economic injury).

Plaintiff's UCL claim should also be denied because she has failed to present any evidence that any economic injury she *did* suffer was caused by Defendants' alleged conduct. To have standing to bring a UCL claim, Plaintiff must have suffered an economic injury "as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 522 (2013) (noting that a plaintiff must show a "causal connection between the economic injury and the alleged unfair conduct" and "[a] plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered the same harm whether or not a defendant complied with the law") (internal quotation

---

[7] Further, the cell phone was provided to Plaintiff by an entity owned by Plaintiff's husband, Plaintiff was never a named subscriber, and she has only provided one partial cell phone bill for the irrelevant month of July 2016. SOF at ¶ 24.

marks and citations omitted).  But Plaintiff has stated that she and her husband

started receiving calls from multiple creditors between August of 2014 and April

of 2015.  *See* SOF ¶¶ 23-24.  Thus, even to the extent that Plaintiffs' electricity or

cell phone bills did increase (of which there is no evidence), she cannot

demonstrate that those increases were caused by Defendants' conduct rather than

that of her other creditors.  *See Jenkins*, 216 Cal. App. 4th at 523 (holding that

plaintiff lacked standing because she "cannot show any of the alleged violations

have a causal link to her economic injury").

### ii.  Plaintiff Lacks Standing to Bring Her UCL Claim Because She Is Not Entitled to Restitution or Injunctive Relief

Plaintiff's claim under the UCL fails for yet another reason.  Under the

UCL, a court "may make such orders . . . as may be necessary to prevent . . .

unfair competition or . . . to *restore* to any person in interest any money or

property, real or personal, *which may have been acquired* by means of such unfair

competition."  Cal. Bus. & Prof. Code § 17203 (emphasis added).  Thus,

"[p]revailing plaintiffs are generally limited to injunctive relief and restitution."

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

(noting that "damages cannot be recovered" under the UCL).  As Defendants

previously explained, Plaintiff lacks standing to pursue her UCL claim because she

is not entitled to either restitution or injunctive relief.[8]  Discovery has only

confirmed that Plaintiff lacks standing and therefore her UCL claim should be

denied on this basis as well.

     The only monetary relief available for a UCL claim is "an order for

restitution . . . compelling a UCL defendant to *return money obtained* through an

unfair business practice to those persons in interest from whom the property was

taken[.]"  *Id.* at 1149 (quotation marks and citation omitted).  Because Defendants

did not and could not have obtained any money from the Plaintiff through the mere

act of calling her, there is nothing to return and therefore Plaintiff is not entitled to

restitution.  *See Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-cv-05064,

2016 WL 2851571, at *12 (N.D. Cal. May 16, 2016) ("Put simply, UCL restitution

is limited to money in the hands of the defendants due to the alleged unfair

business practices."); *Mejia v. EMC Mortg. Corp.*, No. CV 09-4701, 2012 WL

367364, at *5 (C.D. Cal. Feb. 2, 2012) (holding that "plaintiffs have failed to

allege facts establishing any restitutionary or other equitable remedies" where they

merely alleged "lost money or property" because "[t]hese types of damages . . . are

not recoverable under the UCL").[9]

---

[8] *See* Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 39-1), at 15-18.

[9] To the extent Plaintiff alleges out of pocket losses attributed to payments on her REDcard account, such payments do not constitute harm to Plaintiff

*Continued on following page*

Nor has Plaintiff established a right to injunctive relief.  By bringing her claim in federal court, Plaintiff must meet the Article III requirements of a "'real and immediate threat that [s]he would again' suffer the injury in order to obtain standing for prospective relief."  *Smith v. Chrysler Fin. Co., L.L.C.*, No. 00-CV-6003, 2004 WL 3201002, at *4 (D.N.J. Dec. 30, 2004) (quoting *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987)); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004) ("A plaintiff whose cause of action [under the UCL] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury to establish Article III standing.") (quotation marks and citation omitted).  As Defendants previously noted, Plaintiff has not alleged that she has received any calls from Defendants in over a year.[10] Moreover, it is impossible for Plaintiff to receive any additional calls from Defendants, as she no longer utilizes the 2420 phone number at issue in this case. *See* SOF ¶ 26.  It would therefore be impossible for Defendants to call Plaintiff on her 2420 phone number, thus eliminating any potential for future harm.  *See Circle*

---

*Continued from previous page*

because she does not dispute that she made charges to the card and owed that balance.  *See, Auerbach v. Great W. Bank*, 74 Cal. App. 4th 1172, 1189 (1999) (holding that payments on a note that one was already obligated to pay cannot be construed as damages).

[10] *See* Memorandum of Law in Support of Motion to Dismiss, at pp. 15-16 (citing Amended Complaint at ¶¶ 33-36).

*Click Media LLC v. Regus Mgmt. Grp., LLC*, No. 12-CV-04000, 2016 WL 3879028, at *4 (N.D. Cal. July 18, 2016) (holding that plaintiff "lacks Article III standing to seek injunctive relief under the UCL because it has not shown any threat of future injury"); *Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1149-50 (S.D. Cal. 2012) ("Plaintiff cannot show he is realistically threatened by a repetition of the alleged violation. Without a showing there is an actual and immediate threat that Plaintiff will be wronged again in the same way by Defendant, Plaintiff lacks standing under Article III to seek injunctive relief."). As such, summary judgment should be granted in favor of Defendants and against Plaintiff on the UCL claim.

