# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN DIVISION

| | |
|---|---|
| CHARLENE MARTINEZ, individually and on behalf of all others similarly situated, | Case No.: 1:15-cv-07712-JBS-AMD |
| | Hon. Jerome B. Simandle |
| *Plaintiff*, | Magistrate Judge Ann Marie Donio |
| *v.* | |
| TD BANK USA, N.A., a National Bank, and TARGET CORPORATION, a Minnesota corporation, | |
| *Defendants*. | |

**PLAINTIFF CHARLENE MARTINEZ'S RESPONSE IN OPPOSITION TO DEFENDANTS TD BANK USA, N.A. AND TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

LEGAL STANDARD ......................................................................................... 6

ARGUMENT ...................................................................................................... 8

I.  Plaintiff's TCPA claim survives because Defendants called Plaintiff
    four times after she revoked consent on April 10, 2015 ........................... 8

    A.  Plaintiff's cease-and-desist letter properly withdrew consent ........ 9

    B.  Defendants' assertions regarding receipt of the cease-and-desist
        letters demonstrate a disputed issue of material fact .................... 11

II. By calling Martinez 165 times over an eight-month period,
    Defendants harassed her in connection with the collection of a debt ..... 14

III. Defendant's motion to strike is premature, and does not justify
     striking the class allegations ................................................................ 17

CONCLUSION  ................................................................................................ 19

# TABLE OF AUTHORITIES

## United States Circuit Court of Appeals Cases

*Aetna Life Ins. Co. et al. v. First Health Life & Health Ins. Co. et al.*,
  No. 15-2287, 2016 WL 7174612 (3d Cir. Dec. 9, 2016) ................................6

*Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358 (3d Cir. 1992) .........................7

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ....................10, 13 n.5

*Healy v. New York Life Ins. Co.,* 860 F.2d 1209 (3d Cir. 1988) ..............................7

*Landsman & Funk PC v. Skinder–Strauss Assocs.,*
  640 F.3d 72 (3d Cir. 2011) ............................................................18

*Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473 (7th Cir. 2009) .........................13

*Meyer v. Riegel Prods. Corp.,* 720 F.2d 303 (3d Cir.1983) .....................................7

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) .................18

*Stevens Shipping & Terminal Co. v. JAPAN RAINBOW, II MV*,
  334 F.3d 439 (5th Cir. 2003) .......................................................13

## United States District Court Cases

*Akalwadi v. Risk Mgt. Alternatives, Inc.*,
  336 F. Supp. 2d 492 (D. Md. 2004)..............................................15

*Baldwin v. Monterey Fin. Servs., Inc.*, No. 14-cv-2346,
  2016 WL 5723734, (M.D. Pa. Sept. 30, 2016)..............................................10

*C-Mart, Inc. v. Metropolitan life Ins. Co.*,
  299 F.R.D. 679 (S.D. Fla. Feb. 2014) ........................................................17

*Davis v. Bud and Papa, Inc.*, 885 F. Supp. 2d 85 (D.D.C. 2012).....................10 n.3

*Forst v. Live Nation Entm't Inc.*, No. CIV. 14-2452, 2015 WL 858314, at *5 (D.N.J. Feb. 27, 2015) ........................................................................17, 18

*Green v. Creditor Iustus Remedium, LLP*, No. 13-cv-1414, 2013 WL 6000967 (E.D. Cal. Nov. 12, 2013) ...........................................14

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238 (E.D. Pa. 2012) ...................................................................19

*Haysbert v. Navient Solutions, Inc.*, No. 15-cv-4144, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016) .................................................15

*Johnston v. USAA Fed. Sav. Bank*, No. 12-CV-02486-LTB-KLM, 2014 WL 5439965 (D. Colo. Oct. 27, 2014) ...........................................12

*McBrearty v. Fifth Generation, Inc.*, No. CIV.A. 14-7667 SDW, 2015 WL 4749040 (D.N.J. Aug. 6, 2015) ..................................................18

