IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHARLENE MARTINEZ, individually and on behalf of all others similarly situated, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 15-7712(JBS/AMD) |
| v. | |
| TD BANK USA, N.A., a National Bank, and TARGET CORPORATION, a Minnesota corporation | **OPINION** |
| Defendants. | |

APPEARANCES:

Stefan Louis Coleman, Esq.
1072 Madison Ave., Suite 1
Lakewood, NJ 08701
      Attorney for Plaintiff

Jarrod D. Shaw, Esq.
MCGUIRE WOODS LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 1522
      Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

Plaintiff Charlene Martinez brings this putative class action against Defendants TD Bank USA, N.A. ("TD Bank") and Target Corporation ("Target"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal.

Civ. Code §§ 1788-1788.33; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., arising from telephone calls placed in connection with Defendants' efforts to collect a consumer debt from Plaintiff's credit card. [First Amended Complaint ("FAC"), Docket Entry 25.] Before the Court is Defendants' motion to dismiss the claims under the RFDCPA and the UCL, Counts II and III of the First Amended Complaint. [Docket Entry 39.] Plaintiff has filed a Response [Docket Entry 42] and Defendants have filed a Reply [Docket Entry 45].[1]

Defendants argue that Plaintiff's claim under the RFDCPA cannot be sustained for two reasons. First, Defendants assert that Plaintiff has not alleged sufficient facts to properly plead that Defendants are "debt collectors" under the RFDCPA. Second, Defendants argue that the conduct Plaintiff describes in the FAC does not make out a claim for harassment under the RFDCPA as a matter of law. Defendants also argue that Plaintiff's UCL claims fail because Plaintiff lacks standing and cannot recover under the UCL, inasmuch as Plaintiff has not "lost money or property," and does not have the right to

---

[1] Count I of the FAC alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, pertaining to calling cellular telephone numbers without prior consent using a random or sequential number generator, is not a subject of Defendants' dismissal motion.

equitable remedies (i.e., injunction and/or restitution). For the reasons that follow, the Court will deny Defendants' motion in part and grant it in part because Plaintiff has adequately alleged grounds plausibly supporting her RFDCPA claim, but cannot recover under the UCL.

## II.  BACKGROUND[2]

TD Bank is a large national bank chain that, inter alia, "owns and underwrites a portfolio of credit card accounts." [FAC ¶ 1.] Target is a corporation headquartered in Minnesota and doing business in New Jersey and nationwide. [Id. at ¶ 8.]

Plaintiff Charlene Martinez, a California resident, opened a Target credit card account in 2007. She obtained her current cellular telephone number in 2011. In 2012, when she moved to a new home, she went online to Target's website in order to change the address associated with her Target credit card. The website required Plaintiff to input a telephone number in order to update her address information. The website claimed that when consumers put their phone number in the required field, they were consenting to receive autodialed and prerecorded calls or text messages at that phone number. There was no opportunity or ability, however, to decline such consent and still update one's

---

[2] For purposes of the pending motion, the Court accepts as true the version of events set forth in the FAC, documents explicitly relied upon in the FAC, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

address information as Plaintiff sought to do. Plaintiff allegedly entered her phone number in order to update her address, but only for that purpose. [Id. at ¶¶ 6; 25-30.]

TD Bank purchased the consumer credit card portfolio of Target in 2013 and assumed the assets and liabilities of those credit card accounts. Target remained responsible for servicing those accounts, subject to TD Bank's monitoring and control. [Id. at ¶ 14.] To that effect, TD Bank provided a Collections Manager to assist Target with operational oversight of the collections-related aspects of the program. [Id. at ¶ 16.] TD Bank caused collection calls to be placed for its credit card accounts, both on its own and through its agents. [Id. at ¶ 17.]

