# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN DIVISION

| | |
|---|---|
| CHARLENE MARTINEZ, individually and on behalf of all others similarly situated, | Case No. 1:15-cv-07712-JBS-AMD |
| Plaintiff, | Hon. Jerome B. Simandle |
| v. | Magistrate Judge Ann Marie Donio |
| TD BANK USA, N.A., a National Bank, and TARGET CORPORATION, a Minnesota corporation, | |
| Defendants. | |

## DEFENDANTS TD BANK USA, N.A. AND TARGET CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION FOR SUMMARY JUDGMENT</u>

Jarrod D. Shaw
I.D. No. 015732004
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Tel:  (412) 667-6000
Fax: (412) 667-6050

Marc A. Lackner SBN # 111753
(admitted *pro hac vice*)
David S. Reidy SBN # 225904
(admitted *pro hac vice*)
McGuireWoods LLP
505 Sansome Street, Suite 700
San Francisco, CA 94111

*Counsel for TD Bank, USA, N.A. and Target Corporation*

i

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ..........................................................................................1

II.    ARGUMENT.................................................................................................3

    A.    Plaintiff Concedes that Defendants Are Entitled to Summary
        Judgment With Respect to the Vast Majority of the Calls At Issue .....3

    B.    Plaintiff Failed to Effectively Revoke Her Consent Prior to the
        Four Remaining Calls At Issue .............................................................4

    C.    Defendants' Conduct Does Not Give Rise to a Triable Issue of
        Fact Regarding "Harassing" Conduct under the Rosenthal Act ..........9

    D.    Plaintiff Does Not Explain How Her Fail-Safe Class Can Proceed ...13

III.   CONCLUSION.............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alborzian v. JPMorgan Chase Bank, N.A.,*
  235 Cal. App. 4th 29 (2015) ............................................................11

*Arteaga v. Asset Acceptance, LLC,*
  733 F. Supp. 2d 1218 (E.D. Cal. 2010) .............................................10

*Bennett v. Nucor Corp.,*
  No. 3:04-CV-291, 2005 WL 1773948 (E.D. Ark. July 6, 2005)........13

*Connelly v. Hilton Grand Vacations Co., LLC,*
  294 F.R.D. 574 (S.D. Cal. 2013) ......................................................14

*Davis v. Bank of Am., N.A.,*
  No. 13-4396, 2016 WL 427049 (E.D. Pa. Feb. 3, 2016)...................14

*Green v. Creditor Iustus Remedium, LLP,*
  No. 13-CV-1414, 2013 WL 6000967 (E.D. Cal. Nov. 12, 2013) ......11

*Haysbert v. Navient Solutions, Inc.,*
  No. 15-CV-4144, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016) ...................11, 12

*Johnston v. USAA Fed. Sav. Bank,*
  No. 12-CV-02486-LTM-KLM, 2014 WL 5439965 (D. Colo. Oct.
  27, 2014) ............................................................................................6

*Kerrigan v. Phila Bd. Of Election,*
  248 F.R.D. 470 (E.D. Pa. 2008)........................................................13

*Laouini v. CLM Freight Lines, Inc.,*
  586 F.3d 473 (7th Cir. 2009) ..............................................................8

*Parker v. Sony Pictures Ent., Inc.,*
  260 F.3d 100 (2d Cir. 2001) ...............................................................7

*Reyes v. Lincoln Automotive Fin. Servs.,*
  No. 15-0560, 2016 WL 3453651 (E.D.N.Y. June 20, 2016)...............6

*Sanchez v. Client Servs., Inc.,*
520 F. Supp. 2d 1149 (N.D. Cal. 2007)...........................................................12

*Shand-Pistilli v. Professional Account Services, Inc.,*
No. 10-01808, 2011 WL 2415142 (E.D. Pa. June 16, 2011) ............................11

*Stevens Shipping & Terminal co. v. Japain Rainbow II,*
334 F.3d 439 (5th Cir. 2003) .............................................................................8

