IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLENE MARTINEZ, individually and on behalf of all others similarly situated, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 15-7712(JBS/AMD) |
| v. | |
| TD BANK USA, N.A., a National Bank, and TARGET CORPORATION, a Minnesota corporation | **OPINION** |
| Defendants. | |

APPEARANCES:

Stefan Louis Coleman, Esq.
1072 Madison Ave., Suite 1
Lakewood, NJ 08701
        Attorney for Plaintiff

Jarrod D. Shaw, Esq.
MCGUIRE WOODS LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 1522
        Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

Plaintiff Charlene Martinez brings this putative class action against Defendants TD Bank USA, N.A. ("TD Bank") and Target Corporation ("Target"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and a California law entitled the Rosenthal Fair Debt Collection

Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788-1788.33, arising from telephone calls placed in connection with Defendants' efforts to collect a consumer debt from Plaintiff's credit card. [Docket Item 25.] The Court previously dismissed Plaintiff's claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., for lack of standing. [Docket Items 60 & 61.] Before the Court is Defendants' motion for summary judgment, or, in the alternative, to strike Plaintiff's class allegations. [Docket Item 54.] Plaintiff has filed a Response [Docket Entry 57] and Defendants have filed a Reply [Docket Entry 62].

Defendants argue, first, that there is no genuine dispute of material fact regarding whether Defendants violated the TCPA because Plaintiff provided prior express consent before all of the calls at issue and did not revoke that consent before any of the calls were made. Second, Defendants argue that there is no genuine dispute of material fact as to whether harassment occurred within the meaning of the RFDCPA and summary judgment in their favor is appropriate. Defendants also argued that they were entitled to summary judgment as to Plaintiff's UCL claim, as that claim had not yet been dismissed at the time when Defendants filed the instant motion. Finally, Defendants argue that Plaintiff's class allegations should be stricken as they improperly propose a fail-safe class.

For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion for summary judgment and will strike Plaintiff's class allegations.

## II.   BACKGROUND[1]

TD Bank is a large national bank chain that, inter alia, "owns and underwrites a portfolio of credit card accounts." [FAC ¶ 1.] Target is a corporation headquartered in Minnesota and doing business in New Jersey and nationwide. [Id. at ¶ 8.]

Plaintiff Charlene Martinez, a California resident, opened a Target credit card account in 2007. At all times relevant to this action, Target was the servicer of her credit card account. When Plaintiff opened the account, she agreed that Target or its agents were permitted to call her, including her mobile telephone, regarding her account, and that they could make such calls using an automated dialing/announcing device. [Pl. Statement of Material Facts in Opp., Docket Item 58 ¶¶ 1-3.]

Plaintiff obtained the cell phone number at issue here, ending in -2420, in 2011. When she updated her account

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to Defendants' Statement of Undisputed Material Facts (Docket Item 56), its supporting exhibits, and Plaintiff's related Response (Docket Item 58), as well as Plaintiff's Supplemental Statement of Undisputed Material Facts (Docket Item 59), its supporting exhibits, and Defendants' Response to the Supplemental Statement (Docket Item 63).

information with Target on its website on September 17, 2012, she provided this number as her "home" telephone number and received a disclosure that stated that, by providing her phone number on that page, she consented to receiving, at that phone number, autodialed and prerecorded calls from Target or on Target's behalf. Plaintiff then clicked "Submit" after that disclosure was provided. [Id. at ¶¶ 4-9.]

Before that date, Plaintiff had updated her account information (e.g., her address or her phone number) in other ways: by writing the new address on her monthly statement, by calling Target and using Target's automated phone system, and by calling Target and speaking to a live customer service representative. [Id. at ¶¶ 12(a)-(e).] At one point, Plaintiff called Target's customer service and spoke to a live representative to change her phone number; on another occasion, she called Target's customer service and spoke to a live representative to revoke her consent for Target to call that number (ending in -2460). [Id. at ¶¶ 12(f) & (g).] On September 9, 2013 (almost one year after Plaintiff provided the -2420 number on Target's website), Plaintiff called Target and provided an updated address to a live customer service representative; she did not provide an updated phone number during that conversation. [Id. at ¶ 12(i).] On July 9, 2014, Plaintiff again used Target's website to provide an updated home

4

address and did not change the phone number from the -2420 number. [Id. at ¶ 12(j).]

Plaintiff had landline telephone service in her name from 2014 to 2015. [Id. at ¶ 13.]

Plaintiff's Target credit card account became delinquent sometime in late 2014; between August 29, 2014 and April 15, 2015, Target placed 165 calls to Plaintiff's cell phone regarding the delinquent account. [Id. at ¶¶ 14-15.] Plaintiff concedes the accuracy of Target's dialer records as to the "date, time, content, and duration of Defendants' calls to Plaintiff." [Id. at ¶ 16.] On 19 of those days, Plaintiff received two calls per day; on two days, she received three calls per day. Of the 165 calls, 162 calls had durations of 0 seconds, i.e., were not answered by Plaintiff or another party. [Id. at ¶¶ 17(a)-(e).] On August 29, 2014, a 6-second call occurred where the person who answered stated that Plaintiff was not home; on August 30, 2014, a 487-second call occurred where the person who answered promised to pay; and on April 15, 2015, a 159-second call occurred where Plaintiff told Target she was filing for bankruptcy. [Id. at ¶ 17(f).]