### d. In the Alternative, Plaintiff's Class Allegations Should Be Stricken Because Plaintiff Improperly Proposes a Fail-Safe Class

Finally, and in the event that any of Plaintiff's claim survive summary judgment, this Court should strike the class allegations from the Amended Complaint, as Plaintiff impermissibly attempts to create a "fail-safe" class where the question of "whether a person qualifies as a member depends on whether the person has a valid claim." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015).[11] "[A]n essential prerequisite of a Rule 23

---

[11] This Court has the discretion to strike class allegations at any time pursuant to Federal Rule of Civil Procedure 23(d)(1)(D), which provides that "the court may issue orders that: require that the pleadings be amended to eliminate

*Continued on following page*

action is that there *be* a class, and 'courts have generally articulated this 'essential prerequisite' as the implied requirement of 'ascertainability'—that the members of a class are identifiable at the moment of certification[.]'" *Zarichny,* 80 F. Supp. 3d at 625 (citation omitted). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* (quoting *Marcus v. BMW of N.A. LLC*, 687 F.3d 583, 593 (3d Cir. 2012)); *see also* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.21[3][c] (3d ed. 2007) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class.").

Plaintiff proposes to bring this case on behalf of herself and the following class:

> Every individual in the United States who: (1) received a call on his or her cellular telephone; (2) placed by or on behalf of Defendants; (3) relating to a Target credit card; (4) using a dialer; and (5) where Defendants did not have prior express consent to place such call at the time it was placed.

---

*Continued from previous page*

allegations about representation of absent persons and that the action proceed accordingly[.]" Fed. R. Civ. P. 23(d)(1)(D). This rule "expressly authorizes a motion to strike class allegations." 1 James M. McLaughlin, McLaughlin on Class Actions § 3:4 (11th ed. 2014); s*ee Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming district court's judgment striking class allegations on defendants' Rule 23(d)(1)(D) motion and noting that "nothing in the rules says that the court must await a motion by the plaintiffs").

Amended Complaint at ¶ 39.  By defining the class as individuals called without

their *prior express consent*, Plaintiff seeks to create a class consisting only of

individuals to whom defendants are necessarily liable under the TCPA.  This is a

"heads, I win, tails you lose" proposition: "either the class members win or, if the

defense prevails, no class exists, and the putative class members, unbound by the

judgment, are free to pursue individual claims."  *Zarichny*, 80 F. Supp. 3d at 624.

Courts routinely reject this exact same proposed class in putative TCPA class

actions because it is not readily ascertainable without individualized fact-finding

and is defined in terms of the defendant's liability.  As the *Zarichny* court

reasoned:

> The putative TCPA class is comprised of those people who received
> CPRS telephone calls without the recipient's "prior express consent,"
> 47 U.S.C. § 227(b)(1)(A)(iii).   Since we are at the outset of this
> litigation, there is no way to provide notice to that putative class
> without the sort of extensive fact-finding that class actions should
> avoid.  Similarly, at the conclusion of the litigation, should CPRS
> prevail against Zarichny, any other putative class recipient would be
> free to litigate the same claim against CPRS. . . .  Therefore, we will
> strike Zarichny's class allegations from her lawsuit . . . .

*Id.* at 625-26; *see also Dixon*, 2016 WL 3456680 at *2 (striking class allegations in

TCPA case at summary judgment stage where class definition was fail-safe by

including those individuals that had not previously consented to calls);  *Boyer v.*

*Diversified Consultants, Inc.*, 306 F.R.D. 536, 538-40 (E.D. Mich. 2015)

(collecting cases and striking class allegation regarding persons who did not

provide phone numbers as impermissible fail-safe class); *Sauter v. CVS Pharmacy*, No. 2:13-cv-846, 2014 WL 1814076, at *6-8 (S.D. Oh. May 7, 2014) (same); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 12-cv-221, 2013 WL 275568, at *3-4 (E.D. Mo. Jan. 24, 2013) (same); *Espejo v. Santander Consumer USA, Inc.*, No: 1-12-cv-09431, 2016 WL 6037625 at *8 (N.D. Ill. Oct. 14, 2016) (same).  Plaintiff's proposed class is no different than the classes stricken in each of these cases, and therefore her class allegations should be stricken as well.

## VI.   CONCLUSION

For the reasons set forth above, Target and TD Bank are entitled to summary judgment as to all of the claims in Plaintiff's First Amended Class Action Complaint.  In the alternative, if any of Plaintiff's claims survive, the class allegations in Plaintiff's First Amended Class Action Complaint should be stricken.

Dated:  November 11, 2016                                 Respectfully submitted,

                                                                              */s/ Jarrod D. Shaw*
                                                                              Jarrod D. Shaw
                                                                              I.D. No. 015732004
                                                                              McGuireWoods LLP
                                                                              EQT Plaza
                                                                              625 Liberty Avenue, 23rd Floor
                                                                              Pittsburgh, PA 15222
                                                                              Tel:  (412) 667-6000
                                                                              Fax: (412) 667-6050
                                                                              jshaw@mcguirewoods.com

                                                                              Marc A. Lackner SBN # 111753

(admitted *pro hac vice*)
David S. Reidy SBN # 225904
(admitted *pro hac vice*)
McGuireWoods LLP
505 Sansome Street, Suite 700
San Francisco, CA 94111

*Counsel for TD Bank, USA, N.A.
and Target Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2016, I electronically filed the

foregoing using the Court's CM/ECF system, which will then send a notification of

such filing to all counsel of record.


*/s/ Jarrod D. Shaw*
Jarrod D. Shaw