*McPeak v. S-L Distribution Co.*, No. CIV. 12-348 RBK/KMW, 2014 WL 4388562 (D.N.J. Sept. 5, 2014)...........................................17, 18

*Mennen Co. v. Atl. Mut. Ins. Co.*, No. 93-CIV-5273 (WGB), 1999 WL 33654297 (D.N.J. Oct. 26, 1999) .................................................7

*Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007) .................15

*Thompson v. Merck & Co., Inc.,* Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) ...........................................19

## State Court Cases

*Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29 (2015) .......................................................................14, 15

*Komarova v. National Credit Acceptance, Inc.*, 175 Cal. App. 4th 324 (2009) .........................................................................16

**Agency Decisions and Regulations**

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) .............................9, 10, 11

**Federal Statutes and Rules**

Fed. R. Civ. P. 23(d)(1)(D) ...............................................................................17, 19

Telephone Consumer Protection Act, 47 U.S.C. § 227 .........................................5, 9

**State Statutes**

Rosenthal Fair Debt Collection Practices Act,
Cal. Civ. Code §§ 1788, *et seq* ........................................................6, 7, 14, 17

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ........................7

**Secondary Sources**

Restatement (Second) of Torts § 892A (1979)...........................................10 n.3, 13

## INTRODUCTION

Plaintiff Charlene Martinez, a California resident, sued Defendants Target Corp. ("Target") and TD Bank USA, N.A. ("TD Bank") (collectively, "Defendants") for calling her cell phone 165 times in an eight-month period, in violation of the Telephone Consumer Protection Act (which prohibits use of an autodialer to call a cellular telephone without consent), California's Rosenthal Fair Debt Collection Practices Act (which prohibits harassment in connection with debt collection), and California's Unfair Competition Law (which gives consumers a right of action against companies who commit deceptive, unfair, or unlawful acts). After a limited discovery period into Defendants' calls, their records of them, Plaintiff's consent to receive the calls, and her revocation of that consent, most of the material facts are not in dispute. Most, however, does not mean all. And those facts that do remain in dispute preclude the summary judgment now sought by Defendants.

The Parties agree that Defendants called Plaintiff on her cell phone 165 times in an eight-month period to collect on debt owed on her Target REDcard credit card. The Parties also agree that in 2012, Plaintiff provided consent for Defendants to call her cell phone for issues relating to the REDcard. What the parties disagree on, however, is whether that consent was ever revoked, and, independent of that inquiry, whether Defendants' calling practices constituted

1

harassment in connection with the collection of a debt, in violation of California law.

To that end, Plaintiff produced in discovery cease-and-desist letters faxed by her bankruptcy attorney to numbers belonging to Defendant TD Bank and its corporate affiliates. Defendants do not argue in its motion that the letters, if sent, would have been sufficient to withdraw Plaintiff's consent. Nor could they. The calls unambiguously revoke any consent to be called on her cellular telephone.

Rather, Defendants argue that Plaintiff has failed to establish that the letters were ever actually transmitted by fax, and that even if they were, (a) one of the numbers Plaintiff faxed the letter to belonged to a different corporate entity than Defendant TD Bank, and (b) the other number, which admittedly was used by TD Bank, was not the proper number to which Plaintiff should have sent her revocation letter. As shown below, however, Plaintiff is able to confirm that the revocation letters were faxed, and the transmission reports for each indicate successful delivery. As such, a disputed issue of fact exists as to whether TD Bank ever received a revocation letter, and summary judgment against Plaintiff would be improper.

Finally, as to whether Defendants' practice of calling Plaintiff more than 20 times per month over the course of eight months constituted harassment, the courts regularly hold that determination to be within the province of the jury.

Accordingly, because disputed issues of material fact exist as to whether Plaintiff revoked consent to be called and whether Defendants' conduct constitutes harassment, Defendants' motion for summary judgment must be denied.