From late 2014 through April 2015, TD Bank and/or Target (acting as TD Bank's servicing agent) called Plaintiff's cell phone over 100 times, and as often as three times per day. [Id. at ¶ 32.] On April 10, 2015, Plaintiff faxed cease-and-desist letters to "TD Bank USA/Target Credit" and ordered them to "cease and desist all communications." [Id. at ¶ 33.] Despite this, Plaintiff received two phone calls from TD Bank and/or Target on April 14, 2015 "for purposes related to her outstanding debt." [Id. at ¶ 34.] During the first call, Plaintiff answered the phone, but only experienced a long delay before the call disconnected. During the second call, Plaintiff answered the phone and heard a "prerecorded or artificial" voice

4

asking her to hold for a representative; once she was connected to a representative, she told him that he was calling her cell phone, that she did not consent to receive such calls, and that he should stop calling. On April 15, 2015, TD Bank and/or Target called Plaintiff's cell phone again. [Id. at ¶¶ 34-36.]  No further calls are alleged after April 15, 2015.

Plaintiff alleges that, "[a]s a result of Defendants' conduct, [she] lost money or property in the form of consumed battery life; increased electrical usage; and diminished use, enjoyment, and utility of her cellular telephone and cellular telephone plan[,]" and that she and the California Subclass of potential plaintiffs suffered harms including "monies paid to receive the unsolicited telephone calls on their cellular phones" and "appropriati[on of their] cellular minutes" as well as the above [Id. at ¶¶ 38; 59; 65.] She also alleges that Defendants "not only invaded the personal privacy of Plaintiff and members of the putative Class and Subclass, but also intentionally and repeatedly violated the TCPA and the [RFDCPA]." [Id. at ¶ 24.]

Plaintiff alleges the following in her second cause of action:

> 54. Plaintiff and the members of the California Subclass are natural persons obligated or allegedly obligated to pay debts incurred for personal, family, and/or household purposes, and as such are "persons"

owing "consumer debts" within the meaning of Cal. Civ.
Code §§ 1788.2(d)-(g).

55. Defendants, in the ordinary course of business,
regularly engage in acts or practices in connection
with the collection of consumer debts, and as such are
"debt collectors" within the meaning of Cal. Civ. Code
§1788.2(c).

[Id. at ¶¶ 54-55.]

### III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need

only contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Specific facts are not

required, and "the statement need only 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it

rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations

omitted).  While a complaint is not required to contain detailed

factual allegations, the plaintiff must provide the "grounds" of

his "entitle[ment] to relief", which requires more than mere

labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.,

may be granted only if, accepting all well-pleaded allegations

in the complaint as true and viewing them in the light most

favorable to the plaintiff, a court concludes that the plaintiff

failed to set forth fair notice of what the claim is and the

grounds upon which it rests. Id.  A complaint will survive a

motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

## IV.  ANALYSIS

### A. California RFDCPA

#### 1. Harassing or Improper Conduct

Defendants argue that Plaintiff has failed to allege "specific facts showing harassment or improper debt collection activity." [Docket Entry 39-1 at 12.] The Court disagrees.

The RFDCPA prohibits harassing conduct related to debt collection, including "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with such frequency as to be unreasonable and to constitute harassment under the circumstances." Cal. Civ. Code §§ 1788.11(d) & (e). It also prohibits parties from "engaging in conduct, the natural consequence of which is to harass or abuse a person in connection with the collection of a debt." Cal. Civ. Code § 1788.17 (referencing 15 U.S.C. § 1692d).

While Plaintiff's allegations may not describe conduct arising to the utmost heights of harassment or abuse (cf. Neu v.

7

Genpact Services, LLC, No. 11-cv-2246, 2013 WL 1773822, at *3-*5
(S.D. Cal. Apr. 25, 2013) (defendant called plaintiff 150 times
over fifty-one days); Stirling v. Genpact Services, LLC, No.
2:11-cv-06369, 2012 WL 952310, at *4-*5 (C.D. Cal. Mar. 19.
2012) (649 calls over four-month period); Krapf v. Nationwide
Credit Inc., No. SACV 09-00711, 2010 WL 2025323, at *2 (C.D.
Cal. May 21, 2010) (over 180 calls in one month)), the Court
finds that she has adequately stated a claim that Defendants
violated the RFDCPA.