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011).........................................................................................14

**Rules**

Federal Rule of Civil Procedure 23(b)(3) .................................................................14

**Statutes**

2015 FCC Order, 30 FCC Rcd. 7961, (2015)............................................................5

Cal. Civ. Code 1788.11 ...........................................................................................12

Restatement (Second) of Contracts § 68 (1981).......................................................5

Restatement (Second) of Torts § 892A, cmt. i. (1979).............................................5

# I.   **INTRODUCTION**

Plaintiff's Opposition to Defendants' Motion for Summary Judgment is most remarkable for what it does ***not*** contest.  Plaintiff's Amended Complaint articulated a theory that Plaintiff was "forced" to provide her phone number to Target when she updated her address online.  Changing course, Plaintiff now admits that she was not forced to provide her phone number.  This is because discovery has shown that on at least eight occasions Plaintiff updated her address information with Target in a variety of ways.  *See* Dkts. 56, 58; SOF at ¶ 12.  Discovery also shows that Plaintiff even revoked consent to be called on a telephone number other than the one at issue in this case at one point, which Defendants immediately honored, demonstrating that Plaintiff knew how and where to contact Target in order to revoke consent.  *Id*.

Recognizing that neither the evidence nor the law support Plaintiff's theory of forced consent, Plaintiff in her Opposition concedes the vast majority of her case.  Accordingly, Plaintiff admits that she has no TCPA claim with respect to 161 of the 165 calls at issue in this action, leaving only four calls placed to her between April 10, 2015 (when she allegedly attempted, but failed, to revoke her consent via faxed "cease-and-desist letters") and April 15, 2015, the last date on which she was called.

With respect to these four remaining calls, Plaintiff attempts to manufacture a dispute of material fact regarding whether the alleged cease and desist letters constituted a revocation of consent.  But Plaintiff does not—and cannot—dispute

that they were not sent to any numbers associated with the Target REDcard and there is no record Defendants ever received these letters.  Because there is no record that Defendants ever received the letters, Defendants were not put on notice that Plaintiff wished to revoke her consent, and therefore did not violate the TCPA when placing the last four calls.

Plaintiff also argues that her Rosenthal Act claim must be determined by a jury.  But the facts regarding the calls at issue—including that Plaintiff answered the phone only once following the repeated attempts to reach her, and that there are no allegations of conduct associated with harassment—are undisputed.  Courts faced with similar facts have decided Rosenthal Act claims on summary judgment.

Finally, Plaintiff abandons her UCL claim entirely (Pl.'s Opp. at p. 8), and does not contest that her proposed class definition constitutes an impermissible fail-safe class.  Instead, Plaintiff appeals for more discovery.  But because Plaintiff's fail-safe class is impermissible by definition, no amount of discovery can cure her proposed class definition.  Moreover, Plaintiff's concession that she provided prior express consent to be called and is now asserting revocation based on unreceived faxes to numbers not associated with the Target REDcard raises highly individualized issues of fact and law that simply cannot be resolved on a class-wide basis.  Consequently, there is no class that Plaintiff could represent, and her class allegations should be stricken.

## II.   ARGUMENT

### A.   Plaintiff Concedes that Defendants Are Entitled to Summary Judgment With Respect to the Vast Majority of the Calls At Issue.

Plaintiff's Amended Complaint proceeded under the theory that she was "forced" to provide Target with her cellular telephone number when she updated her address on Target's website.  *See* Dkt. 25, ("Am. Compl.") at ¶¶ 28-30.  On the basis of this theory, Plaintiff alleged her "forced consent" did not constitute "actual" consent to be called, and that therefore Defendants' calls to her violated the TCPA.  *See id.* at ¶ 23.  Discovery subsequently revealed that Plaintiff's allegations were unfounded.  As Defendants explained, and Plaintiff has admitted, the undisputed facts are that Plaintiff updated her contact information at least eight times in a variety of ways, including through phone calls, writing on monthly statements, and accessing the Manage My REDcard website.  *See* Defendants' Memorandum of Law in Support of Summary Judgment ("Def.'s Mem.") at pp. 13-14.  There was nothing forced about Plaintiff providing the -2420 phone number and consenting to be called.