While Plaintiff initially alleged that she spoke with Target on April 14, 2015 and told them to stop calling her, she later amended that to state that she spoke with Target both on April 14 and April 15; she also stated in her deposition that it

5

is possible that her memory is incorrect. While at one point during this case, Plaintiff stated that she called Defendants to ask them to stop calling the -2420 number, she has no record of making such a call; generally speaking, Plaintiff cannot contradict Target's dialer records because she does not have any call logs and cannot estimate the number of calls she received between August of 2014 and April of 2015. [Id. at 18-20.]

Plaintiff alleges that on April 10, 2015, Plaintiff's bankruptcy attorney, Daniel Shay, faxed cease-and-desist letters to two fax numbers, "revoke[ing] any prior express consent that may have been given [by Plaintiff or her husband] to receive telephone calls, especially to Clients' cellular telephones, from an Automated Telephone Dialing System, or a pre-recorded voice" as outlined in the TCPA." The letters were faxed to two numbers: (856) 533-1138 and (302) 683-6889. The transmission report for the faxes indicated that the transmission for each was "OK." [Pl. Supp. Statement of Material Facts in Opp., Docket Item 59 at ¶¶ 1-3, citing Docket Item 58-2 at ¶¶ 4 & 5 and Exhs. 1 & 2.] Defendants dispute these factual allegations inasmuch as they "have no record of receiving the cease and desist letters." [Def. Response to Statement of Material Facts in Opp., Docket Item 63 at ¶¶ 1-3.]

The (856) 533-1138 number receives faxes for TD Bank, N.A.'s Business Solutions group. However, Defendants note that

6

TD Bank, N.A. "is a different entity than the one related to the Target REDcard." [Docket Item 63 at ¶ 4, citing Docket Item 56-9 at 4.]

The (302) 683-6889 number receives faxes for TD Bank USA, N.A. as well as for TD Bank, N.A.; however, Defendants note that "the number was not provided as a method to communicate regarding the Target REDcard." [Docket Item 63 at ¶ 5, citing Docket Item 56-9 at 4.]

During the deposition of Target's Rule 30(b)(6) designee, Susan Wolf, Ms. Wolf was unable to state the fax number where cease-and-desist letters (or other revocations of consent) could or should be sent; however, Defendants point out, Ms. Wolf stated that, while she did not know the number, it "might" be found online or be given out by a customer service representative to a caller. [Docket Item 63 at ¶ 9, citing Docket Item 59-1 at 14-15.]

Target placed four calls to the -2420 number from April 11, 2015 to April 15, 2015. [Docket Item 63 at ¶ 6.] Target stopped calling Plaintiff after April 15, 2015, when a Target representative reported in Target's account system that Plaintiff had retained a bankruptcy attorney. [Id. at ¶ 7.]

Neither Plaintiff's electricity bill nor her cell phone bills increased as a result of the calls made by Defendants to

the -2420 number. [Docket Item 58 at ¶¶ 23-24.] Plaintiff no longer uses the -2420 cell phone number. [Id. at ¶ 26.]

### III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portlines Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. The
non-moving party "'need not match, item for item, each piece of
evidence proffered by the movant,'" but must simply present more
than a "mere scintilla" of evidence on which a jury could
reasonably find for the non-moving party. <u>Boyle v. Cnty. of
Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir. 1998)
(quoting <u>Anderson</u>, 477 U.S. at 252).


**IV.  ANALYSIS**

    **A. TCPA**

Defendants argue that they are entitled to summary judgment
on Plaintiff's claim that they violated the TCPA because there
is no genuine dispute of material fact that Plaintiff provided
her prior express consent to receiving autodialed calls to her
cell phone, and she did not receive any calls from Defendants
after revoking that consent. [Docket Item 55 at 20-26.]

In response, Plaintiff concedes that she provided consent
for Defendants to call her using an autodialer on September 17,
2012. [Docket Item 57 at 13.] However, she submits, there is a
genuine dispute of material fact as to whether Defendants
continued to call her after she revoked that consent: she
contends that she has submitted sufficient evidence for a
reasonable finder of fact to conclude that she revoked her
consent to be called on April 10, 2015 via the cease-and-desist

letters faxed by her bankruptcy attorney, and that she nevertheless received four calls from April 11, 2015 to April 15, 2015, in violation of the TCPA. [Docket Item 57 at 13-18.]

To prove a violation of the TCPA, 47 U.S.C. § 227(b)(1)(A), a plaintiff must put forth evidence that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Van Patten v. Vertical Fitness Group, LLC, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014) (internal citations omitted). If a defendant, as an affirmative defense, can show that the called party provided his or her express consent, then the TCPA claim will fail. Id.