## BACKGROUND

In 2007, Plaintiff signed up for a Target REDcard: a credit card offered by Target, one of the nation's leading consumer retailers. (*See* Plaintiff's Response to Defendant's Statement of Undisputed Facts ("SOF Resp.") at ¶ 1.) Plaintiff's use of the REDcard continued without incident for approximately six years, until 2012, when she used the REDcard website to update her address and telephone number. (SOF Resp., ¶ 5.) When she did so, she provided her cell phone number ending in -2420 (the "2420 number") and agreed that Target could call her on that number regarding her credit card. (*Id.*) Plaintiff continued to use the REDcard, and in 2013 TD Bank acquired Target's REDcard portfolio and retained Target to continue servicing it, (dkt. 25, ¶ 18.) As part of the servicing agreement between TD Bank and Target, Target was required to maintain call centers to service the REDcard portfolio, and to allow TD Bank access to and oversight of its calling practices. (*Id.* ¶¶ 14–18.) Through this operation, Defendants placed autodialed calls to thousands of Target customers regarding their credit cards. (*Id.*, ¶ 40.)

On August 29, 2014, Plaintiff became one of the thousands of individuals to receive Defendants' harassing collection calls. (SOF Resp., ¶ 17.) From that date

until April 10, 2015, Defendants placed 161 calls to Plaintiff's 2420 number. (*Id.*; Supp. SOF ¶ 6) On that same date, Plaintiff, through her bankruptcy attorney, faxed cease-and-desist letters to numbers believed to belong to TD Bank, stating that Plaintiff and her husband had retained an attorney to represent them in bankruptcy proceedings, and stating that Mrs. Martinez and her husband "hereby revoke any prior express consent that may have been given to receive telephone calls, especially to Clients' cellular telephones, from an Automat[ic] Telephone Dialing System, or a pre-recorded voice, as outlined in the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*." (Plaintiff's Supplemental Statement of Disputed Material Facts ("Supp. SOF") at ¶¶ 1–5.) Plaintiff's bankruptcy attorney faxed those revocation letters to (856) 533-1138, a number belonging to TD Bank N.A.'s Business Solutions group, (Supp. SOF, ¶ 4), and to (302) 683-6889, a number that TD Bank has admitted belongs to it. (Supp. SOF, ¶ 5.) The transmission records for the faxes indicated that they were completed successfully. (Supp. SOF, ¶ 2.)

Although she sent a fax revoking consent to be called on her cell phone, Defendants continued to call her on the 2420 number, placing four additional calls from April 11, 2015 to April 15, 2015. (Supp. SOF, ¶ 6.) On April 15, 2015, Plaintiff answered one of Defendants' phone calls and talked to a Target representative. (SOF Resp., ¶ 17.) The Parties dispute the full contents that

4

conversation, but it is undisputed that during the call, Plaintiff informed the representative that she had retained an attorney and intended to declare bankruptcy. (*Id.*) Additionally, Plaintiff has testified that she also instructed Defendants to stop calling her. (SOF Resp., ¶ 21.) Target's call center representative coded the call in to the system and noted that Plaintiff had stated an intent to declare bankruptcy, at which point Defendants finally stopped calling Plaintiff. (Supp. SOF, ¶ 7.)

Plaintiff filed suit against TD Bank on October 26, 2015, (dkt. 1), and she filed an amended complaint adding Target as a defendant on March 1, 2016, (dkt. 25.) In her amended complaint, Plaintiff asserted three causes of action. First, she asserted that Defendants' calls violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which prohibits the use of an automatic telephone dialing system or artificial or prerecorded voice to call a cellular telephone without consent. (Dkt. 25, ¶¶ 46–52.)