Defendants cite Arikat v. JP Morgan Chase & Co., 430 F.
Supp. 2d 1013, 1027 (N.D. Cal. 2006) for the proposition that a
plaintiff may fail to state a claim for a violation of the
RFDCPA even when he or she claims that defendants have made
"endless annoying and minatory phone calls," "endless letters
and minatory notices," calls at 4:00 AM and "ceaseless" calls at
night, and calls outside their household. However, the Court
reads Arikat differently as to that point; the plaintiffs in
that case sued no fewer than thirteen defendants, including
several different stores and financial services providers. The
court in Arikat stated that the allegations in the complaint
were "too vague to give rise to any inference that a specific
defendant has violated the [RFDCPA]" (emphasis added). The court
cited Gauvin v. Tromatore, 682 F. Supp. 1067, 1071 (N.D. Cal.
1988), for a similar situation where the plaintiff did not

8

specify "how each private defendant allegedly" committed the wrongful conduct (emphasis added).

In contrast, other courts have held that minimal allegations regarding harassing phone calls may be sufficient to state a claim under the RFDCPA. See Alborzian v. JPMorgan Chase Bank, N.A., 235 Cal. App. 4th 29, 38 (Cal. Ct. App. 2d Dist. 2015) ("The making of frequent calls itself can constitute actionable harassment under the Rosenthal Act"); O'Donovan v. CashCall, Inc., No. 08-cv-03174, 2009 WL 1833990, at *6 (N.D. Cal. June 24, 2009) (plaintiff adequately pled claim with allegations that defendant called multiple times each day, aggressively demanded payment, made misrepresentations, yelled at and threatened plaintiffs, and contacted third parties in an effort to collect plaintiffs' debts); Renteria v. Nationwide Credit, Inc., No. 09-cv-1195, 2009 WL 2754988, at *2 (S.D. Cal. Aug. 27, 2009) (plaintiff adequately pled claim where he described the RFDCPA-violative conduct but not the contents or of each communication, the number of calls, or the identity of the caller).

In general, other courts have found complaints adequately pled where general patterns of harassing phone calls were described in the complaint. See Green v. Creditor Iustus Remedium, LLP, No. 1:13-cv-01414, 2013 WL 6000967, at *1, *3 (E.D. Cal. Nov. 12, 2013) (calls made on a near-daily basis for

approximately two months; plaintiff asked defendant to stop calling her at work but defendant continued to do so); Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 506 (D.Md. 2004) (periods where calls made on a daily basis and three telephone calls made within five hours on same day); Haysbert v. Navient Solutions, Inc., No. CV 15-4144, 2016 WL 890297, at *13 (C.D. Cal. Mar. 8, 2016) (ninety-nine calls over one-and-a-half-year period, including periods with two to five calls per day).

Here, Plaintiff alleges that she received over 100 calls over an undetermined period of time comprising somewhere between four and nine months (including rates of calling as high as three calls per day) and that Defendants continued to call her after she faxed them a cease-and-desist letter. [FAC ¶¶ 32-36.] The Court finds that these facts, although spare, adequately plead Plaintiff's claim under the RFDCPA.

### 2. Debt Collector

The Court finds, in addition, that Plaintiff has adequately pled facts in support of her contention that Defendants are "debt collectors" within the meaning of the RFDCPA. For that reason, the Court will deny Defendants' Motion to Dismiss Count II of the FAC.

The RFDCPA applies only to "debt collectors." The RFDCPA defines a "debt collector" as "any person, who, in the ordinary

course of business, regularly, on behalf of himself or herself
or others, engages in debt collection." Cal. Civ. Code
§ 1788.2(c).[3]

Plaintiff argues that the RFDCPA defines "debt collection"
as "any act or practice in connection with the collection of
consumer debts" [emphasis in Plaintiff's Response]. Cal. Civ.
Code § 1788.2(b). Plaintiff argues that she has "alleged
Defendants, which are credit card servicers, are debt collectors
placing debt collection calls from their call center regarding
lines of credit they are servicing." [Docket Entry 42 at 13,
citing FAC ¶¶ 2, 15-16, 19-20, 34-36.] The Court finds that the
FAC does minimally make out such factual allegations.