Having recognized that her theory of "forced consent" cannot be maintained in light of the facts, Plaintiff concedes that 161 of the 165 calls at issue in this case were placed with her express consent, which she provided on September 17, 2012.  *See* Pl.'s Opp. at pp. 1, 8.  Defendants are therefore, at the very minimum, entitled to summary judgment on Plaintiff's TCPA claim with respect to these calls.

### B.    **Plaintiff Failed to Effectively Revoke Her Consent Prior to the Four Remaining Calls At Issue.**

Plaintiff's TCPA claim now rests solely on four calls that were placed between April 10, 2015 and April 15, 2015.  Pl.'s Opp. at p. 8.  Defendants are entitled to summary judgment with respect to these four remaining calls as well, because Plaintiff knew how to, but failed to effectively revoke her consent on April 10, 2015.

Plaintiff maintains that her bankruptcy attorney's act of faxing cease-and-desist letters to certain fax numbers on April 10, 2015 constituted an effective revocation of consent.  *See id.* at p. 9.  The undisputed facts surrounding these cease and desist letters are as follows:

- As a threshold matter, the only evidence that these cease and desist letters were sent *at all* consists of the declaration of Plaintiff's bankruptcy attorney attached as Exhibit B to Plaintiff's Response to Defendant's SOF, which states that the transmission report indicated that transmission was "OK".  *See* Exhibit B to Dkt. 58, Plaintiff's Response to Defendants SOF.

- Tellingly, the declaration of Plaintiff's bankruptcy attorney does not contain any information about where these fax numbers were obtained or what entities they were believed to be associated with.  *Id.*

- In Plaintiff's Deposition, she was asked about the cease and desist letters, and she stated that she did not personally send them and did not remember where the fax numbers came from.  *See* Defendants' SOF at ¶ 22; Plaintiff's Response to Defendants' SOF at ¶ 22.

- Further, it is undisputed that neither fax number was provided in Target REDcard materials as being associated with the Target REDcard.  In particular:

4

     o  In Target's Supp. Response to Plaintiff's Interrogatory No. 7, attached to Defendants' SOF at Exhibit H (Dkt. 56-9), Target states that neither fax number is associated with Target, and Target never received the cease and desist letters.

     o  In TD Bank's Supp. Response to Plaintiff's Interrogatory No. 7, attached to Defendants' SOF at Exhibit H (Dkt. 56-9), TD Bank states that neither fax number is associated with the REDcard. One number is related to TD Bank, N.A., a separate corporate entity, and the other receives faxes related to TD Bank, N.A. and TD Bank U.S.A., N.A., but was also not set forth as a way to communicate regarding the REDcard.  TD Bank has no evidence of receiving the cease and desist letters.  *Id.*

Plaintiff never actually communicated revocation of consent to someone with responsibility for (or knowledge of) her Target REDcard.  In fact, the 2015 FCC Order, 30 FCC Rcd. 7961, (2015), cited by Plaintiff, refers to common law principles in analyzing revocations of consent.  *Id.* at 7994, n. 223 (citing Restatement (Second) of Torts § 892A, cmt. i. (1979)) ("[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.").  *See also,* Restatement (Second) of Contracts § 68 (1981) ("A written revocation . . .  is received when the writing comes into the possession of the person addressed, or of some person authorized by him to receive it for him, or when it is deposited in some place which he has authorized as the place for this or similar communications to be deposited for him."); *id.* cmt. a. (noting that "a revocation if sent from a distance must be received in order to be effectual").  Plaintiff therefore failed to revoke her consent on April 10, 2015, and the four calls placed after that

date did not violate the TCPA. *See Reyes v. Lincoln Automotive Fin. Servs.*, No. 15-0560, 2016 WL 3453651, at *2 (E.D.N.Y. June 20, 2016) (granting summary judgment for defendant where plaintiff attempted to revoke consent via letter, but there was "no record that the Letter was actually sent to Defendant" and evidence showed that "Defendant never received" the Letter).