Plaintiff has conceded that she provided her prior express consent before 161 of the 165 calls were made to her cell phone. She alleges, however, that she revoked her consent on April 10, 2015 – or that there is a genuine dispute of material fact as to this point – and that Defendants nevertheless made four more calls to her in violation of the TCPA.

The FCC has stated that "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing"; in order for a called party to revoke his or her consent, "the TCPA requires only that the called party clearly express his or her desire not to receive further calls." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of

1991 (hereinafter "2015 FCC Order"), 30 F.C.C. Rcd. 7961, 7996-97, ¶¶ 64, 67 (July 10, 2015). In response to a concern that "allowing [e.g.,] oral revocation puts defendant callers at a disadvantage," the FCC disagreed: "The well-established evidentiary value of business records means that callers have reasonable ways to carry their burden of proving consent. We expect that responsible callers, cognizant of their duty to ensure that they have prior express consent under the TCPA and their burden to prove that they have such consent, will maintain proper business records tracking consent. . . . We, therefore, find that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept." Id. at 7998-99, ¶ 70.

Courts, when considering whether consent was revoked under the TCPA, have looked to common-law understandings of consent. See Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270-271 (3d Cir. 2013) ("Our holding that the TCPA allows consumers to revoke their prior express consent is consistent with the basic common law principle that consent is revocable. . . . [A]t common law, consent may be withdrawn. Restatement (2d) of Torts § 892A, cmt. I (1979) ('[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing

11

for him to continue the particular conduct.')"). A court should not consider the called party's subjective intent and should, instead, look to the words the called party used to consider whether the alleged revocation of consent either informed the caller or gave the caller reason to know that the called party was revoking his or her consent to be called. See Dixon v. Monterey Fin. Servs., Inc., No. 15-cv-03298, 2016 WL 3456680, at *3 (N.D. Cal. June 24, 2016).

The parties appear to agree that the substance of the cease-and-desist letters, faxed by Plaintiff's bankruptcy attorney on April 10, 2015, would have sufficed to give Defendants reason to know that Plaintiff was withdrawing her consent to be called. The sole dispute is as to whether the faxing of the letters to the fax numbers in question, where Defendants submit that the evidence is clear that they never received either letter, was a reasonable method of informing Defendants that Plaintiff was revoking her consent.

Plaintiff has cited case law where courts have "honored consumers' revocation of consent through submission of a cease-and-desist letter . . . , even where there are deficiencies with the letter, such as failing to 'indicate that the number [in the request] was for a cellular phone.'" [Docket Item 57 at 15, citing Baldwin v. Monterey Fin. Servs., Inc., No. 14-cv-2346, 2016 WL 5723734, at *5 (M.D.Pa. Sept. 30, 2016) and Gager, 727

12

F.3d at 267.] However, the alleged deficiencies in the April 10 faxes do not go to deficiencies within the letter, but rather the deficiency in the method of communication as a whole, such that it was no longer a "reasonable method" of revoking Plaintiff's consent.

The crux of Defendants' argument that the faxing of the cease-and-desist letters to the two numbers on April 10 was not a reasonable method of revoking Plaintiff's consent is that, in the first instance, Target was the servicer of Plaintiff's credit card account and Target was not one of the parties faxed, and second, neither number that was faxed was one that was provided for consumers to use to communicate about their Target credit card accounts. [Docket Items 55 at 25-26; 57 at 16-17.]

Furthermore, Defendants argue that they cannot be said to have had reason to know that Plaintiff revoked her consent on April 10, 2015 when they assert that they never received the revocation, their business records do not reveal having received the faxes, and Plaintiff cannot point to any evidence that they received the faxes beyond the numbers themselves and the fact that the faxes marked their transmission as "OK." [Docket Items 55 at 25-26; 57 at 17-18.] Defendants argue: "Plaintiff never actually communicated revocation of consent to someone with responsibility for (or knowledge of) her Target REDcard." [Docket Item 62 at 9.] They continue: "Although the declaration

13

from Plaintiff's bankruptcy attorney may serve as evidence that faxes were <u>sent</u>, it is not evidence that they were received by <u>Defendants</u>. Plaintiff's attorney does not even provide any detail as to how he obtained the fax numbers or why he believed they were an appropriate method to revoke consent. Thus, the affidavit provides no basis to infer that the faxes were received by Defendants." [<u>Id.</u> at 11 (emphasis in original).]

The Court finds that Plaintiff has not produced sufficient evidence to allow a reasonable finder of fact to conclude that she revoked her consent on April 10, 2015, thus allowing her claim under the TCPA for the four calls placed from April 11, 2015 to April 15, 2015 to go forward. A reasonable finder of fact could not conclude that faxing a letter to a fax number only known to be associated with one party that is simply connected to the credit card account at issue, and has never serviced that account, cannot constitute a reasonable method of revoking consent to be contacted regarding that account. This is especially true where, as here, the consumer has previously effectively revoked consent in a different manner.