Second, she alleged that Defendants violated California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788–1788.33 (the "Rosenthal Act"), which prohibits, *inter alia*, "causing a telephone to ring repeatedly or continuously to annoy the person called," "communicating with such frequency as to be unreasonable and to constitute harassment under the circumstances," and failing to comply with specific sections of the federal Fair Debt Collection

5

Practices Act. *See* Cal. Civ. Code §§, 1788.11, 1788.17. (*See also* dkt. 25, ¶¶ 53–60.)

Third and finally, Plaintiff asserted violations of California's Unfair Competition Law, Cla. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), which prohibits the use of any unlawful, unfair, or fraudulent business act or practice. (Dkt. 25, ¶¶ 61–69.)

On July 12, 2016, the court entered a bifurcated scheduling order, setting an initial discovery and briefing schedule focused on Plaintiff's consent and revocation of consent, as well as Defendant's calls to Plaintiff. (Dkts. 41, 44.) Pursuant to that order, the Parties engaged in limited discovery on those issues, and Defendant has now moved for summary judgment on all of Plaintiff's claims.

## LEGAL STANDARD

The Court may only grant summary judgment if, "drawing all inferences in favor of the nonmoving party, the pleadings, the discovery and disclosure materials on file[] and any affidavits show that there is no genuine issue as to any material fact ant that the movant is entitled to judgment as a matter of law." *Aetna Life Ins. Co. et al. v. First Health Life & Health Ins. Co. et al.*, No. 15-2287, 2016 WL 7174612 (3d Cir. Dec. 9, 2016) (internal citations omitted). "In determining whether any genuine issues of material fact exits, the Court must resolve 'all inferences, doubts, and issues of credibility . . . against the moving party.'"

*Mennen Co. v. Atl. Mut. Ins. Co.*, No. 93-CIV-5273 (WGB), 1999 WL 33654297, at *3 (D.N.J. Oct. 26, 1999) (quoting *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983)).

   "An issue involving a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Mennen*, 1999 WL 33654297, at *2 (quoting *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1219 n. 3 (3d Cir. 1988)). "If the party opposing summary judgment has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the Court cannot credit the movant's version of events, even if the quantity of the movant's evidence far outweighs that of its opponent." *Mennen*, 1999 WL 33654297, at *2 (citing *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992)).

   Defendants have moved for summary judgment on all three claims. They argue that as to Plaintiff's TCPA claim, she provided consent to be called on her 2420 number, and she never withdrew that consent. (*See* Defendants TD Bank USA, N.A. and Target Corporation's Memorandum of Law in Support of their Motion for Summary Judgment, dkt. 55 ("Mtn.") at 13.) As to her Rosenthal Act claim, they argue that the volume and pattern of their calls alone is insufficient to constitute "harassment." (*Id*. at 19.) And as to her UCL claim, they argue that

Plaintiff has not shown any unlawful conduct by Defendants, or the damages necessary to sustain her UCL claim. (*Id.* at 24.)

Ultimately, however, summary is improper because (a) the evidence shows that Defendants called plaintiff four times in violation of the TCPA after she submitted a cease-and-desist request, and (b) the question of whether Defendants harassed Plaintiff by calling her 165 times in eight months must be resolved by the jury.[1]

## ARGUMENT

### I.  Plaintiff's TCPA claim survives because Defendants called Plaintiff four times after she revoked consent on April 10, 2015.

In their motion for summary judgment, Defendants make two arguments regarding their consent to call Plaintiff's -2420 cell phone number. The first is that Plaintiff provided consent for Defendants to call that number with an autodialer on September 17, 2012. Plaintiff does not dispute that. Defendants' second argument is that Plaintiff never revoked that consent. Plaintiff disputes as much, as the evidence shows that Plaintiff submitted a cease-and-desist letter to one of the Defendants, and then received four more calls from them.

---

[1]  Plaintiff does not dispute that her UCL claim is subject to summary judgment.