The FAC primarily discusses Defendants' activities
servicing credit card accounts. In Paragraph 2, the FAC alleges
that Defendants have "called" cell phone numbers "it associates
with [credit card] accounts." It is not a fair reading of this
allegation to infer that such calls are for the purpose of or in
connection with the collection of consumer debts. Paragraph 15
describes Defendants' call centers and performance of Cardholder
Service Functions and does not allege facts in support of
Defendants' status as "debt collectors. Paragraph 16 alleges,

---

[3] Its definition of "debt collector" is broader than that of its
federal counterpart, the FDCPA, in that it includes original
creditors. Selby v. Bank of America, Inc., No. 09-2079, 2010 WL
4347629, at *6 (S.D. Cal. Oct. 27, 2010).

however, that TD Bank required Target to allow a TD Bank
"'Collections Manager' to assist with 'exercis[ing] day-to-day
operational oversight of the collections-related aspects" of TD
Bank's holding of Target's credit card account portfolio.
Paragraph 17 alleges that TD Bank has authority over "Target's
collection calling practices," that it knowingly accepts the
benefits of "Target's collection calls," and that Target acts as
TD Bank's agent "when placing collection calls." Paragraph 18
alleges that TD Bank, on its own and through its agents, "causes
collection calls to be placed for all such credit card
accounts." Finally, Paragraph 34 alleges that Plaintiff received
a call from TD Bank and/or Target on April 14, 2015 "related to
her outstanding debt."

While these factual allegations do not directly state with
clarity and particularity that Defendants "regularly" and "in
the ordinary course of business" engage in practices relating to
debt collection, the Court is satisfied that Plaintiff rests her
allegations that Defendants are "debt collectors" within the
meaning of the RFDCPA [FAC ¶55] upon plausible facts. See First
North American Nat. Bank v. Superior Court, No. B176618, 2005 WL
67123 at *5 (Cal. Ct. App. 2d Dist. Jan. 13, 2005) (bank issuing
credit card is a debt collector under RFDCPA); McNichols v.
Moore Law Group, No. 11-cv-1458, 2012 WL 667760, at *3 (S.D.
Cal. Feb. 28, 2012) (Discover Bank deemed "debt collector" under

12

both FDCPA and RFDCPA when plaintiff alleged in complaint that
Discover Bank "regularly collects or attempts to collect . . .
debts . . . owed or due another"); <u>Oei v. N. Star Capital
Acquisitions, LLC</u>, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006)
(defendant deemed "debt collector" where plaintiff alleged
defendant was corporation "doing business of collecting debts,"
"engaged in the collection of debts from consumers," and
"regularly attempt[ing] to collect consumer debt"); <u>Haas v. HSBC
Card Services, Inc.</u>, No. 12-cv-570, 2012 WL 12882144, at *4
(S.D. Cal. Sept. 25, 2012) (servicer of delinquent credit card
account deemed "debt collector" under RFDCPA where plaintiff
alleged defendant was "engaged in the business of collecting
consumer debts and regularly collects consumer debts"); <u>Huy
Thanh Vo v. Nelson & Kennard</u>, 931 F. Supp. 2d 1080, 1090 (E.D.
Cal. 2013) (bank deemed "debt collector" under RFDCPA where
complaint alleged that bank "is a debt collector as that term is
defined by Cal. Civ. Code 1788.2(c)").

The factual allegations in the FAC are admittedly thin, but
they are not absent and must be accepted as true for the
purposes of Defendants' Motion. <u>Cf.</u> <u>Noel v. Bank of America</u>, No.
12-cv-4019, 2012 WL 5464608, at *4, *5-*6 (N.D. Cal. Nov. 8,
2012) (plaintiff's "statement that BOA is a debt collector is a
legal conclusion, not a factual allegation entitled to the
presumption of truth"); <u>Munekiyo v. Capital One Bank, N.A.</u>, No.