In attempting to avoid this straightforward analysis, Plaintiff advances arguments that miss the point entirely. First, cases such as *Johnston v. USAA Fed. Sav. Bank*, No. 12-CV-02486-LTB-KLM, 2014 WL 5439965 (D. Colo. Oct. 27, 2014), fail to support Plaintiff's argument. There, the court held that "Plaintiff's written letter to Defendant asking that it stop calling his cell phone, and identifying the specific number, served to revoke his previous consent." *Id.* at *3. It was undisputed in that case that the defendant actually *received* the letter revoking consent—and it was sent to the appropriate party. Here, by contrast, there is *no* evidence to suggest that Defendants received Plaintiff's letters, and the undisputed evidence shows that Plaintiff's letters were not sent to numbers associated with the REDCard.

Second, Plaintiff argues that the burden is on Defendants to show why their records do not reflect the cease and desist letters, but this is not the standard at summary judgment. Specifically, "[a] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It

6

need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff 'must designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (citation omitted).[1]   Plaintiff has failed to show that the cease and desist letters were communicated to anyone with responsibility for the Target REDcard.

Finally, Plaintiff's proffer that her bankruptcy attorney sent the faxes and received an "OK" on the transmission does not suffice.  Although the declaration from Plaintiff's bankruptcy attorney may serve as evidence that faxes were *sent*, it is not evidence that they were received *by Defendants*.  Plaintiff's attorney does not even provide any detail as to how he obtained the fax numbers or why he believed they were an appropriate method to revoke consent.  Thus, the affidavit provides no basis to infer that the faxes were received by Defendants.[2]  For this reason, Plaintiff's

---

[1] Plaintiff argues that because Target's corporate representative was unable to recall the appropriate fax number for a party to send a revocation letter off the top of her head, Plaintiff's sending of faxes to unknown locations was necessarily reasonable.  Pl.'s Opp. at p. 12.  This argument is undermined by the undisputed facts in this case.  Not only did Target's corporate representative explain options for revocation of consent in the cited deposition pages, but Plaintiff knew how to revoke consent, as she did that successfully as to a different telephone number on a prior date.  *See* Dkts. 56, 58; SOF at ¶ 12 (noting that Plaintiff revoked consent as to a different number on June 27, 2011, by calling and talking to a live customer service representative).

[2] In further support of any supposed revocation being ineffective, Plaintiff admits in her Opposition that the letters did not name the -2420 number specifically (merely revoking consent for any "cellular telephones"), and in fact, Plaintiff never informed Defendants that the -2420 phone number was a cell phone in the first

cited authority is inapposite.  In *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473 (7th Cir. 2009), the sole issue before the court was whether the defendant met its burden at summary judgment of showing that the plaintiff failed to timely file an EEOC complaint.  The court held that evidence of the fax confirmation, which showed a timely filing, created a genuine issue of material fact as to *when* the EEOC had received the complaint.  *See id.* at 478 (noting that the "fax confirmation independently verifies that a three-page document was sent from counsel's office to the EEOC before 4:30 p.m. on … the final day for timely filing").  Crucially, the evidence in the record showed that the fax number was the correct number for the receipt of EEOC complaints, thus establishing that the EEOC would have received the fax when it went through.  *See id.*  at 474-75 ("An affidavit from the supervisor … confirms that the office accepts charges of discrimination by fax and that the number on counsel's fax-transmission record is indeed the fax number attorneys are instructed to use for submitting charges.").  *See also Stevens Shipping & Terminal Co. v. JAPAIN RAINBOW II*, 334 F.3d 439, 441-43 (5th Cir. 2003) (where vessel owner's managing agent faxed a notice to employee of chartered vessel "*at the fax number listed in [vessel charterer's] voyage instructions*" and vessel charterer "*conceded* that the fax number . . . belonged to . . . [its] downtown corporate office,"