The undisputed evidence is that Plaintiff's attorney faxed appropriately clear cease-and-desist letters to two fax numbers associated with TD Bank, N.A., and TD Bank USA, N.A. Only the latter entity is a party to this action, and it has never acted as the servicer of Plaintiff's Target credit card. Plaintiff's

14

only evidence that the indicated fax numbers received the fax is that the faxes were marked as their transmission having been "OK." The Court finds that this does not create a genuine dispute of material fact as to whether TD Bank USA, N.A. (a defendant in this action) knew or had reason to know of this fax, where TD Bank USA, N.A.'s records show that it did not receive the facts and Plaintiff has put forth no evidence to suggest why faxing the letter to that specific fax number would have given TD Bank USA, N.A. reason to know that she had revoked her consent.

Further undisputed evidence shows that Plaintiff revoked her consent to be called on a different telephone number on a prior date using a different method, and that Defendants honored that revocation. Plaintiff has not put forth evidence that would tend to show why she believed that faxing her letter to the numbers her attorney faxed on April 10 would have or should have effectively communicated her revocation to Defendants as she previously had, herself, done.

In Reyes v. Lincoln Auto. Fin. Servs., No. 15-0560, 2016 WL 3453651, at *2 (E.D.N.Y. June 20, 2016), the court granted summary judgment on a TCPA claim where, despite the plaintiff's argument that he had revoked his consent by letter, the letter was "merely addressed to 'Lincoln Credit,' with nothing more," was not signed by the plaintiff, the plaintiff testified that

15

the letter was a form letter, that he did not recall the address
he mailed the letter to, that he had no record that the letter
was actually sent to the defendant, and that a response letter
from the defendant concededly stated that it never received the
plaintiff's letter revoking consent.

In Johnston v. USAA Fed. Savings Bank, No. 12-cv-02486,
2014 WL 5439965, at *3-*4 (D. Colo. Oct. 27, 2014), although the
agreement between the plaintiff and defendant required the
plaintiff to revoke his consent in a different manner, the court
found that the plaintiff's fax to defendant requesting "that it
'[p]lease stop immediately calling my cell phone # xxx-xxx-
xxxx'" could "serve to revoke his consent" under the TCPA where
"the undisputed evidence is that Defendant received Plaintiff's
written request . . . via facsimile on Saturday, July 28, 2012."
However, the dispute in this case is not over in what manner
Defendants and Plaintiff agreed Plaintiff could revoke her
consent, but rather whether the Defendants named in this suit
ever actually received Plaintiff's revocation (or had reason to
know of it). In Johnston, the "undisputed evidence" was that the
defendant had received the fax. The Court therefore finds it
inapposite.

Plaintiff submits that the successful transmission of the
fax creates a question of fact for a jury. Under these
circumstances, the Court disagrees. While courts have found that

16

"a fax confirmation generated by the sender's machine" can create a genuine issue of fact about whether the fax was received when the fax was absent from the intended recipient's relevant file, see Laouini v. CLM Freight Lines, Inc., 586 F.3d 473, 476-79 (7th Cir. 2009), but in this case, it is precisely the intended recipient that is at issue; in addition, while the relevant agency in Laouini "never 'denied'" having received the fax, the Defendants here do deny having received it. In Laouini, the EEOC supervisor confirmed that "the number on . . . [the] fax-transmission record is indeed the fax number attorneys are instructed to use for submitting charges." Id. at 475. The Laouini decision cited In re Longardner & Assocs., Inc., 855 F.2d 455, 459, where the court ruled that, where "notice was properly addressed, stamped and mailed, there is a presumption that Bunn received it on behalf of the creditor. Bunn's denial of receipt alone does not rebut the presumption, but merely creates a question of fact." Here, however, the question of fact is not necessarily created as Plaintiff urges, because there is insufficient evidence to show that the faxes, by virtue of having been sent to the fax numbers they were sent to, were effectively "properly addressed."

   In Stevens Shipping & Terminal Co. v. JAPAN RAINBOW, II MV, 334 F.3d 439, 44 (5th Cir. 2003), the court ruled that a fax confirmation sheet "created a rebuttable presumption that" a

17

party received the notice and was deemed to have actual
knowledge of its contents. This was the case even though the
party contended that the "fax machine at issue was in an area
separate from the company's administration and was not one that
officers would use," in part because he "conceded that the fax
number" where the fax was sent "belonged to a fax machine in the
agency department of [its] downtown corporate office" and, most
relevantly to the instant analysis, it was sent to "the fax
number listed in [the vessel charterer's] voyage
instructions[.]" Id. at 441-43. Here, in contrast, Defendants
submit that the evidence is clear that the fax to TD Bank USA,
N.A. was not sent to any entity that had any relationship with
Plaintiff's credit card account; nor was it the method specified
in any instructions provided by Defendants to Plaintiff on how
to communicate with Defendants.