### A.      Plaintiff's cease-and-desist letter properly withdrew consent.

As the FCC has held, under the TCPA, "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7996 ¶ 64 (2015) (hereinafter "2015 FCC Order"). Here, Plaintiff revoked consent in two different ways, first on April 10, 2015, and again on April 15, 2015, during Defendants' last call to her.[2] On April 10, 2015, Plaintiff's bankruptcy attorney sent cease-and-desist letters by fax to numbers (856) 533-1138 and (302) 683-6889. (Shay Dec., ¶¶ 4, 5; *Id.* Exs. 1, 2.) TD Bank admits that the latter "number receives faxes relating to T.D. Bank, N.A. and *TD Bank USA, N.A.* entities." (TD Supp. Rogg. Resp. No. 7 (emphasis added).) The letters unambiguously withdrew consent, stating that Mrs. Martinez and her husband "hereby revoke any prior express consent that may have been given to receive telephone calls, especially to Clients' cellular telephones, from an Automat[ic] Telephone Dialing System, or a pre-recorded voice, as outlined in the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*" (Supp. SOF, at ¶ 3.)

---

[2]      The Parties dispute whether Plaintiff revoked consent during the last call to her. (SOF Resp., ¶ 21.) However, because the Parties agree that Defendants placed no further calls to her after that, the dispute is not material to the resolution of any of Plaintiff's claims.

Plaintiff's cease-and-desist letter therefore plainly constitutes the "us[e of] any reasonable method" to revoke consent. 2015 FCC Order, ¶ 64. To that end, courts have honored consumers' revocation of consent through submission of a cease-and-desist letter, *see*, *e.g.*, *Baldwin v. Monterey Fin. Servs., Inc.*, No. 14-cv-2346, 2016 WL 5723734, at *5 (M.D. Pa. Sept. 30, 2016), even where there are deficiencies with the letter, such as failing to "indicate that the number [in the request] was for a cellular phone." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 267 (3d Cir. 2013). In their motion, Defendants do not dispute the sufficiency of the letters' contents[3]—that is, they do not dispute that the letters, if received, withdrew any consent on their face—however, they do, as detailed below, dispute that the cease-and-desist letters were properly transmitted to them.

---

[3]    On reply, Defendants may argue that because Plaintiff did not inform them that the 2420 number belonged to her cellular telephone, (SOF Resp. ¶ 7), there was no way for them to know that the revocation letter applied to it. As an initial matter, simply because Plaintiff did not tell Defendants that the 2420 number was cellular doesn't mean Defendants had no way of knowing whether it was cellular. To the contrary, Target employs a "scrubbing" process specifically intended to identify cellular numbers even when the customers don't identify them as such; it simply chooses not to do so for numbers it believes it has express consent to call. (*See* Supp. SOF, ¶ 8.) Additionally, whether the cease-and-desist letter gave Defendants "reason to know that [Plaintiff was] no longer willing" to receive autodialed calls at the 2420 number is a question of fact for the jury to resolve. Restatement (Second) of Torts § 892A (1979); *see also Davis v. Bud and Papa, Inc.*, 885 F. Supp. 2d 85, 91 (D.D.C. 2012) (noting that under Restatement § 892A, "the presence and scope of consent is a fact-sensitive matter").

**B.  Defendants' assertions regarding receipt of the cease-and-desist letters demonstrate a disputed issue of material fact.**

Defendants have raised three challenges to the sufficiency of Plaintiff's cease-and-desist requests. The first is that that the cease-and-desist letter cannot form the basis of a finding of revocation because Plaintiff was unable to authenticate the letters or confirm their transmission in her deposition. (Mtn. at 19.) That argument is mistaken for two reasons. First, Plaintiff was never asked to do so at her deposition. (SOF Resp., ¶ 21.) Second, the letters and their transmission have been authenticated by Plaintiff's bankruptcy attorney. (*See* Supp. SOF, ¶¶ 1–5.)