11-cv-3143, 2011 WL 6057830, at *5 (C.D. Cal. Dec. 5, 2011)
(plaintiff's "conclusory labeling of the defendant as a 'debt
collector,' without further substantiation, fails to state a
claim under the RFDCPA") (internal citations omitted); Sanchez
v. U.S. Bancorp, No. 09-cv-00718, 2009 WL 3157486, at *5-*6
(S.D. Cal. Sept. 5, 2009) ("complaint's sparse facts do not
support" "conclusory" allegation that defendants were "debt
collectors" under FDCPA or RFDCPA where "complaint is completely
devoid of any facts regarding [defendant's] business practices,
as a debt collector or otherwise").  The procedures of pretrial
discovery, and not Rule 12(b)(6) motion practice, will explore
whether actual evidence exists to prove Plaintiff's allegations
under the California RFDCPA.

Accordingly, Defendants' Motion to Dismiss Count II of the
FAC is denied.

### B. California Unfair Competition Law ("UCL")

Defendants argue that Plaintiff's UCL claim must be
dismissed because she lacks standing to recover under the UCL.
The Court agrees.

A plaintiff has standing under the UCL only when that
plaintiff "has suffered injury in fact and has lost money or
property as a result of the unfair competition." Cal. Bus. &
Prof. Code § 17204. See also Drew v. Lexington Consumer
Advocacy, LLC, No. 16-cv-00200-LB, 2016 WL 1559717, at *8 (N.D.

Cal. Apr. 18, 2016) (plaintiff who received unwanted text messages but was not charged for them lacked standing under UCL). The plaintiff must also demonstrate an entitlement to one or more forms of the equitable relief the UCL provides: injunction and/or restitution. Cal. Bus. & Prof. Code §§ 17203 & 17204.

### 1. Lost money or property

Defendants argue that Plaintiff has not adequately alleged that she has lost money or property as a result of Defendants' alleged conduct. The Court disagrees and will assume for purposes of this opinion that Plaintiff has pled a plausible basis for lost money or property.

A plaintiff must lose money or property to have standing to recover under the UCL. Cal. Bus. & Prof. Code § 17204. See also Sapan v. Authority Tax Services, LLC, No. 13-cv-2782, 2014 WL 12493282, at *4 (S.D. Cal. July 15, 2014) (no standing under UCL found where there were "no allegations in the complaint that [unwanted phone calls] caused [p]laintiff any financial harm, such as an increased phone bill, loss of business or other financial expenditures associated with repeated phone calls" and it was "unclear how the repeated phone calls caused [p]laintiff to lose time, which in turn caused [p]laintiff to become financially harmed or deprived of property"). "Lost time is insufficient to recover damages under a UCL claim." Id. (citing

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 321 (2011). A plaintiff may show an economic injury if she adequately alleges that "a present or future property interest [was] diminished[.]" Id. at 323.

Here, Plaintiff alleged that she "lost money or property in the form of consumed battery life; increased electrical usage; and diminished use, enjoyment, and utility of her cellular telephone and cellular telephone plan." FAC ¶ 38. The Court finds that while such allegations are exceedingly minimal and the Court remains unconvinced that Plaintiff will be able to maintain the allegations when the Court is no longer obliged to take Plaintiff's allegations as fact and infer all facts in her favor, the allegations contained in the FAC sufficiently plead a loss of money or property under the UCL. In Mey v. Got Warranty, Inc., No. 5:15-cv-101, 2016 WL 3645195, at *3, *5-*6 (N.D.W.Va. June 30, 2016), the court found that "unwanted phone calls cause concrete harm[,]" whether plaintiffs have prepaid cell phones or limited minute plans or not, insofar as all unwanted calls "deplete a cell phone's battery, and the cost of electricity to recharge the phone" is a "small" but "tangible harm" with potentially "consequential" "cumulative effect[s]." The court in Mey also found applicable to a TCPA claim regarding unwanted phone calls the "ancient common law claim of trespass to chattels." Id. at *5-*6, citing Czech v. Wall St. on Demand, 674