---

place—and she entered it into Target's system as a home number when she provided consent to be called.  *See* Plaintiff's Response to Defendants' SOF at ¶ 7 (admitting that never told Target that the -2420 phone number was a cell phone).

the "confirmation sheet created a rebuttable presumption" that it was received) (emphasis added). Here, by contrast, the only evidence is that the numbers Plaintiff's counsel faxed were *not* the proper means of contacting Defendants to revoke consent and Defendants in fact have no record of receipt of these faxes.

At bottom, Plaintiff's theory is that a credit card holder could fax any phone number even remotely associated with any subsidiary or branch of a major national bank or retailer and that such an action would constitute effective revocation, even where the actual entities named as Defendants never received or had reason to know of these attempted revocations. This theory is unsupported by the law. To revoke her consent, Plaintiff was required to actually communicate to Defendants her desire to do so in a manner that ensured Defendants *received* her revocation. Because there is no evidence that Defendants received Plaintiff's alleged revocation—and all evidence shows that they did not—Plaintiff failed to revoke her consent and the four remaining calls at issue are not actionable under the TCPA.

## C. Defendants' Conduct Does Not Give Rise to a Triable Issue of Fact Regarding "Harassing" Conduct under the Rosenthal Act.

As set forth above, all of the calls at issue in this case were made with Plaintiff's prior express consent. Plaintiff concedes that there is no genuine issue of material fact regarding the number and timing of the calls that were placed by Defendants. *See* Pl.'s Opp. at p. 16 (noting that "the number and timing of Defendants' calls here is undisputed"). Moreover, Plaintiff does not argue that

Defendants engaged in any of the hallmarks of harassing conduct under the Rosenthal Act or its federal counterpart, the FDCPA, such as verbal abuse, calls to Plaintiff's place of work or family, or repeated calls after Plaintiff had hung up. *Arteaga v. Asset Acceptance, LLC,* 733 F. Supp. 2d 1218 (E.D. Cal. 2010) (discussing factual issues in consideration of Rosenthal Act claims).  To the contrary, these calls were made in a legitimate attempt to reach Plaintiff regarding her Target REDcard, and all but one of the calls went unanswered.[3]  Accordingly, there are no genuine issues of material fact in dispute and Defendants are entitled to summary judgment on Plaintiff's Rosenthal Act claim because their calls did not rise to the level of "harassing" conduct under the Act.

Plaintiff argues that whether Defendants' attempts to reach her regarding her Target REDcard constituted "harassment" under the Rosenthal Act must necessarily be presented to the trier of fact.  *See* Pl. Opp. at p. 14.  In so arguing, Plaintiff completely ignores the authority cited by Defendants in their opening Memorandum where courts have granted summary judgment when the facts regarding defendants' calls demonstrate that the amount and pattern of calls are insufficient to raise a triable issue of fact.  *See* Def's Mem. (Dkt. 55) at pp. 17-20 (collecting cases where courts granted summary judgment on Rosenthal Act and FDCPA claims with similar facts).

---

[3] The undisputed call log shows that someone answered two initial calls in August of 2014, and then no calls were answered until the final call on April 15, 2015. Pl's Response to Def's SOF at ¶ 17.