    Defendants state: "Plaintiff's theory is that a credit card
holder could fax any phone number even remotely associated with
any subsidiary or branch of a major national bank or retailer
and that such an action would constitute effective revocation,
even where the actual entities named as Defendants never
received or had reason to know of these attempted revocations."
[Docket Item 62 at 13.] While the Court does not understand
Plaintiff to go quite that far in her argument, the Court
nonetheless finds that Plaintiff has not raised a genuine

dispute of material fact that her method of revocation was, under the circumstances, a reasonable one.

For those reasons, the Court finds that Plaintiff has not put forth sufficient evidence to allow a reasonable finder of fact to conclude that she used a reasonable method to communicate to Defendants, on April 10, 2015, revocation of her consent to be called. Given that, her conceded prior express consent was still in effect, and Plaintiff cannot prevail on her claim that the four calls from April 11, 2015 to April 15, 2015, constituted violations of the TCPA. Accordingly, the Court will grant summary judgment to Defendants as to the TCPA claim.

**B. RFDCPA**

Defendants argue that they are entitled to summary judgment on Plaintiff's claims under the RFDCPA and Cal. Civ. Code § 1788.17, which incorporates failure to comply with provisions of the Federal Debt Collection Practices Act ("FDCPA"), Sections 1692b through j, which also relate to "harassment or abuse of a person in connection with collection of a debt" because "the undisputed call logs show that no harassment occurred" as a matter of law. [Docket Item 55 at 26-27.] Plaintiff argues that the undisputed call logs show that Defendants called Plaintiff 165 times over an eight-month period, which a reasonable jury could find to constitute harassment within the meaning of the RFDCPA, and that courts have denied summary judgment in cases

19

with patterns of calls that were lower in amount and frequency. [Docket Item 57 at 19-21.]

The RFDCPA prohibits harassing conduct related to debt collection, including "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with such frequency as to be unreasonable and to constitute harassment under the circumstances." Cal. Civ. Code §§ 1788.11(d) & (e). It also prohibits parties from "engaging in conduct, the natural consequence of which is to harass or abuse a person in connection with the collection of a debt." Cal. Civ. Code § 1788.17 (referencing 15 U.S.C. § 1692d).

"The determination of whether a debt collection agency's telephone calls amount to 'actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'" Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (quoting Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 505 (D.Md. 2004)).

None of the statutory provisions at issue here expressly mandate that such conduct must occur in the absence of the called person's consent, as other provisions of 15 U.S.C. §§ 1692 et seq. do. See 15 U.S.C. § 1692c. The Court has located no definitive guidance whether a cause of action under the RFDCPA can arise from cell phone calls received during a period

20

of prior consent, or whether such consent is not deemed to permit a pattern of abusive calls in any event. In at least one case of which the Court is aware, a reviewing court has found both (1) that a consumer consented to receive seventy-three calls but not the final twenty-six calls from a creditor, and (2) that there was nevertheless a genuine dispute of material fact as to whether the overall volume and pattern of all ninety-nine calls (again, most of which were made with the consumer's consent) violated § 1788.11 of the RFDCPA. Haysbert v. Navient Solutions, Inc., No. CV 15-4144 PSG (Ex), 2016 WL 890297, at *9-*10, *13 (C.D. Cal. Mar. 8, 2016). While a consumer's consent may constitute evidence that the conduct of the caller was not unreasonable or did not constitute harassment under the circumstances and therefore did not violate the RFDCPA, the Court is inclined to treat the effect of such consent on the claim that the conduct was harassing as a question of fact rather than law. See also Chisholm v. AFNI, Inc., No. 15-3625, 2016 WL 6901358, at *3-*6 (D.N.J. Nov. 22, 2016) (granting summary judgment to defendant on FDCPA claim under 15 U.S.C. § 1692d based on volume and pattern of calls and separately granting summary judgment to defendant on TCPA claim because consumer consented to receiving calls).

The Court has reviewed relevant case law, and notes the following holdings (and, where relevant, their attendant procedural postures).

In Arteaga v. Asset Acceptance, LLC, the court found that the plaintiff "fail[ed] to raise a genuine issue of material fact" as to whether the defendant's conduct was harassing where the plaintiff presented "no evidence that Asset called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested Asset to cease calling." 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010). The only circumstance present in this case, the Court finds, that was not present in Arteaga was that, on several occasions, Defendants called Plaintiff multiple times in one day. (As described supra, the Court finds that Plaintiff has not raised a genuine issue of material fact that Defendants called her after she effectively communicated revocation of her consent to be called by them.)[2]

---

[2] In Reddin v. Rash Curtis & Assocs., the court addressed the issue of whether a call placed after a consumer did request the caller cease calling her could raise a genuine dispute of material fact as to whether the calls were harassing: "Even pretending that a reasonable jury could find that two telephone calls are sufficiently repetitive and continuous so as to annoy, abuse, or harass a person, the undisputed evidence is that defendant removed plaintiff's number from its file after she requested it to cease calling her and the second call was inadvertently placed before the automated dialer system was updated that night. Based on this evidence, a reasonable jury could not find that defendant placed the second phone call 'with

In Akalwadi, the court found that, in a situation where the defendant allegedly made between 26 and 28 calls to the plaintiff in a two-month period, although "none of the calls were made either excessively early in the morning or late in the evening[,]" the record reflected "periods in which telephone calls were made on a daily basis and three telephone calls being made within five hours on the same day," the "reasonableness of this volume of calls and their pattern is a question of fact for the jury[,]" and denied summary judgment. 336 F. Supp. 2d at 506.