Additionally, in their discovery responses, Defendants raised two arguments for why the cease-and-desist letter was ineffective, but neither justifies summary judgment. The first is that Plaintiff did not send the letter to the correct fax number because (a) Target was the servicer of Plaintiff's REDCard account, and (b) the number Plaintiff faxed the letter to was not publicly designated for receipt of communications about the REDcard. (Dkt. 56-9, Supp. Ans. No. 7.) The FCC has made clear, however, that "callers may not abridge a consumer's right to revoke consent using any reasonable method." 2015 FCC Order, ¶ 64. That standard in mind, nothing in Defendants' motion or in their discovery responses provides evidence that Plaintiff's submission of a cease-and-desist letter to the owner of her credit card debt was unreasonable, even if it was not Defendants' preferred method

11

of revocation. *See Johnston v. USAA Fed. Sav. Bank*, No. 12-CV-02486-LTB-KLM, 2014 WL 5439965, at *3 (D. Colo. Oct. 27, 2014) (finding revocation where plaintiff sent cease-and-desist letter, even where agreement with defendant required revocation by another method). That is particularly true here, as Target's corporate representative was unable to identify *what* the appropriate fax number was for Plaintiff to send her cease-and-desist letter, or *where* Plaintiff should have found that information. (Supp. SOF, ¶ 9.)[4]

The second argument is that TD Bank never received the letter. (*See* dkt. 56-9, Supp. Ans. No. 7.) Defendants assert that they "ha[ve] no records reflecting the receipt of any of the cease and desist letters produced by Plaintiff." (*Id.*) Defendants have not, however, shown any evidence that such records would still exist if the fax had been received, or that such records are kept in the normal course of its business. (*Id.*)

Additionally, Plaintiff has adduced evidence that the faxes were successfully transmitted. Plaintiff has submitted a declaration from her bankruptcy attorney attesting to the fact that the letters were transmitted, and the faxes themselves contain transmission reports showing that the result of the transmissions were

---

[4]     To the extent Defendants argue on reply that notice of revocation to TD Bank should not constitute notice to Target, that argument would turn on fact-intensive questions of agency, discovery into which was outside the scope of the Court's bifurcated scheduling order. (*See* dkt. 41, 44.)

12

"OK." (Supp. SOF, ¶¶ 1–5.) In similar circumstances (i.e., where the plaintiff's attorney produced a fax confirmation to demonstrate transmission), the Seventh Circuit Court of Appeals found that the jury had to resolve the disputed question of fact as to whether and when the fax was transmitted. *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475–79 (7th Cir. 2009) (noting that "fax confirmation is . . . strong evidence of receipt," and citing *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 459 (7th Cir. 1988) for proposition that "denial of receipt does not rebut presumption of mail delivery but creates question of fact."); *see also Stevens Shipping & Terminal Co. v. JAPAN RAINBOW, II MV*, 334 F.3d 439, 444 (5th Cir. 2003) (upholding district court holding that "fax confirmation sheet created a rebuttable presumption that" a given communication had been transmitted and received, and that in light of presumption, party was deemed to have "actual knowledge" of fax's contents).

Thus, a disputed issue of fact exists as to whether Defendants received the case-and-desist letter and therefore "kn[ew] or *had reason to know* that [Plaintiff was] no longer willing for [them] to continue" autodialing her cell phone number. Restatement (Second) of Torts § 892A (1979). Summary judgment as to Plaintiff's TCPA claims for Defendants' final four calls is therefore improper.[5]

---

[5]   Defendants also note in their motion that Plaintiff consented to receive autodialed calls on her cell phone as part of her original credit agreement. (Mtn. at 3.) Plaintiff does not dispute as much. However, that original agreement has no

**II.    By calling Martinez 165 times over an eight-month period, Defendants harassed her in connection with the collection of a debt.**

Defendants argue that no reasonable jury could find that their 165 calls in an eight-month span were harassing. The Rosenthal Act, however, prohibits debt collectors from "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with such frequency as to be unreasonable and to constitute harassment under the circumstances." Cal. Civ. Code §§ 1788.11(d)–(e). The Rosenthal Act also requires compliance with the federal FDCPA, prohibiting debt collectors from "engaging on conduct, the natural consequence of which is to harass or abuse a person in connection with the collection of a debt." *See* Cal. Civ. Code § 1788.17 (incorporating 15 U.S.C. § 1692(d)).