16

F. Supp. 2d 1102, 1122 (D. Minn. 2009) and <u>Palm Beach Golf Ctr.-</u>
<u>Boca, Inc. v. John G. Sarris, D.D.S., P.A.</u>, 781 F.3d 1245, 1250-
51 (11th Cir. 2015).

As alleged in the FAC, Plaintiff suffered a diminution in
the economic value of her cell phone due to the need to recharge
her phone as a result of depleted battery life from fielding
Defendants' phone calls.[4] It is also reasonable to infer that a
cellular phone or phone number that receives over 100 unwanted
phone calls over a period of several months would cost less on
the open market than one that does not receive such calls. While
the issue is close and Plaintiff indeed may not succeed on the
merits as the case progresses, her allegations in the FAC are
sufficient. They adequately and particularly allege an economic
injury (albeit not a great one), and not one that is merely
speculative or conclusory. <u>Cf.</u> <u>Pietzak v. Microsoft Corp.</u>, No.
CV 15-5527-R, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015)

---

[4] Wear and tear on a cellular phone has been held to be a
diminution in value resulting in economic loss. <u>Tyacke v. First</u>
<u>Tenn. Bank, N.A.</u>, No. EDCR 16-228-JCB (SPx) (C.D. Cal. Apr. 28,
2016) (ECF No. 35 at 4) (finding standing under UCL for
diminution of value of cell phone where plaintiff received up to
three calls per day beginning approximately eight months before
complaint was filed), citing <u>Yunker v. Pandora Media, Inc.</u>, No.
11-cv-03113, 2014 WL 988833, at *3 (N.D. Cal. Mar. 10, 2014)
(diminution in performance of electronic device constitutes
"injury in fact" under Article III). <u>But see</u> <u>Olmos v. Bank of</u>
<u>America, N.A.</u>, No. 15-cv-2786, 2016 WL 3092194, at *4 (S.D. Cal.
Jun. 1, 2016) (declining to follow <u>Tyacke</u> where diminution of
value of cell phone was de minimis when plaintiff only received
two unwanted text messages).

(plaintiff alleged "embarrassment and emotional harm" and "financial loss"; allegations deemed conclusory and insufficient to allege injury in fact); Opperman v. Path, Inc., 87 F. Supp. 3d 1018, 1055-56 (N.D. Cal. 2014) (Article III standing found, but alleged injury of "diminished mobile device resources, such as storage, battery life, and bandwidth" held de minimis and inadequate to allege injury in fact; contrasted with valid alleged injury that "battery resources were depleted as in [In re] iPhone [Application Litigation, 844 F. Supp. 2d (N.D. Cal. 2012)]"). As the court in Opperman wrote, the "essence of the standing inquiry is to determine whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" 87 F. Supp. 3d at 1057 (citing Baker v. Carr, 369 U.S. (1962)). The Court is satisfied that, at this early stage of the proceedings, Plaintiff has alleged such a personal stake in terms of a monetizable loss.

### 2. Equitable relief

Defendants next argue that Plaintiff cannot seek one of the equitable remedies of restitution and/or injunction, as these are the sole remedies provided for in the UCL. The Court agrees.

A plaintiff alleging a violation of the UCL may seek an injunction against the offending party or restitution of "any

18

money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution. Plaintiffs may not receive damages . . . or attorney fees." Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 179 (1999) (internal citations omitted).

### a. Restitution

Defendants argue that Plaintiff has not alleged facts tending to show that she may recover restitution; the Court agrees.