Instead, Plaintiff cites cases with entirely different procedural postures in her attempt to avoid summary judgment on an issue where there are no disputed facts.  Both *Green v. Creditor Iustus Remedium, LLP*, No. 13-cv-1414, 2013 WL 6000967 (E.D. Cal. Nov. 12, 2013), and *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29 (2015), involved evaluations of the plaintiffs' pleadings to determine whether they had stated claims under the Rosenthal Act and FDCPA *sufficient to withstand motions to dismiss*.  The courts in those cases simply held that plaintiffs' allegations were sufficient to state a claim; they did not, as Plaintiff implies, hold that Rosenthal Act claims where the facts are undisputed and none of the hallmarks of harassing conduct are present must necessarily be presented to a jury.[4]

In fact, Plaintiff mis-states the relevant analysis of Rosenthal Act claims by implying the sheer volume of calls is all that matters.  As the court explained in *Haysbert v. Navient Solutions, Inc.*, No. 15-cv-4144, 2016 WL 890297, at *13 (C.D. Cal. Mar. 8, 2016), which is cited by Plaintiff, courts not only "consider the volume *and pattern of calls* made to the debtor" but also "whether the defendant actually reached the plaintiff, and whether defendant was asked to stop calling."   *Id.* (emphasis added).

---

[4] Further, the court in *Alborzian* noted that the calls were part of a "campaign of harassment," *id.* at 38, as opposed to a legitimate attempt to reach to debtor, as set forth in *Shand-Pistilli v. Professional Account Services, Inc.,* No. 10-01808, 2011 WL 2415142, at *6 (E.D. Pa. June 16, 2011), and as occurred here.

Further, Plaintiff's authorities involved factual issues indicative of harassment that are not present here.  For example, in *Haysbert,* the court concluded that a triable issue of fact existed precisely because the Plaintiff "present[ed] evidence that these calls caused interruptions in his day and that he answered at least some of these calls." *Id*.  Here, Plaintiff does not dispute that she basically answered only one call.  *See* Pl's Response to Def's SOF at ¶ 17.  In *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007), the court held that a genuine issue of material fact existed where it was alleged that defendant made calls and left messages at plaintiff's place of employment, and disclosed the credit card debt to plaintiff's employer and family as "ominous."  *Id.* at 1158.  Here, Plaintiff has never alleged that she was called at her place of work or that any threatening messages were left.  As a result, summary judgment in favor of Defendants on this claim is appropriate.

Finally, Plaintiff claims that because the four calls at issue were made in violation of the TCPA they constitute *per se* harassment under the Rosenthal Act. As set forth above, these calls were not a violation of the TCPA.  Further, Plaintiff's claim that a TCPA violation is a *per se* violation of the Rosenthal Act is just wrong.[5]

---

[5] The Rosenthal Act makes it unlawful to contact a debtor in a manner that constitutes "harassment to the debtor *under the circumstances*."  Cal. Civ. Code 1788.11 (emphasis added).  The Rosenthal Act does not provide that a violation of the TCPA is necessarily harassment "under the circumstances"—and Plaintiffs cite to no case law that supports such an assertion.

### D.    <u>Plaintiff Does Not Explain How Her Fail-Safe Class Can Proceed.</u>

Plaintiff has proposed a classic fail-safe class in which membership of the class is determined only by the defendant's liability. This exact class definition is routinely stricken as the authority cited by Defendants in their opening Memorandum demonstrated. *See* Def.'s Mem. at pp. 32-33. Notably, Plaintiff does ***not*** dispute that she has, in fact, proposed an impermissible fail-safe class in her Amended Complaint. Nor does Plaintiff dispute the authority cited by Defendants. Instead, Plaintiff argues that proposed class definitions should be stricken "only where no amount of additional class discovery will alter the conclusion that the class is not maintainable." Pl.'s Opp. at p. 19. But that is the case here: the deficiency with Plaintiff's class definition is "evident from the face of the complaint," (Pl's Opp. at p. 18), and no amount of discovery can cure this defect. [6]

Tacitly recognizing that her proposed class definition cannot be cured with discovery, Plaintiff in a footnote requests leave to amend her proposed class. But