Citing Akalwadi, the court in Green v. Creditor Iustus Remedium, LLP found that a complaint plausibly stated a claim and could survive a motion to dismiss where the plaintiffs alleged that the defendant called the plaintiffs "on a near daily basis for approximately two months, including some calls [to one of the plaintiffs] while she was working." No. 1:13-cv-01414, 2013 WL 6000967, at *3 (E.D. Cal. Nov. 12, 2013).

In Joseph v. J.J. Mac Intyre Cos., LLC, the court ruled that "genuine issues of material fact remain for trial" where,

_____

intent to annoy, abuse, or harass,' 15 U.S.C. § 1692d(5). . . . Because the court finds that defendant is entitled to summary judgment as a matter of law on plaintiff's FDCPA claim, the court must also grant defendant's motion for summary judgment on her RFDCPA claim." No. 2:15-cv-01305, 2016 WL 3743148, at *3, *5 (E.D. Cal. July 13, 2016) (emphasis added).

making every inference in favor of the plaintiff, the court found that "roughly 75 calls made to Ms. Joseph's residence within the statutory period" "may be deemed to comprise part of the pattern of harassing calls allegedly received by Plaintiff[,]" although the defendants argued that the calls were meant for other residents of the plaintiff's home. 281 F. Supp. 2d 1156, 1164-65 (N.D. Cal. 2003).

In Alborzian v. JPMorgan Chase Bank, N.A., the California Court of Appeal, on evaluation of "whether the operative complaint state[d] facts sufficient to state a cause of action[,]" found that, although the complaint did "not allege that defendants' calls were ever answered," but did "allege that they were intentionally made 'in a campaign of harassment,'" the complaint was sufficient because the "making of frequent calls itself can constitute actionable harassment under the Rosenthal Act." 235 Cal. App. 4th 29, 34, 38 (Ct. App. 2d Dist. 2015) (citing Komarova v. Nat'l Credit Acceptance, Inc., 175 Cal. App. 4th 324, 345 (Ct. App. 1st Dist. 2009) ("[W]e do not interpret the statute to require that a plaintiff answer harassing collection calls before they can be actionable")).

In Haysbert, the court ruled on cross-motions for summary judgment as to the plaintiff's claim under the RFDCPA. 2016 WL 890297, at *13. The plaintiff claimed that he was entitled to summary judgment "because Defendant called him 2-5 times a day";

the defendant claimed it was entitled to summary judgment "because plaintiff 'has presented absolutely no evidence the calls at issue rose to the level of harassment within the meaning of the' RFDCPA." Id. The court considered "the volume and pattern of calls made" to the plaintiff and noted that "courts have been inconsistent in applying the standards" of whether "a particularly volume or pattern leads to liability[.] Id. The court ultimately ruled that there was, "at a minimum, . . . a triable issue of fact as to whether Defendant's conduct was harassing" where "Defendant called Plaintiff ninety-nine times over a one-and-a-half year period, and Plaintiff presents evidence that he frequently received between two and five calls a day. . . . [which] caused interruptions in his day and . . . he answered at least some of these calls." Id.

In contrast, the court in Saltzman found that there was no genuine issue of material fact for trial where: the defendant "only placed calls to Plaintiff's residence"; the plaintiff alleged that she asked the defendant to stop calling her but "did not send Defendant a cease and desist letter" or "dispute the amount owed"; the plaintiff did not answer "the vast majority of Defendant's telephone calls" and "did not recall Defendant leaving any voice messages for her." 2009 WL 3190359, at *7. The court found instructive the holding of Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d 1135, 1143-44 (D. Kan.

2004), which found that "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages." Saltzman, at *7 (quoting Millsap v. CCB Credit Servs., Inc., No. 07-11915, 2008 WL 8511691, at *7 (E.D. Mich. Sept. 30, 2008)). The Saltzman court stated that this pattern of calls

> suggests a "difficulty of reaching Plaintiff, rather than an intent to harass." . . .
>
> Plaintiff has not pointed to any evidence in the record regarding the amount, frequency, pattern, or content of Defendant's calls that would suggest anything other than a legitimate, albeit persistent, effort to reach her. As the FDCPA does not prohibit such legitimate attempts to contact a debtor, and due to Plaintiff's failure to produce evidence demonstrating a genuine issue of material fact, Defendant is entitled to summary judgment in its favor on this claim.