In evaluating a Rosenthal Act claim, it is up to the trier of fact to determine whether the volume and pattern of calls is harassing. *Green v. Creditor Iustus Remedium, LLP*, No. 13-cv-1414, 2013 WL 6000967, at *3 (E.D. Cal. Nov. 12,

---

bearing on Plaintiff's ability to revoke consent. *See Gager*, 727 F.3d at 273–74 ("Although Dell is correct that the level of contact that a debtor will consent to may be relevant to the negotiation of a line of credit, the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement. More importantly, Dell's argument that its contractual relationship with Gager somehow waives her rights under the TCPA is incorrect. The fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements. As discussed above, she retained the right to revoke her prior express consent.").

2013) ("The reasonableness of [the] volume of calls and their pattern is a question of fact for the jury.") (quoting *Akalwadi v. Risk Mgt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004)). *See also Alborzian*, 235 Cal. App. 4th 29, 38 (2015) ("The making of frequent calls itself can constitute actionable harassment."). For instance, in *Haysbert v. Navient Solutions, Inc.*, No. 15-cv-4144, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016), the court found that the placement of 99 calls over a one-year period sufficient to present a jury question as to whether harassment occurred. Likewise, in *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1160 (N.D. Cal. 2007), the court found that a mere 54 calls over a six-month period presented a triable issue. And in *Joseph v. J.J. MacIntyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1165 (N.D. Cal. 2013), the Court found that as few as 24 calls made with an automated dialer "would provide an adequate basis for the finder of fact to find a violation of state and federal law . . . especially so since FDCPA and Rosenthal Act claims must be evaluated under a least sophisticated consumer standard." *Id.* at *1165.

Here, it is undisputed that Defendants called Plaintiff 165 times over an eight-month period. (SOF Resp., ¶ 17.) That is a higher amount and a greater frequency than the *Haysbert* or *Sanchez* courts found sufficient to send to a jury. It is also undisputed that Defendants called Plaintiff as many as three times per day, (*id*.), which other courts have found sufficient to create a jury question as to

15

harassment *Akalwadi*, 336 F.3d at 506. On their face, then, Defendants' calling practices to Plaintiff present the same facts and circumstances that other courts have repeatedly found sufficient to raise a jury question as to whether harassment took place.

In support of its argument that the Court should take the reasonableness inquiry away from the jury, Defendant is keen to point out that Plaintiff chose not to answer the majority of the calls. (Mtn. at 1–2, 6–7.) That is irrelevant; the Rosenthal Act prohibits companies from making phones ring excessively or otherwise harassing debtors, without any requirement that the ringing cause the plaintiff to pick up. *See Alborzian*, 235 Cal. App. 4th at 38 (noting that "repeated unanswered calls [may be] sufficient to state a claim" under the Rosenthal Act) (citing *Komarova v. National Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 345 (2009)). Thus, while the number and timing of Defendants' calls here is undisputed, "[t]he reasonableness of this volume of calls and their pattern is a question of fact for the jury." *Akalwadi*, 336 F.3d at 506 (denying summary judgment on FDCPA claim where defendant called Plaintiff was called between 26 and 28 times over a two-month period).

In any event, however, even if the volume were insufficient, a triable issue of fact exists as to whether Defendants placed four calls that violated the TCPA, as described above. Specifically, because the TCPA is an anti-harassment law,

Defendants' four calls in violation of the TCPA *per se* constituted harassment "in connection with the collection of a debt," that is unlawful under § 1788.17 of the Rosenthal Act. *Cf. C-Mart, Inc. v. Metropolitan life Ins. Co.*, 299 F.R.D. 679, 687 (S.D. Fla. Feb. 2014) (the "TCPA confers the right to be free from certain harassing and privacy-invading conduct.").