An order for restitution under the UCL is "one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken[.]'" Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003) (citing Kraus v. Trinity Mgmt. Servs., Inc., 23 Cal. 4th 116, 126-27 (2000)). Courts have held that dimunition-of-value cannot be a remedy under the UCL "because such a recovery would constitute damages rather than restitution." Smit v. Charles Schwab & Co., Inc., No. 10-2971, 2011 WL 846697, at *9 (N.D. Cal. Mar. 8, 2011); see also Feitelberg v. Credit Suisse First Boston LLC, 134 Cal. App. 4th 997, 1013 (Cal. Ct. App. 6th Dist. 2005).

Here, Plaintiff alleges only that Defendants were responsible for her economic losses, and not that they received any money or property from her. Accordingly, she does not have a claim for restitution under the UCL.

### b. Injunction

Defendants argue that Plaintiff similarly lacks standing to seek an injunction under the UCL. The Court agrees.

There is no motion for preliminary injunction pending, and in addressing this Rule 12(b)(6) dismissal motion, the Court is obliged to credit the facts and reasonable inferences in the FAC in favor of the Plaintiff. Generally, injunctive relief is available where there is a "clear showing on immediate irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis added); Continental Grp., Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980)(threat of imminent action required). Under federal law,[5] "[a] district court cannot issue an injunction unless 'there exists some cognizable danger of recurrent violation' . . . [and a] determination that such

---

[5] The Court applies federal law in this situation because "the issuance of a preliminary injunction is in the court's discretion according to both federal and [California] law," Kaiser Trading Co. v. Associated Metals & Minerals Corp., 321 F. Supp. 923, 931 n.14 (N.D. Cal. 1970). See also Irving Trust Co. v. Braswell, 596 F. Supp. 1441, 1444 (S.D.N.Y. 1944) (holding that a federal court sitting in diversity may issue an injunction pursuant to Fed. R. Civ. P. 65 regardless of whether substantive state law authorizes such an injunction).

danger exists must 'be based on appropriate findings supported by the record.'" U.S. v. Laerdal Mfg. Corp., 73 F.3d 852, 854 (9th Cir. 1995) (citing Federal Election Comm'n v. Furgatch 869 F.2d 1256, 1263 (9th Cir. 1989) & Fed. R. Civ. P. 65(d)); see also Melendres v. Arpaio, 695 F.3d 990, 997 (9th Cir. 2012) ("To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate that he is realistically threatened by a repetition of the violation") (internal citations omitted).  When making this determination, the district court may consider such factors as

> the degree of scienter involved; the isolated or
> recurrent nature of the infraction; the defendant's
> recognition of the wrongful nature of his conduct; the
> extent to which the defendant's professional and
> personal characteristics might enable or tempt him to
> commit future violations; and the sincerity of any
> assurances against future violations.

Furgatch, 869 F.2d at 1263 n.5 (internal citations omitted).

When a plaintiff seeks a final or permanent injunction, he or she

> must show that (1) the Court's exercise of equity
> jurisdiction is proper, (2) the plaintiff succeeded on
> the merits, and (3) the balance of equities tips in
> favor of injunctive relief. The first factor contains
> three sub-parts that require the plaintiff to show (1)
> plaintiff has no adequate legal remedy; (2) the
> threatened injury is real, not imagined; and (3) no
> equitable defenses exist. However, where [the
> legislature] provided for injunctive relief in a
> statute . . . , courts often enjoin defendants without
> weighing the traditional equitable considerations
> posed by injunctive relief.

Comcast Cable Communications v. Bowers, No. 06-1664, 2007 WL
1557510, at *5-*6 (D.N.J. May 25, 2007) (internal citations
omitted).