---

[6] Now that Plaintiff admits that she provided consent to be called, she is not even a member of the very class she proposes to represent and therefore, she is not an adequate class representative with typical claims. "The commonality, typicality, and adequacy of representation requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Bennett v. Nucor Corp.*, No. 3:04-cv-291, 2005 WL 1773948, at *3 (E.D. Ark. July 6, 2005) (citation omitted). Where a Plaintiff is not a member of the proposed class, she fails each of these requirements. *See, e.g., Kerrigan v. Phila. Bd. of Election,* 248 F.R.D. 470, 477-78 (E.D. Pa. 2008) (holding that one of the named plaintiffs "cannot adequately represent the interests of the proposed class" because "she is not a member of the proposed class").

Plaintiff cannot attempt to amend her Complaint to represent a class of plaintiffs who provided their express consent to be called but then revoked it.  Resolution of these claims would necessarily require individualized determinations and therefore would not meet Rule 23(a)(2)'s requirement that there be "questions of law or fact common to the class."  Questions regarding, *inter alia*, whether, when and how consent was revoked and whether it was effective (or even received by Defendants) would need to be resolved plaintiff-by-plaintiff and would be incapable of resolution "in one stroke," as is necessary to satisfy Rule 23(a)(2).  *Wal-Mart Stores, Inc.  v. Dukes*, 564 U.S. 338, 350 (2011).

Moreover, such a proposed class would also fail Rule 23(b)(3)'s more stringent requirement that "questions of law or fact common to class members predominate over any questions affecting individual members[.]"  Fed. R. Civ. P. 23(b)(3).   Individualized determinations as to liability (including whether the plaintiff actually effectively revoked her consent) and damages (including when revocation occurred and whether calls were placed thereafter) swamp any alleged common questions that might be resolved through a class proceeding.  *See Davis v. Bank of Am., N.A.*, No. 13-4396, 2016 WL 427049, at *7 (E.D. Pa. Feb. 3, 2016) (noting that the "highly individualized nature" of the plaintiffs' claim made plaintiffs "unable to satisfy the predominance requirement of Rule 23(b)(3)" and striking class allegations); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577

14

(S.D. Cal. 2013) ("Although TCPA cases are not ''per se' unsuitable for class resolution,' class certification is warranted only where the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary" (citation omitted)).

No amount of additional discovery or attempted amendment of the class definition can cure the fundamental defects in Plaintiff's case because Plaintiff has **conceded** that she consented to be called.  Simply put, even if any of Plaintiff's claims were to proceed past summary judgment (and Plaintiff has offered no compelling reason why they should), this case cannot proceed as a class. Accordingly, Plaintiff's class allegations should be stricken.

### III.   <u>CONCLUSION</u>

For the reasons set forth above and those in their initial Memorandum, Target and TD Bank are entitled to summary judgment as to all of the claims in Plaintiff's First Amended Class Action Complaint.  In the alternative, if any of Plaintiff's claims survive, the class allegations in Plaintiff's First Amended Class Action Complaint should be stricken.

Dated:  December 23, 2016                           Respectfully submitted,

                                                     <u>/s/ Jarrod D. Shaw</u>
                                                     Jarrod D. Shaw
                                                     I.D. No. 015732004
                                                     McGuireWoods LLP
                                                     EQT Plaza
                                                     625 Liberty Avenue, 23rd Floor

Pittsburgh, PA 15222
Tel:  (412) 667-6000
Fax: (412) 667-6050
jshaw@mcguirewoods.com

Marc A. Lackner SBN # 111753
(admitted *pro hac vice*)
David S. Reidy SBN # 225904
(admitted *pro hac vice*)
McGuireWoods LLP
505 Sansome Street, Suite 700
San Francisco, CA 94111

*Counsel for TD Bank, USA, N.A.*
*and Target Corporation*

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2016, I electronically filed the foregoing using the Court's CM/ECF system, which will then send a notification of such filing to all counsel of record.

*/s/ Jarrod D. Shaw*
Jarrod D. Shaw