2009 WL 3190359, at *7 (quoting Millsap, 2008 WL 8511691, at *7).

Similarly, in Shand-Pistilli v. Prof. Acct. Servs., Inc., the court considered a claim that the defendant called plaintiff "only ten times over seventy-three days. Defendant never called plaintiff more than once on the same day and, indeed, only once called plaintiff on consecutive days. Most of the phone calls went unanswered because plaintiff was not at home at the time of the call. . . . [T]he fact that defendant continued to call

26

plaintiff after she stated . . . that she was 'not interested in these solicitation calls' and that she considered such calls to be harassment . . . is also not sufficient to raise a genuine issue of material fact with respect to defendant's intent. . . . In light of the polite tone of the phone calls and their relative infrequency I find that defendant's phone calls to plaintiff were legitimate attempts to reach her." No. 10-01808, 2011 WL 2415142, at *5-*6 (E.D.Pa. June 16, 2011).

After careful consideration, the Court is persuaded that the relevant case law supports a finding that Plaintiff, in this case, has raised a genuine dispute of material fact as to whether the volume and pattern of calls in this case could constitute actionable harassment under the RFDCPA. Courts have found a genuine issue of material fact in a case where the plaintiff received ninety-nine calls over a one-and-a-half year period, frequently received between two and five calls a day, and answered at least some of those calls. Haysbert, 2016 WL 890297, at *13. The volume of calls here is greater (165 calls over an eight-month period) and the pattern is similar, with Defendants here calling multiple times per day on several occasions (21 multi-call days of two or three calls each day)-- an allegation which was not present in cases where courts granted summary judgment. See, e.g., Shand-Pistilli, 2011 WL 2415142, at *5; Arteaga, 733 F. Supp. 2d at 1229.

27

The Court will therefore follow the approach of the courts in Green and Akalwadi and find that, under these circumstances, the "reasonableness of this volume of calls and their pattern is a question of fact for the jury[,]" Green, 2013 WL 6000967, at *3 (quoting Akalwadi, 336 F. Supp. 2d at 506), because the evidence presented could "provide an adequate basis for the finder of fact to find a violation" of the RFDCPA, Joseph, 281 F. Supp. 2d at 1165. The existence of the recipient's prior consent to receive calls regarding her account is a factor for consideration in evaluating the reasonableness of the pattern of calls under the RFDCPA. For that reason, the Court will deny Defendants' motion for summary judgment as to Plaintiff's RFDCPA claim.

## C. California's Unfair Competition Law

The Court previously dismissed without prejudice Plaintiff's claim under the UCL because, without entitlement to one of the forms of equitable relief for which the UCL provides, she lacked standing. [Docket Item 60 at 18-25.] Defendants also moved to dismiss Plaintiff's UCL claim on the grounds that she lacked standing because she did not adequately allege that she lost money or property and suffered an injury in fact, as the UCL requires under Cal. Bus. & Prof. Code § 17204. The Court found at that time, however, that Plaintiff had adequately alleged that she had lost money or property. [Id. at 14-18.]

In their Motion for Summary Judgment, Defendants move for summary judgment as to the UCL claim on the grounds that Plaintiff has failed to bring forth evidence to show that she suffered an economic injury caused by Defendants. [Docket Item 55 at 31-34.]

In her Response, filed before the Court's opinion and order dismissing without prejudice her UCL claim, Plaintiff did not address Defendants' arguments in favor of granting summary judgment to Defendants on that claim and conceded that summary judgment was appropriate. [Docket Item 57 at 13 n.1.]

Furthermore, the Court agrees that, for the reasons described by Defendants and apparently conceded by Plaintiff, Plaintiff has not brought forth evidence sufficient to create a genuine dispute of material fact as to the allegation that she suffered an economic injury caused by Defendants. No reasonable finder of fact could conclude, based on the evidentiary record before the Court, that Plaintiff in fact suffered such an injury. Accordingly, the Court finds that she lacks standing under the UCL and will grant summary judgment on that claim to Defendants. To the extent that the UCL claim was previously dismissed without prejudice [Docket Item 60 at 25], the Court will now modify that ruling and dismiss the UCL claim with prejudice.

### D. Class Allegations

Plaintiff seeks certification of the following class under Rule 23(b)(3), Fed. R. Civ. P.:

> Every individual in the United States who: (1) received a call on his or her cellular telephone; (2) placed by or on behalf of Defendants; (3) relating to a Target credit card; (4) using a dialer; and (5) where Defendants did not have prior express consent to place such a call at the time it was placed.

Amended Complaint ¶ 39. Defendants seek to strike the class allegation on grounds of lack of ascertainability. The Third Circuit has held in Marcus v. BMW of N.A. LLC, 687 F.3d 583, 593 (3d Cir. 2012): "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Similarly, a noted treatise has observed that "[a] class definition is inadequate if a court must make a determination of the individual claims to determine whether a particular person is a member of the class." 5 James W. Moore, Moore's Federal Practice ¶ 23.21[3][c] (3d ed. 2007).

Further, Defendants object to this class because Plaintiff Martinez herself would not be a member. She consented to receive the vast majority of these calls, including all calls made on multi-call days. It is tautological that a class representative must be a class member to satisfy Rule 23 requirements including adequacy, typicality and commonality. (See Def. Rep. Br. at 13-15.)

30

Defendants also move to strike the class allegations from Plaintiff's Amended Complaint because she "impermissibly attempts to create a 'fail-safe' class where the question of 'whether a person qualifies as a member depends on whether the person has a valid claim.'" [Docket Item 55 at 37, quoting Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 623 (E.D.Pa. 2015).]

In response, Plaintiff claims that the motion to strike is premature, because Plaintiff "has not had the opportunity to take any discovery on class certification issues" and Defendant does not argue "that 'no amount of discovery or time will allow for plaintiff[] to resolve deficiencies in [the] class definition[].' McPeak [v. S-L Distribution Co., No. CIV 12-348,] 2014 WL 4388562, at *4 [(D.N.J. Sept. 5, 2014).]" [Docket Item 57 at 23 (emphasis in original).] Plaintiff states that she "will be able to obtain through discovery information bearing on the common characteristics of potential class members who did not consent to receive calls from Defendants." [Id.] Plaintiff urges that, should the Court strike her class allegations, she be given leave to amend "to allege, if she can, a proposed class that is not fail-safe." [Id. at 24, citing Dixon, 2016 WL 3456680, at *5.]

"[A]n essential prerequisite of a Rule 23 action is that there be a class, and courts have generally articulated this

31

essential prerequisite as the implied requirement of
ascertainability--that the members of the class are identifiable
at the moment of certification[;] . . . [i]f class members are
impossible to identify without extensive and individualized
fact-finding or 'mini-trials,' then a class action is
inappropriate." Zarichny, 80 F. Supp. 3d at 625.

As Defendants state: "By defining the class as individuals
called without their prior express consent, Plaintiff seeks to
create a class consisting only of individuals to whom defendants
are necessarily liable under the TCPA. This is a 'heads, I win,
tails you lose' proposition: 'either the class members win or,
if the defense prevails, no class exists, and the putative class
members, unbound by the judgment, are free to pursue individual
claims.' Zarichny, 80 F. Supp. 3d at 624." [Docket Item 55 at
39.] Moreover, as Defendants demonstrate, Plaintiff Martinez
would not be a member of this class because she gave express
consent to autodialed calls to her cell phone concerning her
Target credit card.

Courts have previously rejected the same proposed class
because identifying the class requires "the sort of extensive
fact-finding that class actions should avoid" and because "any
other putative class recipient would be free to litigate the
same claim" against the defendant should the defendant prevail.
Zarichny, 80 F. Supp. 3d at 625-26. See also Dixon, 2016 WL

3456680, at *4-*5 (in TCPA case, proposed class was fail-safe
class where plaintiff proposed proceeding on behalf of people
who had not previously consented to receiving autodialed calls
on their cell phones); Olney v. Job.com, Inc., No. 1:12-CV-
01724, 2013 WL 5476813 at *11 (finding that proposed class based
on people who had not previously consented was improper fail-
safe class in TCPA case).

The Court agrees with Defendants that Plaintiff's proposed
class is a fail-safe class. No amount of additional class
discovery will alter that conclusion: her proposed class both is
defined in terms of Defendants' liability to the proposed class
members, and would require extensive fact-finding (as
Plaintiff's own case has done) to determine whether the putative
class members failed to provide express prior consent to be
called. Her class allegations are stricken pursuant to Fed. R.
Civ. P. 23(d)(1)(D).

Because the Court has granted summary judgment to
Defendants on Plaintiff's TCPA claims, the Court will not grant
Plaintiff leave to amend the class allegations with regard to
claims under the TCPA, because Plaintiff will not fall into the
revised class definition. See Olney, 2013 WL 5476813, at *11-
*12.

Further, because Plaintiff's only remaining claim survives under California's RFDCPA, any class definition would be limited to residents of California[3] who received such calls.

Finally, as noted, Plaintiff's membership in the class as presently defined is a nullity. With all this constraints, it is doubtful but not impossible that Plaintiff could serve as class representative of a very different class. Any such effort to revive this class must be made by motion to amend before expiration of the deadline for amended pleadings herein under Rule 16(a)(3)(A), Fed R. Civ. P, and L. Civ. R. 16.1(b)(1)(A).

Accordingly, Defendants' motion to strike Plaintiff's class allegations will be granted.

## V.   CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to for summary judgment as to Plaintiff's claim under the RFDCPA (Count II of Plaintiff's First Amended Complaint) and will grant Defendants' motion for summary judgment as to Plaintiff's claims under the TCPA (Count I) and the UCL (Count

---

[3] Of course, for a class of California residents applying California law, one would question how New Jersey would be a proper venue.

III). The Court will also grant Defendants' motion to strike the class allegations. The accompanying Order will be entered.


**June 30, 2017**                              **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               U.S. District Judge