Accordingly, because a jury must determine whether the volume and pattern of calls made by Defendant constitutes harassment, and because disputed issues of fact exist as to whether Defendant placed four calls that violated the TCPA and were therefore *per se*, Defendant's summary judgment motion must be denied as to Plaintiff's Rosenthal Act claim.

## III.   Defendant's motion to strike is premature, and does not justify striking the class allegations.

In the alternative to summary judgment, Defendants ask that the Court strike Plaintiff's class allegations from the complaint. As Defendants note, Fed. R. Civ. P. 23(d)(1)(D) governs that request. Under that Rule, the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). "In a putative class action suit," however, "a plaintiff is generally entitled to discover information relevant to Rule 23's class certification requirements." *McPeak v. S-L Distribution Co.*, No. CIV. 12-348 RBK/KMW, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014). "[T]hus, motions to strike class allegations filed before discovery

17

are usually inappropriate and immature." *Forst v. Live Nation Entm't Inc.*, No. CIV. 14-2452, 2015 WL 858314, at *5 (D.N.J. Feb. 27, 2015).

To that end, "a motion to strike class allegations should not be granted unless it is evident from the face of the complaint or from incontrovertible facts that class treatment would be inappropriate." *McBrearty v. Fifth Generation, Inc.*, No. CIV.A. 14-7667 SDW, 2015 WL 4749040, at *3 (D.N.J. Aug. 6, 2015) (citing *Landsman & Funk PC v. Skinder–Strauss Assocs.*, 640 F.3d 72, 93 n. 30 (3d Cir. 2011)). "Accordingly, motions to strike class allegations are rarely granted." *McBrearty*, 2015 WL 4749040, at *3.

Here, pursuant to the Court's scheduling order, Plaintiff has not had the opportunity to take *any* discovery on class certification issues. (Dkts. 41, 44.) Nonetheless, Defendant asserts that the time is ripe to strike Plaintiff's class allegations. But nowhere in its motion does Defendant even argue—much less present evidenceshowing, as it must—that "no amount of discovery or time will allow for plaintiff[] to resolve deficiencies in [the] class definition[]." *McPeak*, 2014 WL 4388562, at *4 (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

And to be sure, Plaintiff will be able to obtain through discovery information bearing on the common characteristics of potential class members who did not consent to receive calls from Defendants. As such, Plaintiff will be able to modify

or narrow her class definition to address Defendant's objections to it, meaning that Defendants' motion to strike should be denied. *See Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012) (noting that "courts rarely grant motions to strike under Rule 23(d)(1)(D) prior to class discovery, . . . , doing so only where '[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable.") (quoting *Thompson v. Merck & Co., Inc.,* Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004).)[6]

## CONCLUSION

For the reasons stated above, Martinez respectfully requests this Court deny Defendants' Motion for Summary Judgment and grant such other and further relief as the Court deems necessary and just.

Respectfully submitted,

**CHARLENE MARTINEZ**,
individually and on behalf of all others
similarly situated,

Dated: December 12, 2016       By:/s/ Stefan Coleman
                             One of Plaintiff's Attorneys

---

[6]       Should the Court decide to grant Defendants' motion to strike, "[t]he Court [should] afford plaintiff leave to amend to allege, if she can, a proposed class that is not fail-safe." *Dixon v. Monterey Fin. Servs., Inc.*, No. 15-CV-03298-MMC, 2016 WL 3456680, at *5 (N.D. Cal. June 24, 2016).

Stefan Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888.498.8946

Benjamin H. Richman (*Pro hac vice*)
brichman@edelson.com
J. Dominick Larry (*Pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (*Pro hac vice*)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.363.9495

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Stefan Coleman_____