Some cases suggest that a strict accounting of all the
traditional equitable factors may not be necessary where the
statute at issue specifically provides for injunctive relief.
See Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165,
1175 (9th Cir. 2010) ("Considering . . . the statutory
violations we have found and the fact that an injunction is the
only relief available to a private party under the
[Disabilities] Act, it would be an abuse of discretion for the
district court now to deny injunctive relief. . . . '[T]he
standard requirements for equitable relief need not be satisfied
when an injunction is sought to prevent the violation of a
federal statute which specifically provides for injunctive
relief'" (citing Silver Sage Partners, Ltd. V. City of Desert
Hot Springs, 251 F.3d 814, 827 (9th Cir. 2001) (internal
citations omitted))); see also Meyer v. Portfolio Recovery
Associates, LLC, 707 F.3d 1036, 1044 (9th Cir. 2012) (plaintiff
demonstrated irreparable harm where he "argued before the
district court that he . . . [would] suffer irreparable harm
from [defendant's] continuing violations of the TCPA, which
violate the class members' right to privacy").

22

Defendants cite Clark v. Prudential Ins. Co. of America, which states that a plaintiff "cannot pursue her action in federal court unless she can demonstrate a real or immediate threat of irreparable injury. . . . A plaintiff whose cause of action under § 17204 is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite continuing threat of injury to establish Article III standing." 736 F. Supp. 2d 902, 925 (D.N.J. 2010) (internal citations omitted). They also cite Mladenov v. Wegmans Food Markets, Inc., 124 F. Supp. 3d 360, 379 (D.N.J. 2015), where the court found that the plaintiffs lacked standing to seek an injunction because the complaint did not allege "any threat of immediate harm" where the plaintiffs stated their intention "to continue to purchase [d]efendants' [allegedly misrepresented] brea[d] and bakery products." In Clark, the plaintiff "no longer face[d] a threat of continued harm with regard to Prudential's disclosures about the CHIP policy" because "she cancelled her CHIP policy in September 2005." Id. at 924.

The Court finds these cases helpful but not squarely on-point in the instant case. In both Clark and Mladenov, the plaintiffs were not at risk of continuing harm because they had the sole power to expose themselves—or not—to the offending practice, whether that was improper disclosures in Clark (where

the plaintiff could buy or not buy a policy) or misrepresented bread in Mladenov (where the plaintiff could buy or not buy bread from Wegmans). Such is not the case here; Plaintiff does not control whether Defendants contact her again.

Nevertheless, the Court finds, under the grounds pled in the FAC, that Plaintiff cannot make out an adequate case for an injunction in this matter. Plaintiff herself has not alleged sufficient facts demonstrating "a real or immediate threat of irreparable injury." Clark, 736 F. Supp. 2d at 925. Per her allegations, Plaintiff has not been contacted by Defendants since April 15, 2015, over twenty months ago; the last such contact occurred within five days of her request to cease and desist from contacting her. [FAC ¶¶ 34-36.] In a different case, a plaintiff's request for an injunction was granted when his "declaration attests that he continues to receive telephone calls from individuals stating that they are calling in response to his request for an insurance quote, despite his efforts to stop receiving such calls." Heidorn v. BDD Marketing & Mgmt. Co., LLC, No. C-13-00229-JCS, 2013 WL 6571629, at *18 (N.D. Cal. Aug. 19, 2013). Here, Plaintiff only alleges that she received calls after faxing a cease-and-desist letter; she does not allege that Defendants continue to contact her in violation of her statutory rights as the plaintiff in Heidorn did. On these facts, the Court finds that Plaintiff lacks standing to seek an

24

injunction under the UCL because Plaintiff does not plead a plausible risk of immediate and irreparable harm in the absence of an injunction. If circumstances change whereby Plaintiff can set forth a plausible basis for injunctive relief, Plaintiff may, of course, seek to revive her UCL cause of action by motion to amend.

Accordingly, the Court grants Defendants' Motion to Dismiss Count III of the FAC for lack of standing, without prejudice.

**V. CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' motion to dismiss Count II of Plaintiff's First Amended Complaint and will grant Defendants' motion to dismiss Count III of Plaintiff's First Amended Complaint without prejudice. If Plaintiff elects to file a Second Amended Complaint, she must seek leave to do so within 30 days of the entry of the Order accompanying this opinion. The accompanying Order will be entered.

**December 20, 2016**                          **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge